UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
USVALDO CONTRERA and FRANCISCO
LOPEZ, individually and on behalf of all others
similarly situated,

                                  Plaintiffs,        Case No. 16-CV-03851
                                                    (LTS) (GWG)

     - against -

IRVING LANGER, *et al.*,

                                   Defendants.

-----------------------------------------------------------X

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

---

                                  RAPAPORT LAW FIRM, PLLC
                                  *Attorneys for Plaintiffs*
                                  One Penn Plaza, Suite 2430
                                  New York, New York 10119
                                  Phone: (212) 382-1600
                                  Email: mrapaport@rapaportlaw.com

*On the Brief:*
Marc A. Rapaport
Meredith R. Miller

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

LEGAL STANDARD....................................................................................................... 4

ARGUMENT .................................................................................................................... 5

  I.   THE COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS
  EMPLOYED OR JOINTLY EMPLOYED PLAINTIFFS. ........................................... 5

    A.   Allegations that Defendants Operated and Controlled Plaintiffs' Employment
    Through A Common Enterprise Meet the Plausibility Pleading Requirement. ........... 6

    B.   Far From Implausible, the Allegations in the Complaint are Based Upon
    Defendants' Own Representations With Respect to the Structure of the E&M
    Enterprise and the Status of Defendants as Joint Employers. .................................... 13

      (1)   NYS Division of Human Rights ("NYSDHR") File in "Contrera v. E&M
      Bronx Associates LLC," Case No. 10168556 ........................................................ 15

      (2)   Deposition Testimony of Defendants in The Fortune Society Case .............. 17

      (3)   Defendants' Corporate Records Filed in New York County Supreme Court
      Proceeding, Georgia Malone & Company, Inc. v. E&M Associates et al., NY
      County Index No. 150660/2014 (the "Georgia Malone Case")............................. 20

    C.   Defendants' Motion to Dismiss the Joint Employer Theory is Entirely Premature
    Before Any Opportunity for Discovery. .................................................................... 21

  II.   THE COMPLAINT IS NOT "PROLIX" AND IS NOT SUBJECT TO
  DISMISSAL ON THAT GROUND............................................................................. 24

CONCLUSION............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Artista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ............................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 4

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .................................. 4

*Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 ARR, 2016
WL 5092588 (E.D.N.Y. Sept. 16, 2016) .......................................................................... 8

*Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008) ........... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 4

*Cano v. DPNY, Inc.*, 287 F.R.D. 251 (S.D.N.Y. 2012) ...................................................... 22

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) ................................... 7

*Cavallaro v UMass Memorial Health Care*, No. 09-40152, 2011 WL 2295023 (D. Mass.
Jun. 8, 2011) .................................................................................................................. 22

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d. Cir. 2002) .................................. 6, 15

*Chen v. Domino's Pizza, Inc.*, No. Civ. 09-107, 2009 WL 3379946 (D. N.J. Oct. 16,
2009) .............................................................................................................................. 22

*Cordova v. SCCF*, No. 13 Civ. 5665, 2014 WL 3512838 (S.D.N.Y. Jul. 16, 2014) .......... 5

*Cortec Indus. v. Sum Holding, L.P.,* 949 F.2d 42 (2d Cir. 1991) ....................................... 6

*Cruz v. Rose Assoc.*, No. 13 Civ. 0112, 2013 WL 1387018 (S.D.N.Y. Apr. 5, 2013) . 5, 12

*Doe I v. Four Bros. Pizza, Inc.*, No. 13 CV 1505, 2013 WL 6083414 (S.D.N.Y. 2013) . 12

*Hart v. Rick's Cabaret Intern.*, Inc. 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ...................... 7

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ...................................... 6, 7

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ........................................ 5

*Leber v. Berkley Vacation Resorts, Inc.*, No. 08 CV 10752, 2009 WL 2252517 (D. Nev.
Jul. 27, 2009), ............................................................................................................... 22

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.E.2d 581
(1992) .............................................................................................................................. 6

*Nehmelman v. Penn National Gaming, Inc.*, 790 F.Supp.2d 787 (N.D. Ill. 2011) ........... 22

*Ouerdraogo v. Durso Assoc.*, No. 03 CV 1851, 2005 WL 1423308 (S.D.N.Y. Jun. 16,
2005) .............................................................................................................................. 21

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988)) ......................................................... 25

*Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995) .............................................................. 25

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) .............................................. 6

*Wolman v. Catholic Health System*, 853 F.Supp.2d 290 (E.D.N.Y. 2012) ...................... 22

*Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61 (2d Cir.2003) ......................................... 7

**Statutes**

29 U.S.C.A. § 203(d) ........................................................................................................ 6

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4, 5

## PRELIMINARY STATEMENT

Individually and on behalf of superintendents and porters at approximately 262 apartment buildings (the "Buildings") in Upper Manhattan and the Bronx, representative Plaintiffs Usvaldo Contrera ("Contrera") and Francisco Lopez ("Lopez") assert minimum wage and overtime claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").   Since the filing of the complaint, dated May 23, 2016 (the "Complaint"), two former employees (Pedro Batista and Fabian Herrera, a superintendent and porter, respectively) filed opt-in notices with the Court.

The Complaint alleges wage claims against the entities and individuals who control and comprise a three-tiered real estate enterprise that the Complaint defines as the "E&M Enterprise."   The Complaint alleges that the E&M Enterprise purchases, operates, and manages multiple-family dwellings in various low-income neighborhoods in New York City, and that the E&M Enterprise, as a whole, is or was the employer of the Representative Plaintiffs and putative class members.

On or about September 23, 2016, all but 11 of the Defendants (the "Moving Defendants") moved for dismissal under Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and/or summary judgment pursuant to FRCP 56.   In an order dated October 4, 2016 (the "October 4 Order"), this Court denied the Moving Defendants' motion as premature to the extent that it requested adjudication of class issues.   Further, the Court declined to treat the motion as one for summary judgment.   (October 4 Order, at 2 [docket entry no. 47]).

Notwithstanding the October 4 Order, the Moving Defendants have declined to withdraw Point III of their Memorandum of Law, dated September 23, 2016 ("Defendants' Brief" [docket entry no. 43]), which based on alleged implausibility, urges dismissal of Plaintiffs' allegations that Defendants are employers or joint employers of Plaintiffs. However, the joint employer doctrine is a fact-intensive issue that is not appropriately adjudicated on a Rule 12(b)(6) motion. All that Plaintiffs must do at this stage is raise a reasonable expectation that discovery will reveal evidence that Defendants are employers of Plaintiffs and the members of the putative class within the meaning of the FLSA and NYLL. The Complaint meets (indeed, it far surpasses) the *Iqbal* plausibility standard.

Moreover, the Complaint's allegations regarding the structure and control of the E&M Enterprise are based upon Defendants' own representations. The plausibility standard is not (and should not be) an invitation for Defendants to disingenuously deny their own prior representations about how they function as an enterprise. Here, after painstaking investigation, the Complaint is based on Defendants' own descriptions in sworn deposition testimony in other lawsuits, personnel and wage records, and their submissions to the New York State Division of Human Rights.

Tellingly, Defendants' Brief, at 32, states that two of the Defendants are "employers," but it never identifies those "two employers." This is because, as alleged in the Complaint, Plaintiffs' paychecks do not identify any employer, and the most plausible conclusion is that the employer is the E&M Enterprise as a whole. It appears that the Moving Defendants urge the Court to dismiss claims against all

Defendants except for the two entities that formally hold title to the buildings where Plaintiffs Contrera and Lopez worked.  In effect, the Moving Defendants are asking the Court to rule that the E&M Enterprise is nonexistent and to conclude that the Complaint only plausibly asserts claims against two title-holding corporate shells (655 West 160 Holdings LLC and 638 West 160 Holdings LLC).  Defendants do not explain why it is only plausible to conclude that these two entities were Plaintiffs' employers.

Before the opportunity for any discovery, the Moving Defendants prematurely ask the Court to dismiss the Complaint on the basis that Plaintiffs have not plead the specific and exacting details of the E&M Enterprise's complicated management structure and operations – information which is largely in the possession of Defendants.

It is plain what the Moving Defendants seek to accomplish by their motion under the guise of implausibility: to preemptively dispose of even the possibility of FLSA and FRCP 23 class certification before class discovery has commenced. Defendants' Brief, at 3, states that the "purpose of [the] motion is not to challenge the plausibility of Plaintiffs' individual claims against Defendants," and that the motion is only directed to the alleged insufficiency of "allegations regarding the putative class." Thus, by the Moving Defendants' own representation, their motion *only* requests dismissal of class claims, which is plainly not ripe for decision at this early stage.

The lack of merit of the Moving Defendants' motion is indicated by its internal inconsistencies.  On the one hand, the Moving Defendants argue that Plaintiffs' allegations are not detailed enough.  At the same time, they take the

-3-

position that the Complaint is "prolix."  Respectfully, it cannot be both, and, in fact, it is neither.  For these reasons, as discussed in further detail below, this motion to dismiss should be denied in its entirety.[1]

## LEGAL STANDARD

Pursuant to FRCP 8(a)(2), a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also ATSI Comm., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (explaining that a plaintiff must state "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 546)).

While *Iqbal* and *Twombly* call for plausible and fact-based allegations, they do not contemplate a "heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8." *Artista Records, LLC v. Doe 3*, 604 F.3d 110, 110 (2d Cir. 2010).  Moreover, although a complaint must state "enough fact to raise a reasonable expectation that discovery will reveal evidence," a plaintiff need not demonstrate that his allegations are probable. *Twombly*, 550 U.S. at 556.

---

[1] At this time, Plaintiffs do not assert claims for retaliation, and the inclusion of paragraph 10 in the *ad damnum* clause of the Complaint was unintentional.

When deciding a motion to dismiss, a court is obliged to "accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, drawing "all inferences in the light most favorable to the non-moving party's favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## **ARGUMENT**

### I.   **THE COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS EMPLOYED OR JOINTLY EMPLOYED PLAINTIFFS.**

Plaintiffs' Complaint meets the plausibility standard pursuant to FRCP 12(b)(6) because it alleges sufficient facts from which this Court can infer that Defendants employed or jointly employed Plaintiffs.  All that Plaintiffs need to do at this stage is "'raise a reasonable expectation that discovery will reveal evidence' that Defendants are employers of Plaintiff[s] and the members of the putative class within the meaning of FLSA." *Cruz v. Rose Assoc.*, No. 13 Civ. 0112, 2013 WL 1387018, *1-*2 (S.D.N.Y. Apr. 5, 2013); *Cordova v. SCCF*, No. 13 Civ. 5665, 2014 WL 3512838, *5 (S.D.N.Y. Jul. 16, 2014)(Swain, J.)(plaintiffs plausibly pleaded facts suggestive of joint employment; issue premature on motion to dismiss).  Plaintiffs more than meet this minimal burden.

Moreover, this Court may consider on the motion to dismiss a document not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002)(citations omitted); *see also Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991).  As discussed below, the Complaint is based on Defendants' own descriptions of the E&M Enterprise, and its

language relies on Defendants' worn deposition testimony in other lawsuits, personnel records, and their submissions to the NYS Division of Human Rights.

**A. Allegations that Defendants Operated and Controlled Plaintiffs' Employment Through A Common Enterprise Meet the Plausibility Pleading Requirement.**

To be held liable under the FLSA, a party must be an "employer," which the FLSA defines broadly. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.E.2d 581 (1992) (noting that, under the FLSA, the definition of "employer" is "strikingly broad," stretch[ing] to cover some parties who might not qualify. . . under . . . traditional . . principles."). An employer is defined under FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010) (definitions of "employer" under NYLL and FLSA are coextensive).

In order to determine if one is an "employer," courts apply the "economic realities" test, under which "the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir.1999) (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984)).

The "economic realities" test, however, "encompasses the totality of circumstances, no one of which is exclusive." *Id.*; *see also Zheng v. Liberty Apparel*

*Co., Inc.*, 355 F.3d 61, 69 (2d Cir.2003) (explaining that *Herman* does not "support[ ] the application of a rigid four-part test," and that while satisfaction of the four *Carter* factors "can be sufficient to establish employ[ment] status ... a positive finding on those four factors is [not] necessary to establish an employment relationship"). Thus, in *Zheng*, the Second Circuit set forth a list of six factors that should be examined, in that instance, to determine whether a manufacturer was a joint employer:

> (1) whether [the manufacturer]'s premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the manufacturer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [manufacturer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the manufacturer].

*Id.* at 72. In short, there is "no rigid rule for the identification of an FLSA employer," but rather the determination of the relevant factors in any given case must be made on a case-by-case basis. *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 143 (2d Cir. 2008). In *Hart v. Rick's Cabaret Intern.*, Inc. 967 F. Supp. 2d 901 (S.D.N.Y. 2013), the Court noted that the issue of joint employer status is so fact-intensive that it rarely can be determined at the summary judgment stage of proceedings. *Id.* at 941. The Court in *Rick's Cabaret* also noted that the FLSA's definition of employer status should be given an expansive interpretation consistent with the FLSA's remedial purpose. *Id.* at 940.

Plaintiffs' Complaint alleges that, through a "unified enterprise," the "Defendants each had either functional and/or formal control over terms and conditions of work and over the policies and practices with respect to the employment

and compensation of the Representative Plaintiffs." Complaint ¶274.  The Complaint

alleges that Defendants have used entities to perform investment and managerial

functions for the E&M Enterprise – "they operate under common ownership, share

employees, are managed by the same individuals, subject their employees to the same

policies and procedures relating to wage violations alleged in this Complaint, and

their operations are interrelated and unified." Complaint ¶ 79.  In *Ayala v. Your*

*Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 ARR, 2016 WL

5092588 (E.D.N.Y. Sept. 16, 2016), the Court held that where entities were in the

same industry, at the same address, and under common control, there was an

integrated enterprise. *Id.* at *17.

The following alleged facts, *inter alia*, permit this Court to infer that

Defendants are (or were) Plaintiffs' employers or joint employers:

- The class members and Plaintiffs have been employed by the Defendants as superintendents and porters at approximately 262 apartment buildings throughout New York City "that were owned and controlled by the Defendants as a unified enterprise[.]"  Complaint ¶ 2.

- Defendants are "a centrally managed real estate enterprise" (the "E&M Enterprise") founded by Defendant Irving Langer ("Langer").  Complaint ¶ 6.

- "Title to each of the E&M Enterprise's Buildings is held in the name of a limited liability company (collectively, the "Title-Holding Entities"), each of which is also owned and/or controlled by the E&M Enterprise and is a component of the E&M Enterprise."  Complaint ¶8.

- Langer, Leibel Lederman ("Lederman"), Aryeh Ginzberg ("Ginzberg") and Meyer Brecher ("Brecher") ran the E&M Enterprise.   "The individual defendants carried out their unified policies and management of the E&M Enterprise through a hierarchy consisting of limited liability companies, each of which is owned and controlled by the enterprise."  Complaint ¶10.

- The enterprise's hierarchy includes: "(a) Entities that the individual defendants use as vehicles for multi-million dollar transactions to acquire and sell blocks of buildings ("Investment Entities"); (b) Management companies,

-8-

including E&M Bronx, E&M Associates, and Galil, which manage the buildings ("Management Entities") (in their legal filings with the City and State of New York, these entities identify either the Flatbush Office or the Walton Avenue Office as their principal places of business); and (c)The Title-Holding Entities."  Complaint ¶10.

- "The Investment Entities, Management Entities, and Title-Holding Entities constitute a centrally controlled and managed real estate enterprise that is owned and operated by the individual defendants."  Complaint ¶11.

- "The individual defendants – Langer, Lederman, Ginzberg and Brecher – exercise unified ownership, management and control over the Investment Entities, Management Entities, and Title-Holding Entities (collectively referred herein as the "Corporate Defendants"), which jointly comprise the E&M Enterprise, which, in turn, are operated for the common purpose of acquiring and maximizing cash flow, operating income, and value from the Buildings." Complaint ¶74.

- The Corporate Defendants are vertically integrated.   Complaint ¶ 75.  According to E&M Associates' website, "E&M Associates is a privately-held, vertically-integrated real estate company that acquires, owns and manages over 3000 apartments in the New York metropolitan area." Complaint ¶ 49.

- Collectively, the Corporate Defendants constitute what the individual defendants refer to as a "real estate syndicate" that functions as a single enterprise with unified management and personnel policies.  Complaint ¶ 74.  Defendant Langer describes this deeply-intertwined ownership structure as a "'real estate syndication business.'" Complaint ¶12.

- Defendants have used the names of various entities interchangeably, as reflected in filings with the New York State Division of Housing and Community Renewal.  Complaint ¶78.

- E&M Enterprise had a principal place of business at 1465A Flatbush Ave, Brooklyn, NY 11210 (the "Flatbush Office"), "from which it owned, operated and managed approximately 262 buildings under the same policies regarding the payment of wages to building maintenance employees."  Complaint ¶7.  "From its Flatbush Office, the E&M Enterprise controls hundreds of apartment buildings through its wholly-owned and/or controlled entities, including, *inter alia*, E&M Bronx Associates (hereinafter "E&M Bronx"), E&M Associates, Galil Management LLC and Galil Realty LLC (Galil Management and Galil Realty are interchangeably referred to herein as "Galil")."  Complaint ¶8.

- "[T]he E&M Enterprise maintained a management office, which handled day-to-day rental, financial and tenant issues, at 975 Walton Avenue, Bronx, NY

-9-

10452" (the "Walton Avenue Office").  Complaint ¶7.  "Certain of the E&M Enterprise's management functions – particularly involving management of the E&M Enterprise's apartment buildings in and around Bronx County – were also carried out from the Walton Avenue Office.  Complaint ¶9.

- "The E&M Enterprise has applied the same employment practices, policies and procedures to Superintendents of the Buildings, including, *inter alia*, the E&M Enterprise's practice, policy and procedure of failing to compensate Superintendents for hours worked beyond 40 per workweek." Complaint ¶13.

- The E&M Enterprise "has willfully had a practice and procedure of concealing and obfuscating the true identity of the entities and individuals who have the status of 'employer' as that term is defined and understood under the FLSA and NYLL."  Complaint ¶ 270.  Hundreds of E&M employees receive paychecks and statements that falsely suggest that employees are employed by "StaffPro, Inc." even though Defendants are well aware that the employees are employed by Defendants.  Complaint ¶ 270.

- Representative Plaintiffs are informed and believe that the E&M Enterprise has remained constant even as buildings in its portfolio have been bought and sold.  Namely, (a) ultimate control of Buildings is exercised by Langer; (b) though the Buildings are titled in different corporate names, the individual defendants have substantial ownership interests in each such entities; (c) all buildings of the E&M Enterprise have the same entities serving as their managing agent; (d) family members of the individual defendants have been active participants in the E&M Enterprise; and (e) the E&M Enterprise has consistently exhibited disregard for the legal and human rights of the largely low-income and immigrant individuals who live and/or work in the Buildings that the E&M Enterprise controls.  Complaint ¶¶ 271, 273.

- Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiffs. Complaint ¶ 272.

- Specific to Defendant Langer: "Langer has served as managing member and/or senior executive of E&M Associates LLC; E&M Bronx Associates; Rainbow Estates Group; LIA MM LLC; Zaidys Manhattanville LLC; AZGII Manhattanville LLC; and Galil"; "Langer has touted the large scale of the real estate enterprise that he has created and controls." Complaint ¶¶ 47, 48.

- Lederman is partner of E&M Associates (¶53); "Founder, Partner, and/or Member of Rainbow Estates Group" (¶54); part of the "Leadership Team" of E&M Associates (¶54); "Managing Member and/or Executive Officer of entities comprising the E&M Enterprise" (¶56); and has "a personal ownership interest in the E&M Enterprise's Buildings, including, but not limited to, the two buildings where the Representative Plaintiffs were employed as superintendents." (¶57).  As a member of the "Leadership Team"

of E&M Associates, "Lederman had (and continues to have) managerial and operational control over the E&M Enterprise's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to compensation of the E&M Enterprise's employees and overtime policies." (¶58). "Lederman served as authorized signatory of legal documents by which the E&M Enterprise effectuated transactions and legal transfers and encumbrances, including but not limited to loan and cross-collateralization documents." (¶59).

- Specific to Defendant Ginzberg: "Ginzberg is part of the "Leadership Team" of E&M Associates, and in such capacity, he makes decisions and sets policies regarding financial matters, including, *inter alia*, the E&M Enterprise's wage policies relating to building superintendents." Complaint ¶62. Ginzberg is Managing Member and/or Member of entities that hold title to Buildings and/or entities that are the sole members of the Title-Holding Entities. Complaint ¶63. Ginzberg's executive positions include his role as Managing Member of AZG Manhattanville LLC and Member of LIA MM LLC, which, upon information and belief, are entities by which the E&M Enterprise owns and controls buildings in Upper Manhattan. Complaint ¶64. He is a member of Galil, Senior Vice President of E&M Associates and "exercised managerial functions for the E&M Enterprise from the Flatbush Office and/or the Walton Avenue Office." Complaint ¶¶65, 66, 67. It is believed that "Ginzberg has personal direct and/or indirect ownership interest in at least 30 limited liability companies that are controlled by the E&M Enterprise and exercises operational control over those entities and with respect to the E&M Enterprise as a whole." Complaint ¶68.

- Brecher is a member of the E&M Enterprise's "Leadership Team" and holds the position of "Director of Property Management Services." Complaint ¶71. He "oversees the day-to-day operations of the Buildings, including, but not limited to, implementation of the E&M Enterprise's unlawful policy and practice of denying superintendents overtime and minimum wages and requiring superintendents to pay for work-related expenses from their own paychecks without reimbursement." Complaint ¶ 72.

These allegations support the inferences that Defendants: (i) employed Plaintiffs; (ii) controlled Plaintiffs' work conditions, including Plaintiffs' job duties; (iii) controlled Plaintiffs' pay and set personnel policies; (iv) maintained Plaintiffs' employment records; and (v) operated the buildings where Plaintiffs worked. From these facts, this Court may infer that Defendants employed or jointly employed Plaintiffs.

-11-

This case is very similar to *Cruz v. Rose Assoc.*, No. 13 Civ. 0112, 2013 WL 1387018, *1-*2 (S.D.N.Y. Apr. 5, 2013).   In *Cruz*, plaintiff was employed as a maintenance worker and porter at two residential buildings in New York City. Individually and on behalf of similarly situated employees, plaintiff alleged FLSA violations against the companies holding title to the two buildings, as well as various other companies that maintained and operated the buildings.  *Id.* at *2.  When the defendants' joint employment status was challenged on a motion to dismiss, the court held that plaintiff met the pleading requirements at this early state of litigation.  *Id.* The court reasoned:

> Plaintiff has alleged that the Defendants supervised the maintenance and repair of the Buildings together "through a unified operation of control, for common business purposes." (Am. Compl. at ¶ 16.) It is also alleged that decisions concerning payment of wages were made jointly: in other words, Defendants jointly misclassified the porters and maintenance workers and had a policy and practice of declining to pay overtime wages. Taken together, these allegations "raise a reasonable expectation that discovery will reveal evidence" that Defendants are employers of Plaintiff and the members of the putative class within the meaning of FLSA.

Here, as in *Cruz*, Plaintiffs sufficiently plead joint employment by Defendants through a unified operation of control.  *See also Doe I v. Four Bros. Pizza, Inc.*, No. 13 CV 1505, 2013 WL 6083414, *7-8 (S.D.N.Y. 2013) (plaintiffs alleged unified operation and coordination of various restaurants, sufficiently pleading joint employer theory of liability).   Therefore, the allegations are plainly sufficient to raise a reasonable expectation that discovery will reveal evidence that Defendants are employers of Plaintiffs Contrera and Lopez, the two employees who have already

opted in, and the putative class. The Complaint should survive this motion to dismiss.[2]

### B. Far From Implausible, the Allegations in the Complaint are Based Upon Defendants' Own Representations With Respect to the Structure of the E&M Enterprise and the Status of Defendants as Joint Employers.

The Moving Defendants have the audacity to challenge the plausibility of the allegations in the Complaint, which, as detailed below, are based upon representations Defendants have made about their own operations and status as joint employers. They ask the Court to whittle the number of defendants down to two entities by misrepresenting that the Complaint offers only "barebones, conclusory allegations concerning certain purported operational commonalities [that] have no bearing whatsoever on the standard for joint employment in the Second Circuit." (Defendants' Brief, at 35). The Moving Defendants further assert that the Complaint does not sufficiently allege that Defendants operate as an integrated enterprise and that it asserts "no support for a plausible argument that any one of the Defendants controls another." (Defendants' Brief, at 36-37).

Similarly, in the Moving Defendants' self-described Rule 56.1 Statement ("R. 56.1 Stmt." [docket entry no. 41]), Defendants aver that Plaintiffs "admit" that they "currently cannot adduce sufficient facts to meet their modest burden for conditional certification," including facts showing that "Defendants owned and managed a common enterprise." (R. 56.1 Stmt., ¶ 96).

---

[2] This is true as well for the so-called "Caption Defendants" (Defendant's Brief, Point VI, at 38), who are named because they are believed to be part of the E&M Enterprise and acting through it. All Caption Defendants were intended to be included in the series of paragraphs of the Complaint that define the Title Holding Entities and any omissions are easily corrected.

Distilled to its essence, the Moving Defendants' motion is premised on the their contention that Plaintiffs are engaging in implausible speculation about Defendants' unified ownership, operation and control of the (approximately) 262 buildings (the "Buildings") listed in Exhibit A to the Complaint.  In actuality, as detailed below and in the Declaration of Marc A. Rapaport, dated November 2, 2016 ("Rapaport Decl.") the Complaint's allegations regarding the structure and control of the E&M Enterprise were drafted after painstaking investigation that included, *inter alia*, thorough research and analysis of Defendants' public statements, court filings, New York City real estate records, administrative filings, and Defendants' sworn deposition testimony in other federal lawsuits.  The Complaint's allegations regarding Defendants' joint employer status and their functioning as a unified enterprise are premised (in certain instances verbatim) on Defendants' own representations about how they operate.[3]

To assist the Court in understanding the disingenuousness of the Moving Defendants' arguments, and to demonstrate that there is a valid basis (indeed, an incontrovertible evidentiary record) for the Complaint's allegations regarding Defendants' business model, Plaintiffs are submitting herewith copies of some of the integral records and documents that Plaintiffs relied upon for their terms and effect in

---

[3] As noted at the top of Schedule A to the Complaint, the scope of the E&M Enterprise (*i.e.*, the number and location of buildings where the putative classes of superintendents and porters are employed and period of time during which these buildings were part of the E&M Enterprise) was developed on the basis of the records and databases maintained by the NYC Department of Housing Preservation and Development (HPD), NYC's Automated City Register Information System (ACRIS), and the New York Department of State's  Division of Corporations. (*See* Complaint, Schedule A and Rapaport Decl., ¶4).  Schedule A to the Complaint summarizes information from these public databases.  The 130 rows of Schedule A identify approximately 230 buildings where putative class members (superintendents and porters) were employed by the E&M Enterprise at periods relevant to this case.  These property and corporation records were merely some of the documents and information relied upon drafting the Complaint.

drafting the Complaint's allegations pertaining to joint employer status and Defendants' functioning as a unified enterprise. *See Chambers*, 282 F.3d at 153(citations omitted). In their motion papers, the Moving Defendants have labeled as "implausible" allegations in the Complaint that mirror how Defendants themselves have described the E&M Enterprise's management and personnel practices, including several allegations that repeat Defendants' sworn deposition in other matters. Although the *Iqbal* standard involves facial rather than factual plausibility, the Moving Defendants' go far beyond facial implausibility, and they have filed documents with the Court (which they refuse to deem as mooted by the October 4 Order) in which they falsely claim that Plaintiffs "admit" that there is proof of a common enterprise. This is flatly untrue, and the Plaintiffs believe that the record must include some of the documents that were relied on in drafting the Complaint that show that there is admissible, compelling evidence, including Defendants' explicit admissions, of Defendants' enterprise and status as employers.

### (1) NYS Division of Human Rights ("NYSDHR") File in "Contrera v. E&M Bronx Associates LLC," Case No. 10168556

Pursuant to a Freedom of Information Law ("FOIL") request, Plaintiffs received a copy of NYSDHR's file relating to the age discrimination claim by Plaintiff Lopez against Defendant E&M Bronx Associates LLC ("E&M Bronx"). (Rapaport Decl., ¶ 5). Lopez alleged that he was terminated from his position as superintendent of 638 West 160th Street based on his age. (Rapaport Decl., ¶ 5). As part of its defense to Lopez' charge, E&M Bronx provided NYSDHR with a list of the names and birth dates of its 286 superintendents and porters (the "Employee List") (Rapaport Decl., Exh. 1) under cover of a letter by E&M Bronx's attorney,

dated August 12, 2014.  This letter asserted that the Employee List "evidences the fact that Respondent [E&M Bronx] does not discrimination on the basis of age, as there is an extremely diverse age range with respect to the current superintendents Respondent [E&M Bronx] employs." (Rapaport Decl., Exh. 1).  E&M Bronx further stated that "[t]he name of an individual superintendent may appear multiple times due to employment at multiple premises."  (Rapaport Decl., Exh. 1).

In a follow-up letter to NYSDHR, dated August 22, 2014, E&M Bronx's attorney wrote, "Please note that the home addresses of the Superintendents **employed by Respondent** have been redacted to protect privacy of these individuals." (Rapaport Decl., Exh. 2).  In this letter, E&M Bronx submitted "Employee Detail" pages for 124 of its superintendents and porters.  (Rapaport Decl., Exh. 3). Without exception, the location of employment of each superintendent and porter is listed in the Employee Detail sheets as "StaffE&M." (Rapaport Decl., Exh. 3).

Thus, for purpose of defeating Plaintiff Lopez's prior age discrimination claim with the NYSDHR, Defendant E&M Bronx explicitly and readily admitted to its status as employer of not only Plaintiff Lopez, but of all approximately 286 putative class members who work as porters and superintendents at the Buildings.  E&M Bronx further relied upon its practices relative to all 286 putative class members at the Buildings as proof that its personnel practices are non-discriminatory.

Yet, in this lawsuit, E&M Bronx and the other Moving Defendants disingenuously argue that it is implausible for Plaintiffs Lopez and Contrera to "conflate their situation to [sic] some 265 completely unidentified employees at other buildings."  (Defendants' Brief, at 25).  In light of E&M Bronx's submissions to the

NYSDHR, it is disingenuous (indeed, it is flatly dishonest) for the Moving Defendants to have challenged the plausibility of the Complaint's allegations regarding the status of Plaintiffs Lopez and Contrera as employees of the E&M Enterprise and the existence of common personnel policies and practices applicable to superintendents and porters at all of the Buildings.

The Complaint's joint employer and enterprise allegations are based, in part, on E&M Bronx's above described admissions to the NYSDHR that it had the status of employer of the Buildings' superintendents and porters and that individual employees were employed at multiple buildings.

### (2) Deposition Testimony of Defendants in The Fortune Society Case

The Complaint's allegations regarding the functioning of Defendants as a single enterprise with common personnel practices, as well as its allegations relating to the individual Defendants' exercise of control, are also based, in part, on the deposition testimony of Defendants Brecher and Ginzberg in *The Fortune Society, Inc. v. Sandcastle Towers Housing Development Fund Corp, Sarasota Gold LLC, E&M Associates LLC, Weissman Realty Group LLC,* a case presently pending before the Eastern District of New York (Case No. 1:14-CV-64120 (the "Fortune Society Case")). (Rapaport Decl., ¶ 7).

On January 27, 2016, Ginzberg was deposed on behalf of Defendant E&M Associates in the Fortune Society Case. (Rapaport Decl., Exh. 4 (attaching relevant portions of the Ginzberg deposition transcript ("Ginzberg Dep."))). In his deposition, the following exchange occurred, among others: (objections omitted)

> Q. How many employees does E&M Associates have?
> A. I cannot answer that.

Q.  Is it more than 20?
A.  I can't answer that. I'll explain. Because there are so many different entities that actually who is under E&M, per se, I would have to clarify that with the office.  That, I don't know.
Q. There's several entities related to E&M?
A.  Correct. Like, all of our payroll is done through a company called --
Q. Staffpro?
A.  Thank you, thank you.  A company -- called StaffPro that does all our -- so, we have a few hundred employees that are officially under StaffPro even though they really work for our company.  So, that's a whole separate entity.  There are employees under Galil.  But in E&M -- how many are actually under the E&M Payroll, I would have to clarify that.
Q. Given the limitations of your answer, how many people would you say work for some E&M associated entity?
A. Hundreds, several hundred.

(Ginzberg Dep., 52:1-53:5 [Rapaport Decl., Exh. 4]).   Ginzberg further testified

regarding the E&M Enterprise:

Q. And where is E&M based as an office?
A.  E&M is based in Flatbush Avenue, call it the corporate office.  But we have offices through – our entities have different offices throughout the city in different boroughs.  Sandcastle in the Bronx. And in the City there are three offices throughout the city – in the city.  And we  -- altogether, that's a few hundred employees.

(Ginzberg Dep. 53:6-16 [Rapaport Decl., Exh. 4]).

Ginzberg also testified in detail regarding how Defendants Langer, Ginzberg

and Brecher, as managers of the E&M Enterprise and principals of the E&M

Enterprise's myriad entities, would purchase and manage large portfolios of

apartment buildings through investment entities that they formed and controlled,

including E&M Associates and E&M Bronx.  In the deposition, Ginzberg was shown

a document which described how the E&M Enterprise acts as co-employer of the

E&M Enterprise's employees with authority to hire and fire employees. (Ginzberg

Dep. 62:6-65:8 [Rapaport Decl., Exh. 4]).   Ginzberg testified to the E&M

Enterprise's used of a payroll service known as StaffPro to make it appear as though

employees work for StaffPro rather than the E&M Enterprise, even though the E&M

Enterprise makes decisions regarding hiring, firing and other personnel matters:

> Q.  What am I missing there? How can someone fire you if you don't work for
> them?
> A.  E&M is the managing company in charge of managing for Sarasota Gold.
> But for legal, financial, et cetera, et cetera, reasons, no employee works for
> E&M.  Or just a handful work.  They work – any employees through E&M –
> or most of the employees are hired from StaffPro.  But E&M is the one that
> does the hiring and says, 'You're hired. StaffPro, this is the information.  And
> officially you work for StaffPro' …

 (Ginzberg Dep. 126:10-126:22 [Rapaport Decl., Exh. 4]).

Additionally, on November 18, 2015, Defendant Brecher provided deposition

testimony on behalf of Defendant E&M Associates in the Fortune Society Case.

(Rapaport Decl., Exh. 5 (attaching relevant portions of the Brecher deposition

transcript ("Brecher Dep.")))).  Brecher testified that individual defendants Ginzberg,

Langer and Lederman were the "principal owners" of the several hundred buildings

controlled by the E&M Enterprise.  (Brecher Dep. 58:9 – 59: 6 [Rapaport Decl., Exh.

5]).  Brecher described how the E&M Enterprise would allocate portfolios of

buildings that it acquired to various entities that the E&M Enterprise controls:

> Q.  Are you familiar with a company called Galil Management, G-A-L-I-L?
> A.  Yes.
> Q.  What is that company?
> A.  It's – it's – how do you describe it? It's an offshoot or a relatively new
> company that E&M developed for – to run certain packages of buildings.
> Q.  I'm sorry.  I didn't quite follow.  I'm sorry.
> A.  In other words, there's E&M and there's Galil.  And they both do the same
> thing, but E&M is for one package, a certain package, and Galil manages the
> other entities.
> Q.  Okay.
> A.  Buildings, I should say.
> Q.  Are Galil and E&M owned by the same people?
> A.  Yes.

(Brecher Dep. 55:19-56:12 [Rapaport Decl., Exh. 5]).

**(3) Defendants' Corporate Records Filed in New York County Supreme Court Proceeding, Georgia Malone & Company, Inc. v. E&M Associates et al., NY County Index No. 150660/2014 (the "Georgia Malone Case")**

The Complaint's allegations regarding the E&M Enterprise's three-tiered, vertically-integrated business structure are also based on documents filed in the Georgia Malone Case in New York County Supreme Court.  (Rapaport Decl, ¶ 8).  The pleadings and exhibits in the Georgia Malone Case provided details regarding Defendants' practice of acquiring portfolios of buildings, which, upon acquisition, are immediately titled in the names of separate shell entities that the E&M Enterprise controls.  The documents in the Georgia Malone Case's docket included a diagram that depicts the "equity structure" of one portfolio of 32 buildings known as the "Harlem Portfolio."  (Rapaport Decl., Exh. 6).  This diagram, by its express language, shows that the two buildings where Contrera and Lopez worked were controlled by limited liability companies that were ultimately under the ownership and control of defendants Langer, Lederman and Ginzberg, individually.  (Rapaport Decl., Exh. 6).

In fact, research into the Georgia Malone Case underscored for Plaintiffs the importance of including as party defendants herein each Investment and Title-Holding Entity comprising the E&M Enterprise.  The Complaint and other documents filed in the Georgia Malone Case show how Defendants purposely used their confusing myriad of entities to sow confusion about ownership and control of the Buildings.  In the Georgia Malone Case, the documents in the case file gave credible indication that Defendants exploited confusion about ownership and control as a ploy to avoid paying a substantial real estate commission.  Those documents and others constituted a plausible (indeed, compelling) basis for the Complaint's enterprise and

allegations, including but not limited to paragraphs 269, 270, 47, 80, 271, 272, 277, and 278 of the Complaint.   Those documents also show individual control by defendant Langer and others.

Given the public policy importance associated with the wage statutes that are the subject of this lawsuit, as well as the enormous amount of minimum wages and overtime that Defendants owe to the putative class, the risk that Defendants would try to use their various shell companies to avoid the Court's issuance of an enforceable judgment was too great for Plaintiffs to leave any of the composite entities of the E&M Enterprise out of this case.

In sum, the contradictions between the Moving Defendants' protestations of implausibility in their motion to dismiss versus the Defendants' statements and testimony in other matters are stark and irreconcilable.   Simply stated, their challenge to the plausibility of Plaintiffs' allegations is disingenuous at best.

### C.  Defendants' Motion to Dismiss the Joint Employer Theory is Entirely Premature Before Any Opportunity for Discovery.

Given the fact-intensive nature of the joint employment inquiry, the motion to dismiss is entirely premature.   In this connection, it is revealing that the Moving Defendants' argument to dismiss primarily relies on cases from outside the Second Circuit – this is because there are scant examples of courts granting dismissal of a joint employment theory before any opportunity for discovery.  *See Ouerdraogo v. Durso Assoc.*, No. 03 CV 1851, 2005 WL 1423308, at *3 (S.D.N.Y. Jun. 16, 2005)(dismissal of plaintiff's joint employment claim before discovery would be inappropriate).  The cases that the Moving Defendants rely upon are distinguishable.

For example, the Moving Defendants rely on *Cavallaro v UMass Memorial Health Care*, No. 09-40152, 2011 WL 2295023 (D. Mass. Jun. 8, 2011), where plaintiff health care workers had brought a putative class action for violation of wage laws against various related hospitals and health-care providers and two health care executives.  However, the Moving Defendants' discussion of *Cavallaro* omits to mention that the complaint in that case "d[id] not contain a single factual allegation connecting plaintiffs with any of the corporate defendants." *Id.* at *4.  Moreover, the *Cavallaro* complaint did not allege facts to plausibly support an inference that the individual defendants exerted financial and operational control.  *Id.*  In contrast, the Complaint here sufficiently connects Plaintiffs and the corporate Defendants, as well as alleges the financial and operational control asserted by the individual Defendants.[4]

Additionally, the Moving Defendants' reliance on *Wolman v. Catholic Health System*, 853 F.Supp.2d 290 (E.D.N.Y. 2012), is misplaced.  In *Wolman*, another wage case involving a putative class of health care workers, plaintiffs named a number of health care facilities as defendants.  In that case, it was undisputed that one of the hospitals – Good Samaritan – was the plaintiffs' employer.  It was argued, however, that plaintiffs failed to sufficiently plead the connection between Good Samaritan and the other defendant facilities.  Here, the connection between the Defendants, who share common ownership and management, is alleged in sufficient detail.

---

[4] Further, the Complaint here goes well beyond the conclusory allegations in *Chen v. Domino's Pizza, Inc.*, No. Civ. 09-107, 2009 WL 3379946 (D. N.J. Oct. 16, 2009) and *Leber v. Berkley Vacation Resorts, Inc.*, No. 08 CV 10752, 2009 WL 2252517 (D. Nevada Jul. 27, 2009), two outlier cases the Moving Defendants cite in a footnote.  *See Cano v. DPNY, Inc.*, 287 F.R.D. 251, 259 (S.D.N.Y. 2012)(distinguishing *Chen* and holding that plaintiffs plead enough to survive motion to dismiss); *see also Nehmelman v. Penn National Gaming, Inc.*, 790 F.Supp.2d 787, 798 (N.D. Ill. 2011)(court distinguished *Chen* and *Leber* to the extent they involve joint employment claims against franchisors).

Moreover, unlike *Wolman*, the Moving Defendants do not identify who exactly is the Plaintiffs' employer; rather, they argue that Plaintiffs only have "two employers" but fail to identify who they believe those two "employers" to be.  (Defts' Mem. of Law, at 32).  This line of argument is unavailing on a motion to dismiss, when the details of the E&M Enterprise's complicated management structure and operation is information uniquely in the possession of the E&M Enterprise and Plaintiffs have not had the opportunity to delve into those connections in discovery.

This is especially the case here, where "the E&M Enterprise has willfully had a practice and procedure of concealing and obfuscating the true identity of the entities and individuals who have the status of 'employer' as that term is defined and understood under the FLSA and NYLL."   Complaint ¶ 270.   Hundreds of E&M employees receive paychecks and statements that falsely suggest they are employed by "StaffPro, Inc." even though Defendants are well aware that the employees are employed by Defendants.   Complaint ¶ 270.   In fact, the documents submitted by Defendants as exhibits to the Declaration of Scott Katz, dated Sept. 19, 2016 ("Katz Decl." [docket entry no. 42]), though not within the scope of consideration on a motion to dismiss, do serve to establish the very practice Plaintiffs allege in the Complaint – namely, Defendants' interchangeable reference to the entities that make up the E&M Enterprise and the use of "Staff Pro" to obscure which of the Defendants is Plaintiffs' direct employer.  (*See generally* Katz Decl., Exhs. A through J).

In sum, the motion to dismiss is premature. The Complaint is sufficiently detailed to meet the facial plausibility requirements and survive a motion to dismiss.

## II.     THE COMPLAINT IS NOT "PROLIX" AND IS NOT SUBJECT TO DISMISSAL ON THAT GROUND.

At this early stage of litigation, the Moving Defendants argue that Plaintiffs' allegations are not detailed enough. Yet, they also assert that the Complaint is "prolix" and subject to dismissal on that basis. On the one hand, the Moving Defendants argue that Plaintiffs have failed to plead with sufficient specificity the nature of Defendants' enterprise. On the other, the Moving Defendants argue that the Complaint fails to meet the Rule 8 "short and plain statement" requirement. Respectfully, these positions are not consistent; the Complaint cannot be simultaneously too short on detail and too long on detail.

The Complaint in this case is readily distinguishable from the complaints in the cases to which the Moving Defendants cite. The one exhibit (Schedule A) to the Complaint in this case is not irrelevant or extraneous to the nature of the claims – drawing on thorough research, it lists the over 200 buildings that are part of the E&M Enterprise. About 30 pages of the Complaint consist of paragraphs that define the Title Holding Entities. The Moving Defendants should not be heard to argue that the Complaint is "prolix" because of the time it takes Plaintiffs to explain the complicated management and structure the Defendants have themselves created.

As noted above, the Complaint is the product of a demanding investigation that involved reviewing, *inter alia*, the deposition testimony of individual Defendants Brecher and Ginzberg in the Fortune Society Case, Defendants' representations to the NYSDHR, filings with the New York County Clerk in the Georgia Malone Case, DHCR records, HPD records, New York Department of State records, and Defendants' public statements. In the context of the foregoing endeavor, and given

-24-

the complexly intertwined entities that constitute the E&M Enterprise, the Complaint offers the plainest statement feasible under the circumstances without omitting crucial statements about how Defendants abusively operate a unified enterprise that generates profits by depriving an immigrant workforce of the lawful wages that these workers are entitled to be paid under the FLSA and NYLL.

The Second Circuit has explained that dismissal for failure to present a short and plain statement is "'usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.'" *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).   Such a characterization simply does not attach to the unmistakably focused Complaint in this case.

## CONCLUSION

For the reasons stated above, Plaintiffs request that the Court deny Moving Defendants' motion to dismiss to the entire extent it survived this Court's October 4 Order.  In the event the Court believes dismissal of the Complaint is warranted to any extent, Plaintiffs respectfully request the opportunity to amend the Complaint.

Respectfully submitted,

Dated: New York, New York          By:     /s/ Marc. A Rapaport (via ECF)
       November 2, 2016                     Rapaport Law Firm, PLLC
                                            One Penn Plaza
                                            250 West 34th Street, Suite 2430
                                            New York, NY 10119
                                            Ph: (212) 382-1600

-25-