UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
USVALDO CONTRERA and FRANCISCO
LOPEZ, individually and on behalf of all others
similarly situated,

<table>
<tr><td></td><td>Case No. 16-CV-03851</td></tr>
<tr><td>Plaintiffs,</td><td>(LTS) (GWG)</td></tr>
</table>

    - against -

IRVING LANGER, *et al.*,

                                Defendants.

-------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZE THAT NOTICE BE ISSUED TO ALL PERSONS SIMILARLY SITUATED

---

RAPAPORT LAW FIRM, PLLC
*Attorneys for Plaintiffs*
One Penn Plaza, Suite 2430
New York, New York 10119
Phone: (212) 382-1600
Email: mrapaport@rapaportlaw.com

*On the Brief:*
Marc A. Rapaport
Meredith R. Miller

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT .................................................................................................................... 7

I.  THE COURT SHOULD CONDITIONALLY CERTIFY A COLLECTIVE
ACTION ........................................................................................................................ 7

   A.  Background Legal Principles under the FLSA. ..................................................... 7

   B.  The Two-Step Process of Certifying a Collective Action and Definition of
      "Similarly Situated" Employees. ......................................................................... 8

   C.  Plaintiffs Have Satisfied Their Minimal Burden of Showing that They Are
      "Similarly Situated" to Other Superintendents, Porters and Handymen
      Employed by Defendants ..................................................................................... 10

   D.  The Putative Class of all Superintendents, Porters and Handymen Employed by
      Defendants is Not Overly Broad and Should be Certified. ................................. 17

II.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE OF PENDENCY
AND ALLOW PLAINTIFFS TO MAIL IT TO ALL PUTATIVE PLAINTIFFS
AFTER DIRECTING DEFENDANTS TO IDENTIFY AND PRODUCE CONTACT
INFORMATION FOR SUCH PUTATIVE PLAINTIFFS ........................................... 21

   A.  The Court Should Authorize the Circulation of the Proposed Notice of Pendency.
      ................................................................................................................................ 21

   B.  Opt-ins Should Be Allowed 60 Days to Join this Action ..................................... 21

   C.  The Court Should Order that Notice Be Provided in English and Other Languages.
      ................................................................................................................................ 22

   D.  The Court Should Order Defendants To Disclose (in paper and electronic format)
      the Names and Last-Known Addresses of Prospective Plaintiffs Who Were
      Employees During the Six Year Statute of Limitations Period ............................ 22

III.  THE COURT SHOULD EQUITABLY TOLL THE STATUTE OF
LIMITATIONS FOR PUTATIVE OPT-IN PLAINTIFFS. ......................................... 23

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 WL 1539325 (W.D. Ark. May 25, 2007)..................................................................................................................24

*Agudelo v. E & D LLC*, No. 12 Civ. 0960, 2012 WL 5426420 (S.D.N.Y. Nov. 5, 2012) ........................................................................................................................17

*Ali v. N.Y. City Health & Hospitals Corp.*, No. 11 Civ. 6393, 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ....................................................................................10

*Ansoralli v. CVS Pharm., Inc.*, No. 16-Civ-1506, 2017 WL 570767 (S.D.N.Y Feb. 13, 2017)....................................................................................................................13

*Belizaire v. Rav Investigative & Sec. Servs.*, 61 F.Supp.3d 336 (S.D.N.Y. 2014)...........15

*Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F. 2d 335 (2d Cir. 1979) ...21

*Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240 (11th Cir. 2003) .........8

*Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ...........................................................................................................12, 23

*Cohen v. Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317 (S.D.N.Y. 2010) ...................13

*Colon v. Major Perry Street Corp.*, No. 12 Civ. 3788, 2013 WL 3328223 (S.D.N.Y. Jul. 2, 2013)..................................................................................8, 12, 13, 18

*Cordova v. SCCF*, No. 13-CV-05665, 2014 WL 3512820 (S.D.N.Y. Jul. 16, 2014).....17

*Cruz v. Ham N Eggery Inc.*, No. 15 Civ. 3228, 2016 WL 4186967 (E.D.N.Y. Aug. 8, 2016).....................................................................................................................17

*Dalton v. GEM Financial Services, Inc.*, No. 15-cv-05636, 2016 WL 3676428 (E.D.N.Y. Jul. 7, 2016) ........................................................................................................18

*Diaz v. S&H Bondi's Dep't Store, Inc.*, No. 10 Civ. 7676, 2012 WL 137460 (S.D.N.Y. Jan. 17, 2012)................................................................................................21

*Enriquez v. Cherry Hill Mkt. Corp.*, No. 10-cv-5616, 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012)................................................................................................21

*Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317 (S.D.N.Y. 2007)................17

*Fernandez v. Sharp Mgmt. Corp.*, No.16-CV-0551, 2016 WL 5940918 (S.D.N.Y. Oct. 13, 2016).................................................................................................................19

*Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008)..................................................................................................................10

*Gani v. Guardian Serv. Indus. Inc.*, No. 10 Civ 4433, 2011 WL 167844 (S.D.N.Y. Jan. 13, 2011).................................................................................................................12

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003).......21

*Gomez v. PNC Bank*, 306 F.R.D. 156 (N.D. Ill. Jul. 24, 2014).........................................11

*Guillen v. Marshalls of Mass., Inc.*, 750 F.Supp.2d 469 (S.D.N.Y. 2010).........................9

*Hallissey v. Am. Online, Inc.*, No. 99 Civ 3785, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008)..................................................................................................................10

*Hoffman v. Gjurovich*, 982 F. Supp. 249 (S.D.N.Y. 1997) ...............................................21

*Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)..................................8, 21, 22

*Holmberg v. Ambrecht*, 327 U.S. 392 (1946)...................................................................24

*Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)........18, 19, 20

*Kassman v. KPMG LLP*, No. 11 Civ. 03743, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015) ..............................................................................................................................25

*Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007)...........................................................................................................12

*Kone v. Joy Construction Corp.*, No. 15CV1328, 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016)..................................................................................................................24

*Koval v. Pac. Bell. Tel. Co.*, No. C 12-1627, 2012 WL 3283428 (N.D. Cal. Aug. 10, 2012)..................................................................................................................24

*Lamb v. Singh Hospitality Grp., Inc.,* No. 11 Civ. 6060, 2013 WL 5502844 (E.D.N.Y. Sept. 30, 2013) ...................................................................................................18

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006).......................................24

*Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 357 (S.D.N.Y. 2007).................18

*Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 332, 2009 WL 1585979 (S.D.N.Y. Jun. 3, 2009) ................................................................................9

*Marin v. Apple-Metro, Inc.,* No. 12-cv-5274, 2014 WL 7271591 (E.D.N.Y. Dec. 18, 2014).......................................................................................................17

*Martinez v. Zero Otto Nove Inc.*, No. 15 Civ. 899, 2016 WL 3554992 (S.D.N.Y. June 23, 2016)......................................................................................................19

*Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005).......................................................................................................18

*McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438 (S.D.N.Y. 2012) .......................23

*Mendoza v. Ashiya Sushi 5, Inc.,* No. 12 Civ. 8629, 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013)......................................................................................................17

*Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ................................................................................9

*Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir. 1985)..........................................23

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ........................................................12

*Perez-White v. Advanced Dermatology of N.Y. P.C.,* 2016 WL 4681221 (S.D.N.Y. Sept. 7, 2016).......................................................................................................20

*Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012).......................................................................................................9

*Raniere v. Citigroup Inc.*, No. 11 Civ. 2448, 2011 WL 5881926 (S.D.N.Y. Nov. 22, 2011).............................................................................................10, 22, 23

*Reyes v. NY F&B Servs. LLC*, No. 15CV2882, 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016).......................................................................................................23

*Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* 828 F. Supp. 2d 508 (E.D.N.Y. 2011) ............................................................................................................17

*Rosso v. Pi Mgmt. Assocs.*, No. 02 Civ. 1702, 2005 WL 3535060 (S.D.N.Y. Dec. 22, 2005).......................................................................................................11

*Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245 (S.D.N.Y. 2010) ............................18

*Siewmungal v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).................................................9

*Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11 Civ. 5018, 2012 WL 715973 (E.D.N.Y. Mar. 3, 2012) ..............................................................................................12, 18

*Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006) ...........................................................................................................13

*United States v. Sabhnani*, 566 F. Supp. 2d 139 (E.D.N.Y. 2008)...................................24

*Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397 (S.D.N.Y. 2012) ................................8, 10

*Yahares v. Restaurant Assocs. Events Corp.*, No. 15CV1328, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011).................................................................................23

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005)...................................10

## Statutes and Regulations

29 C.F.R. § 791.2.................................................................................................................8

29 U.S.C. § 202(a)..............................................................................................................7

29 U.S.C. § 207(a)(1)..........................................................................................................8

Federal Rule of Civil Procedure 23 ....................................................................................8

N.Y. Labor Law § 195.................................................................................................22, 23

On behalf of building superintendents, porters and handymen at approximately 230 buildings in New York City, Plaintiffs and the putative class assert minimum wage and overtime claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The Complaint alleges wage claims against the buildings' investment entities, management entities, title-holding entities and individual executives and owners, which operate as a unified enterprise (collectively, the "E&M Enterprise" or "Defendants").

By this motion, Plaintiffs respectfully request that the Court conditionally certify a collective action and permit the circulation of a notice of pendency to all of Defendants' current and former superintendents, porters and handymen under the FLSA, and equitably toll the statute of limitations from, at the very least, the date of the filing of this motion. At this early stage of the litigation, Plaintiffs need only make a modest showing that they and Defendants' other former and current employees are similarly situated, which means that they were subject to a common plan or policy by Defendants that violated the FLSA. Declarations submitted by the two Representative Plaintiffs (superintendents), two Opt-in Plaintiffs (a porter and a handyman) and a non-party employee (a handyman) of Defendants show that Defendants systematically paid workers a set weekly wage no matter how many hours they worked and did not pay them overtime for work in excess of 40 hours per week. The allegations in these declarations are corroborated by complaints of similar FLSA violations in at least three other individual lawsuits against Defendants' constituent entities.

The evidence in the present case is stronger than others where conditional certification has been granted. Here, five supporting declarations from Defendants' employees and complaints in no less than three other FLSA lawsuits readily establish that Plaintiffs and the

putative class were victims of a common policy or plan that violated the FLSA. In addition to this evidence, Defendants themselves have submitted documents to this and other tribunals in which they effectively concede that, despite the fact that title to each building is in the name of a holding company, the E&M Enterprise operates its buildings and sets its personnel policies through centralized ownership, management and control as a "syndicate." They have also defended an age discrimination complaint by submitting a list of approximately 280 superintendents and employees (at buildings throughout New York City) as proof of enterprise-wide personnel policies. In sum, based on the economic reality of the E&M Enterprise's centralized functioning, this Court should conditionally certify an FLSA class of maintenance personnel (superintendents, porters and handymen) at *all* of the E&M Enterprise's buildings.

The distribution of notice to putative class members is of particular significance here, and equitable tolling especially warranted, because they are some of the most vulnerable workers in the United States economy – those that the FLSA was squarely intended to protect. The vast majority of the putative class members do not speak English and lack awareness of their rights under the FLSA. Most are immigrants, with a significantly heightened vulnerability to exploitation and, understandably, a far greater reluctance than other workers to bring independent lawsuits to enforce their wage rights. Accordingly, Plaintiffs ask the Court to:

(a)     approve the text of the enclosed Notice of Pendency and Consent to Become a Party Plaintiff;

(b)     permit Plaintiffs to circulate a Notice of Pendency and Consent to Become a Party Plaintiff;

(c)     require Defendants to provide Plaintiffs with a complete list of names, addresses, and primary spoken and written languages of their superintendents, porters and handymen from six years preceding the filing of the Complaint until the date this motion is decided, in paper and electronic form;

(d)     permit all superintendents, porters, handymen and similarly situated individuals 60 days to opt into this case;

(e)     toll the statute of limitations for all superintendents, porters, handymen and similarly situated individuals from, at the very least, the date of this motion until the Court issues an order on this motion; and

(f)     grant any further relief that the Court deems just and proper.

## STATEMENT OF FACTS

### A.  The E&M Enterprise

The "E&M Enterprise owns and manages approximately 230 apartment buildings in New York City.  Declaration of Marc A. Rapaport, dated March 6, 2017 ("Rapaport Decl."), ¶ 3, Exh. 1 (Complaint ¶¶ 6 – 8, 273 – 283 and Sched. A).  Despite the fact that title to each of the buildings is in the name of a separate holding company, the E&M Enterprise functions as one entity, with shared and centrally-controlled management, supervision and payroll across all buildings that are ultimately owned by three individuals: Defendants Irving Langer ("Langer"), Leibel Lederman ("Lederman") and Aryeh Ginzberg ("Ginzberg").  *See* Rapaport Decl., Exhs. 6 (Harlem Portfolio Equity Structure) and 7 (Management Agreement); Complaint ¶¶ 8, 12, 13; *see also* deposition testimony of Meyer Brecher, Nov. 18, 2015 ("Brecher Dep.") (Dkt. 91-5 at 3 – 4); Declaration of Francisco Lopez, Mar. 5, 2017 ("Lopez Decl."), ¶¶ 3, 13; Declaration of Pedro Batista, Mar. 5, 2017 ("Batista Decl."), ¶¶ 3, 11, 12, 15, 24, 25, 29; Declaration of Antonio Reyes ("Reyes"), Mar. 5, 2017 ("Reyes Decl."), ¶ 3.

The E&M Enterprise's practices and policies are centralized across all buildings for all maintenance employees, regardless of job title.  *See* Lopez Decl. ¶¶ 12, 18, 19, 20; Batista Decl. ¶¶ 28, 29, 30; Reyes Decl. ¶11.  At whichever of Defendants' buildings an employee is located, and regardless of the employee's job title and duties, Defendants use the same shared management offices (975 Walton Ave in the Bronx and 1465A Flatbush Ave in Brooklyn) and

centrally handle payroll. *See* Lopez Decl. ¶ 7; Batista Decl. ¶¶ 2, 15, 16, 17, 25; Reyes Decl. ¶¶ 6, 8, 10. Large numbers of employees (including the E&M Enterprise's team of approximately 30 handymen) work across a wide range of Defendants' buildings, to which they are dispatched each morning after they report to Defendants' office at 975 Walton Avenue in the Bronx. Reyes Decl. ¶ 4.

As employer, the E&M Enterprise goes interchangeably by the names "E&M" and "Galil." Batista Decl. ¶ 2; Brecher Dep. (Dkt. 91-5) at 4. In its memorandum to superintendents and porters, dated December 4, 2012 (the "12/4/12 Memorandum"), the E&M Enterprise articulated – in the clearest of terms – that its enterprise-wide management controlled the payroll practices and other terms and conditions of employment, including overtime compensation. (In support of Defendants' motion to dismiss this case, they submitted a copy of the 12/4/12 Memorandum to this Court [Dkt. 42-9]). The final page of the 12/4/12 Memorandum states, in bold capitalized letters, that "StaffE&M" is the superintendents' and porters' "EMPLOYER." (Dkt. 42-9 at 3).

Previously in this lawsuit, Defendants requested dismissal and/or limitation of Plaintiffs' claims based on their assertion that Plaintiffs Usvaldo Contrera ("Contrera") and Francisco Lopez ("Lopez") were solely employed by the title holding entities (638 West 160 Holdings LLC and 655 West 160 Holdings LLC) where they were superintendents, rather than the umbrella managerial and investment entities. But Defendants have asserted precisely the opposite contention in other legal proceedings. As noted above, even the documents that Defendants filed in this case (for example, the 12/4/12 Memorandum) describe "E&M," "Galil" and/or "StaffE&M" as the Plaintiffs' employers, and they make no mention of the title-holding entities. In addition, as discussed below, in their filings with the New York State Division of Human

Rights ("NYSDHR") in opposition to Plaintiff Lopez' discrimination claim, Ephraim Weiss ("Weiss"), Defendants' Property Manager, stated under oath that Lopez "was employed by E&M Bronx Associates LLC." *See* Lopez Decl. Exh. D (Affidavit of Ephraim Weiss, sworn to May 14, 2015 ("Weiss Aff.") ¶12).

In sum, there is ample evidence of the E&M Enterprise's centralized ownership, control and personnel and wage practices, which extend to *all* of the buildings listed in Schedule A of the Complaint.

### B. Representative and Opt-In Plaintiffs

Plaintiffs include two Representative Plaintiffs, both of whom worked for the E&M Enterprise as superintendents, and two Opt-in Plaintiffs, one of whom worked as a handyman and superintendent and the other as a porter. Rapaport Decl. ¶ 4. Plaintiff Contrera was employed by the E&M Enterprise from 2005 through July 1, 2015, as superintendent of 655 West 160th Street, New York, New York. Declaration of Usvaldo Contrera, dated March 6, 2017 ("Contrera Decl."), ¶2. Plaintiff Lopez was employed by the E&M Enterprise from March 1995 through April 2014, as a superintendent at 638 West 160th Street, New York, New York. Lopez Decl. ¶2. (Lopez and Contrera are collectively referred to herein as "Named Plaintiffs" or "Representative Plaintiffs.")

Opt-in Plaintiff Pedro Batista ("Batista") filed a consent herein on September 1, 2016. Rapaport Decl. ¶ 7 (Dkt. 37). Batista worked for the E&M Enterprise from April 2014 through March 2016, initially as a handyman, in which capacity he performed work at 15 different buildings, and then as a superintendent at 638 West 160th Street, New York, New York. Batista Decl. ¶¶ 2, 3, 23, 26. Opt-in Plaintiff Fabian Herrera ("Herrera") filed a consent herein on October 6, 2017. Rapaport Decl. ¶ 8. (Dkt. 48). Herrera began working for the E&M Enterprise

in approximately 2013, and served as a porter/assistant to superintendent at 638 and 655 West 160th Street, New York, New York. Rapaport Decl. ¶ 8 (Dkt. 48 at p. 2); Declaration of Fabian Herrera, March 1, 2017. ("Herrera Decl."), ¶2. (Batista and Herrera are collectively referred to herein as "Opt-in Plaintiffs"). Non-party Antonio Reyes ("Reyes") was employed by the E&M Enterprise as a handyman servicing 50 different buildings from 2012 through March 2016. Rapaport Decl. ¶9; Reyes Decl. ¶¶ 2, 8.

Defendants completely failed to pay Plaintiffs for any hours that they worked in excess of forty each week at any rate of pay, let alone at the minimum wage rate of pay or their overtime rates of pay. *See* Lopez Decl. ¶¶13, 17; Batista Decl. ¶¶ 22, 31; Reyes Decl. ¶16; Herrera Decl. ¶ 5, 6, 9; Contrera Decl. ¶¶ 8, 9. As superintendents, Contrera, Lopez and Batista were required to be on-call for tenants' requests. *See* Contrera Decl. ¶¶ 3-6; Lopez Decl. ¶¶14, 15; Batista Decl. ¶ 27. As superintendents, porters and handymen, Defendants' employees were required to use their own tools to perform their jobs, with no compensation for the cost. *See* Lopez Decl. ¶ 4; Batista Decl. ¶¶ 20, 21, 32; Reyes Decl. ¶16; Contrera Decl. ¶ 12.

## C. Putative Collective Plaintiffs

The proposed recipients of the notice of pendency consist of superintendents, porters and handymen employed by the E&M Enterprise. Representative Plaintiffs, Opt-in Plaintiffs, and putative plaintiffs have claims for, among other things, unpaid overtime wages of time-and-one-half of their regular wages under federal and New York state law. Complaint ¶¶ 1, 17, 18, 315 – 320. A large percentage of Defendants' employees are immigrants from Spanish-speaking countries, and their ability to read or speak English is very limited. Rapaport Decl. ¶ 11; *see also* Lopez Decl. ¶23; Batista Decl. ¶33; Reyes Decl. ¶22; Contrera Decl. ¶13.

As discussed in Plaintiffs' Opposition to Defendants' Motion to Dismiss, the approximate number of putative class members (286) and many of their names (as of August 12, 2014) were identified by Defendant E&M Bronx Associates LLC ("E&M Bronx") in its submissions to the NYSDHR in response to Lopez' age discrimination suit. Specifically, E&M Bronx submitted a seven-page spreadsheet identifying superintendents and porters working at Defendants' buildings from April 2012 through April 2014 (Lopez Decl. Exh. E and Dkt. 91-1) and employee detail pages for superintendents at Defendants' buildings. (Rapaport Decl. Exh. 2 and Dkt. 91-3). These documents, which name nearly 300 porters and superintendents, were submitted as purported proof of the allegedly non-discriminatory personnel practices and policies that E&M Bronx – as "employer" – had with respect to the E&M Enterprise's superintendents and porters. E&M Bronx successfully cited these documents, and the age diversity of its nearly 300 superintendents and porters, as proof of how Lopez was treated compared to similarly situated employees in his job. In sum, Defendants' own words show that superintendents, porters and handymen at *all* of the buildings listed on Schedule A of the Complaint are similarly situated.

## ARGUMENT

## I. THE COURT SHOULD CONDITIONALLY CERTIFY A COLLECTIVE ACTION.

The Court should conditionally certify a collective action because Plaintiffs have met their minimal burden at this preliminary stage of litigation and first step of collective action certification by demonstrating that they are "similarly situated" to other building superintendents, porters and handymen that are or were employed by Defendants.

### A. Background Legal Principles under the FLSA.

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of

workers...." 29 U.S.C. § 202(a).  The FLSA requires employers to pay "any of [their] employees who in any workweek ... work longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  In situations where two or more entities employ an individual jointly, they are jointly and severally liable for any FLSA violations. 29 C.F.R. § 791.2.

Section 216(b) provides for a private right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the FLSA overtime provisions, and has its own right of collective certification, separate and apart from Federal Rule of Civil Procedure 23.  Like Rule 23, § 216(b) provides individuals, whose claims would otherwise be prohibitively expensive to adjudicate, the "advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  "A collective action under section 216(b) is nonetheless a 'fundamentally different creature than the Rule 23 class action,' as the latter 'does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent.'" *Colon v. Major Perry Street Corp.*, No. 12 Civ. 3788, 2013 WL 3328223 *3 (S.D.N.Y. Jul. 2, 2013)(quoting *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).

**B.  The Two-Step Process of Certifying a Collective Action and Definition of "Similarly Situated" Employees.**

"Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are 'similarly situated' and give consent to become a party in a writing filed with the court."  *Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (quoting 29 U.S.C. § 216(b)).  "The Second Circuit Court

of Appeals has endorsed a two-step method of certification in an opt-in collective action under the FLSA." *Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 401–02 (S.D.N.Y. 2012).

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Siewmungal v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations omitted). This determination requires only a "modest factual showing" from plaintiffs that "they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id*. The standard at this point is "considerably less stringent than the requirements for class certification under Rule 23." *Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012).

Although "[t]he 'modest factual showing' cannot be satisfied simply by unsupported assertions, [ ] it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist." *Poplawski*, 2012 WL 1107711 at *3; s*ee also Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008). Accordingly, at this preliminary pre-discovery stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Guillen v. Marshalls of Mass., Inc.*, 750 F.Supp.2d 469, 475 (S.D.N.Y. 2010). "The test is whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action." *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004); *see also Colon*, 2103 WL 3328223, at *3.

Because the standard at the first stage is "fairly lenient," courts "typically grant conditional certification.'" *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 332, 2009 WL 1585979, at *2 (S.D.N.Y. Jun. 3, 2009); *see also Raniere v. Citigroup Inc.*, No. 11 Civ. 2448, 2011 WL 5881926, at *22 (S.D.N.Y. Nov. 22, 2011) ("the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low"); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005) ("it is best to authorize a collective action and then 'wait... to see what the facts bear out'").

"Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). "In making its determination at this first state, the Court may consider a plaintiff's affidavit and hearsay statements." *Ali v. N.Y. City Health & Hospitals Corp.*, No. 11 Civ. 6393, 2013 WL 1245543, at *2 (S.D.N.Y. Mar. 27, 2013). Defendants, however, may not defeat a court's determination that plaintiffs are similarly situated by submitting their own affidavits. *See Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008).

"If the plaintiffs demonstrate that 'similarly situated' employees exist, the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process." *Winfield*, 843 F.Supp.2d at 402.

## C. Plaintiffs Have Satisfied Their Minimal Burden of Showing that They Are "Similarly Situated" to Other Superintendents, Porters and Handymen Employed by Defendants.

At this early stage of litigation and during this first step of collective action certification,

Plaintiffs have more than satisfied their minimal burden of showing that Defendants adopted a centralized policy or plan whereby they did not pay superintendents, porters and handymen applicable minimum wage and overtime rates.  In particular, Plaintiffs Contrera and Lopez, Opt-in Plaintiffs Batista and Herrera, and non-party Reyes, have all alleged that they were subject to similar conduct.  In their supporting declarations they all alleged that they worked substantially more than forty (40) hours a week and were paid a flat salary no matter how many hours they worked.  *See* Lopez Decl. ¶¶13, 17; Batista Decl. ¶¶ 22, 31; Reyes Decl. ¶¶16; Herrera Decl. ¶ 5, 6, 9; Contrera Decl. ¶¶ 8, 9.  They also alleged that they spoke with other workers who were not paid overtime.  *See* Lopez Decl. ¶¶ 7,8; Batista Decl. ¶ 30; Reyes Decl. ¶ 18; Contrera Decl. ¶ 10.  Even though Plaintiffs' paychecks purported to state an hourly rate, that was a fiction.  Plaintiffs received the same lump sum, week-after-week, irrespective of how many hours they worked.

The existence of other court cases against an employer for overtime and wage violations may constitute evidence of a common policy.  *See Gomez v. PNC Bank*, 306 F.R.D. 156, 159 (N.D. Ill. Jul. 24, 2014).  Here, no less than three other wage and hour complaints have been filed in the S.D.N.Y. by maintenance workers against E&M constituent entities.  Rapaport Decl. Exhs. 8, 9 and 10.

Moreover, the declarations submitted herewith demonstrate that the E&M Enterprise functions as one entity, with shared management and supervision across all buildings (Lopez Decl. ¶¶ 3, 13; Batista Decl. ¶¶ 3, 11, 12, 15, 24, 25, 29; Reyes Decl. ¶¶ 3) and regardless of job title and duties (Lopez Decl. ¶¶ 12, 18, 19, 20; Batista Decl. ¶¶ 28, 29, 30; Reyes Decl. ¶11).  *See also Rosso v. Pi Mgmt. Assocs.*, No. 02 Civ. 1702, 2005 WL 3535060 *19 (S.D.N.Y. Dec. 22, 2005) (business entities that each own commercial real estate but are, in turn, owned by one individual, and share address and payroll services, constitute a unified enterprise for purposes of

FLSA).

These declarations and other complaints set forth sufficient allegations to satisfy the requirement of a "modest factual showing" that Plaintiffs Contrera and Lopez, Opt-in Plaintiffs Herrera and Batista and the putative class members "together were victims of a common policy or plan that violated the law." *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *see also Gani v. Guardian Serv. Indus. Inc.*, No. 10 Civ. 4433, 2011 WL 167844, at *1 (S.D.N.Y. Jan. 13, 2011) (authorizing notice where an affidavit by counsel for plaintiff and plaintiff's own affidavit stated that the plaintiff "and others ... worked more than 40 hours per week but were not paid for their excess hours"); *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 WL 7142139, at *1 (S.D.N.Y. Aug. 9, 2007) (finding "enough of a factual nexus" where the plaintiff and a former waiter submitted affidavits describing FLSA non-compliant tip policies and payroll practices at a restaurant); *Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11 Civ. 5018, 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012) (certifying collective action where a security guard stated in his affidavit that he and all current and former security guards were subject to common overtime policy); *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143 at *5-6 (E.D.N.Y. Feb. 3, 2009) (affidavits from opt-in plaintiffs and allegations about conversations with co-workers provided basis to find employees similarly situated).

In *Colon*, 2013 WL 3328223, at *3, the court certified a class of superintendents who brought wage violation claims against corporate defendants which, in turn, owned and managed over 100 residential buildings in New York State. The evidence in the present case is even stronger than *Colon* -- the five supporting declarations, declaration of counsel, and complaints in no less than three other lawsuits, readily establish that Plaintiffs and the putative class were victims of a common policy or plan that violated the FLSA. Indeed, "it is beyond dispute that

courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." *Colon*, 2013 WL 3328223, at *3 (citing *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317, 331 (S.D.N.Y. 2010) (conditional certification granted based on two affidavits submitted by plaintiff); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditional certification granted based on three affidavits)).

Based on Defendants' prior arguments on their motion to dismiss, it is anticipated that Defendants will argue against conditional certification by denying that they are a unified enterprise and denying any uniform personnel policy. Defendants previously argued that the only employers of Named Plaintiffs are the holding companies that nominally own the buildings where Named Plaintiffs worked. *See* Defendants' Mem. of Law in Support of Motion to Dismiss, dated Sept. 23, 2016, at 23 (Dkt. 43). However, in seeking dismissal, Defendants, in essence, admitted that they had a policy common for all superintendents. In support of their motion to dismiss, Defendants submitted a declaration of Galil's current CFO and E&M's prior CFO, Scott Katz. In his declaration, Katz referred to and attached a copy of a 12/4/12 Memorandum to employees of "StaffE&M" about Defendants' purported overtime policy. Declaration of Scott Katz, dated September 19, 2016 ("Katz Decl."), Exh. E (Dkt. 42-9). Defendants apparently submitted this memorandum to the Court to assert that their overtime policy was lawful, a substantive issue that is premature at this preliminary stage. The memorandum is relevant to the present motion, however, because it demonstrates unified policies.[1]

---

[1] In any event, it is well established that an employer may not avoid FLSA liability merely by promulgating "compliant handbooks and policies, while letting their managers run roughshod

In this connection, in a submission to the NYSDHR to defend against Lopez' age discrimination charges, Defendants attached employee data sheets that identified every superintendent and porter as an employee of "Staff E&M" to emphasize company-wide personnel policies and practices common to all buildings of the E&M Enterprise. Lopez Decl. ¶10, 11, 12, Exh. E. Additionally, the signature pages of the "Management Agreement" between SG2-E&M Harlem Portfolio Owner LLC (as "portfolio owner"), several "deed holder" entities and E&M Bronx (as manager), could not make the centralized nature of the E&M Enterprise any more plain: Defendant Irving Langer signed this agreement on behalf of E&M Bronx, the portfolio owner and each and every deed holding entity. Rapaport Decl. Exh 7. Together, these and other documents constitute undeniable proof that the entities that make up the E&M Enterprise are only nominally separate; the E&M Enterprise is centralized and deeply intertwined and employees of all buildings are subject to common payroll practices and policies.

Plaintiffs are not the first to allege that Defendants' operation of the E&M Enterprise as a unified and vertically-integrated residential real estate business under the control of Defendants Langer, Lederman and Ginzberg – with the E&M Enterprise's hundreds of buildings only nominally titled in the names of individual LLCs. This description was also provided in detail in the Affidavit of Georgia Malone ("Malone"), sworn to on June 23, 2016 (the "Malone Aff.", Exhibit 11 to the Rapaport Decl.). Malone, the real estate broker who introduced Defendants to a portfolio of 90 buildings in Manhattan and the Bronx (including the buildings where Contrera and Lopez worked), brought a claim against Defendants for a commission. In that suit, she avers that:

> [I]t is the Defendants' *modus operandi* to operate a common enterprise

---

over the FLSA's requirements." *Ansoralli v. CVS Pharm., Inc.*, No. 16-Civ-1506, 2017 WL 570767 *5 (S.D.N.Y Feb. 13, 2017).

> under the central control of Defendants Irving Langer, Michael Langer,
> Aryeh Ginzberg and Leibel Lederman. Indeed, for decades these individual
> Defendants have acted through E&M Associates, and now Galil Enterprises,
> to acquire and manage hundreds of apartment buildings in the City of New
> York through newly formed entities created solely for the purpose of taking
> title at closing.

Malone Aff. [Rapaport Decl. Exh. 11] ¶ 44. Malone, a broker familiar with Defendants'

business structure, also notes that the address for each of the title holding companies is the same

and further avers that, "all of the purchasing entities are inter-related and are all related to,

affiliated with or are in partnership or joint venture with E&M Associates and its members and

partners – Irving Langer, Leiber Lederman, Aryeh Ginsberg, Scott Katz and Michael Langer."

Malone Aff. [Rapaport Decl. Exh. 11] ¶ 41.

In fact, Defendants do not appear to operate with a consistent approach concerning which

of their entities is, at any given moment, serving as any given Plaintiffs' employer. In most

instances, they interchangeably refer to their enterprise and/or the superintendents' "employer"

as "E&M" or "Galil." Batista Decl. ¶2. Indeed, each of Defendant entities does not, in practice,

function separately, and Defendants themselves have repeatedly and unambiguously described

the E&M Enterprise as a "syndicate," the ultimate control of which is in the hands of three

individuals: Defendants Langer, Ginzberg and Lederman. *See* Brecher Dep. [Dkt. 91-5] 58:9 –

59:6. The interchangeability by which Defendants refer to the E&M Enterprise's constituent

entities is evidenced, *inter alia*, by:

- Statements on Galil Management's own website that describe Galil as *buying* and *owning* buildings and portfolios of buildings. *See* Rapaport Decl. Exh. 12; *see also Belizaire v. Rav Investigative & Sec. Servs.*, 61 F.Supp. 3d 336, 347 (S.D.N.Y. 2014)("This Court… may take judicial notice of the information contained on defendant's own website.");
- Reyes' pay stubs from LGL2 Bronx Portfolio LLC, LGLS Bronx Portfolio LLC, Bronx Platinum Portfolio LLC and StaffPro/Staff E&M (Reyes Decl. ¶ 5, 6, Exhs. A, B and C);

- Reyes' and Batista's employee identification cards, which list Galil, while Contrera's and Lopez' cards list E&M Associates, LLC – despite the fact that Lopez and Batista were both located at the same building (638 West 160th Street) (Reyes Decl ¶7, Lopez Decl. Exh. B; Batista Decl. Exh. A; Contrera Decl. Exh. A);
- The termination letter issued to Contrera was on Galil letterhead but was signed on behalf of E&M Associates LLC; it makes no mention of the title-holding entity that Defendants assert was Contrera's employer (Contrera Decl. Exh. B); and
- A Collective Bargaining Agreement, dated July 1, 2012 (the "Local 2 CBA"), that Defendants submitted in support of their motion to dismiss, which purportedly applies to superintendents, porters and building service employees at five buildings (*See* Katz Decl. [Dkt. 42-4] Exh. H [Dkt. 42-12]). The Local 2 CBA identifies the "Employer" of these employees as "E&M Associates Management" (Local 2 CBA [Dkt. 42-12]).

Beyond the context of this case, Defendants have nowhere else characterized Contrera and Lopez as employees of the title-holding entities (638 West 160 Holdings LLC and 655 West 160 Holdings LLC). To the contrary, in both their actions and their words, Defendants have explicitly, repeatedly and consistently indicated precisely the opposite. As noted above, Defendants' Property Manager, Weiss, swore in an affidavit that Lopez "was employed by E&M Bronx Associates LLC." (*See* Weiss Aff. [Lopez Decl. Exh. D] ¶ 12). Also, Defendants' paychecks to Plaintiffs, employee identification cards distributed to Plaintiffs, memoranda addressed to "all" superintendents and porters, and Defendants' submissions to the NYSDHR all – without exception – identify the Named Plaintiffs' and Opt-in Plaintiffs' employers as one or more of the E&M Enterprise's managing umbrella entities. *All* of the Named Plaintiffs' and Opt-in Plaintiffs' paystubs were either from an E&M umbrella entity or, more recently, from a single payroll service that handled payroll for the entire E&M Enterprise (StaffPro, Inc., with the name "StaffE&M" at the bottom of each pay stub). *See* Reyes Decl. ¶¶ 5, 6, Exhs. A. B, C.

In sum, Defendants' words and payroll practices uniformly indicate that the E&M Enterprise centrally managed its personnel and payroll functions with respect to superintendents,

porters and handymen, without regard to the particular entity that nominally held title to the individual buildings that the E&M Enterprise controls. Any attempt to characterize Defendants as anything other than one enterprise is disingenuous at best – it contradicts Defendants' manner of operation and their own prior representations, which establish common personnel policies across all buildings and employees.

### D. The Putative Class of all Superintendents, Porters and Handymen Employed by Defendants is Not Overly Broad and Should be Certified.

It is expected that the Defendants might argue that the putative class is overly broad based upon (i) geography and/or (ii) job responsibilities. These assertions would not be supported by the case law.

First, even though Plaintiffs work at different building locations nominally owned by different corporate entities, Plaintiffs are still similarly situated to putative class members. Unlike nationwide or statewide classes, this case covers a relatively narrow geographic area (New York City) and an organization run centrally from, at most, one or two offices, with a single payroll service. Plaintiffs have submitted declarations of employees who (i) have worked at more than one location yet received paychecks from the same entities, namely StaffPro and E&M (Batista Decl. ¶16; Reyes Decl. ¶¶ 6, 8, 10; Herrera Decl. ¶¶ 2, 3) and (ii) have personal knowledge of other employees who experienced the same policies (Batista Decl. ¶30; Reyes Decl. ¶18; Lopez Decl. ¶¶ 7, 8; Contrera Decl. ¶10). Courts regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs allege that they were subject to the same unlawful policy or practice. *Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* 828 F. Supp. 2d 508, 516-17 (E.D.N.Y. 2011) (collecting cases); *see also Mendoza v. Ashiya Sushi 5, Inc.,* No. 12 Civ. 8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013); *Cordova v. SCCF,* No. 13-CV-05665, 2014 WL 3512820, *5

(S.D.N.Y. Jul. 16, 2014)(Swain, J.); *Agudelo v. E & D LLC*, No. 12 Civ. 0960, 2012 WL 5426420 (S.D.N.Y. Nov. 5, 2012); *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317 (S.D.N.Y. 2007); *Cruz v. Ham N Eggery Inc.*, No. 15 Civ. 3228, 2016 WL 4186967 *3-4 (E.D.N.Y. Aug. 8, 2016); *Marin v. Apple-Metro, Inc.,* No. 12-cv-5274, 2014 WL 7271591, at *2 (E.D.N.Y. Dec. 18, 2014); *Lamb v. Singh Hospitality Grp., Inc.,* No. 11 Civ. 6060, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013).

The present case is similar to *Siewmungal*, 2012 WL 715973, at *3, where the court conditionally certified a class of all security guards at numerous residential buildings owned by defendants. The court was not convinced that the class should be limited to the one building where plaintiff worked, explaining that there was no reason to believe that defendants would treat security guards at one building location differently than at others. *Id.* Like the allegations in *Siewmungal*, Plaintiffs' assertions alone allow the court to draw a "very viable inference" that others are similarly situated to them, warranting conditional collective action certification.

Second, the fact that the Plaintiffs occupy different titles (superintendents, porters and handymen) does not defeat certification. Plaintiffs do not need to be "identically situated to potential class members," and need only provide evidence that a "demonstrated similarity exists among individual situations." *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472, at *16-7 (S.D.N.Y. Nov. 30, 2005); *see also Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 251 (S.D.N.Y. 2010) (even at final certification stage, need only show that plaintiffs' positions are similar, not identical); *Dalton v. GEM Financial Services, Inc.*, No. 15-cv-05636, 2016 WL 3676428, *3 (E.D.N.Y. Jul. 7, 2016) ("relative differences existing between non-exempt employees in terms of job function or work location are not dispositive in determining the appropriateness of initial class certification"). At this stage, the courts do not scrutinize

possible factual variations between plaintiffs.  *Colon*, 2103 WL 3328223, at *3 (citing *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)("Thus, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification.")); *see also Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y.2007) ("[T]he factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.").

The jobs of porters, supers and handymen involve flat salaries (even throuh the pay stubs recite the fiction of an hourly rate) without regard to the number of hours worked, and require that they all supply their own tools.  Lopez Decl. ¶4; Batista Decl. ¶¶ 20, 21, 32; Reyes Decl. ¶ 16; Contrera Decl. ¶ 12.  Any variations in job duties do not touch upon the essentials of the job, but rather solely bear on damages.  Lopez Decl. ¶ 14; Batista Decl. ¶ 26; Contrera Decl. ¶ 7; Herrera Decl. ¶ 8.  Tellingly, Batista's rate of pay and the entity listed on his paycheck did not change when his title changed from handyman to superintendent.  Batista Decl. ¶¶ 6, 7.

The present case is similar to *Iglesias–Mendoza*, 239 F.R.D. at 369, where the court conditionally certified a class of agricultural employees that included workers with various job responsibilities and hours.  There, the court noted that limited discovery had taken place and the alleged factual variations between job titles did not undercut plaintiffs' allegations of common wage and overtime practices.[2]  For these reasons, this case is distinguishable from *Fernandez v. Sharp Mgmt. Corp.*, No.16-CV-0551, 2016 WL 5940918, at *4 (S.D.N.Y. Oct. 13, 2016), where the court limited certification to superintendents.  Unlike *Fernandez*, where the named plaintiffs

---

[2] Given Defendants' pending motion to dismiss, Plaintiffs have *not yet had any discovery*. Therefore, should the court find that there is insufficient information for class certification, the court should afford Plaintiffs further opportunity to develop the factual record. *See Martinez v. Zero Otto Nove Inc.*, No. 15 Civ. 899, 2016 WL 3554992, at *5 (S.D.N.Y. June 23, 2016).

were only superintendents, here, there are Opt-in Plaintiffs, which include a porter and a handyman.[3] The present case is readily distinguishable from others – it already has two Opt-in Plaintiffs that served as both handymen and superintendents for Defendants and did not see any change in policies or even pay scale when they were moved to new roles.

In his declaration, Batista describes how he was initially hired as a handyman with the understanding that he would become a superintendent when a position became available. Batista Decl. ¶ 4. When Batista assumed the role of superintendent, the amount of his pay remained the same, as did the Defendants' practice of not providing any overtime compensation or even any method by which he could report overtime. Batista Decl. ¶ 6, 9, 10. Furthermore, the name of the entity that issued Batista's paycheck also remained the same, even though Batista worked at 15 different buildings as a handyman but was assigned to a single building as superintendent. Batista Decl. ¶ 3, 5, 7, 8. Similarly, Opt-in Plaintiff Herrera, whose normal job responsibilities involved being a porter, received exactly the same pay during the two-week period that he served as a substitute superintendent as he did for his porter work. Herrera Decl. ¶ 4. The Batista and Herrera declarations show that superintendents, porters and handymen were subject to common wage policies and practices. Moreover, the Batista Declaration (with Batista's averment that he worked at 15 different E&M buildings) and the Reyes Declaration (with Reyes' averment that he worked at 50 different E&M buildings) show that E&M Enterprise's practices of not paying overtime extended to its workers at buildings throughout Manhattan and the Bronx.

---

[3] To the extent the court may have concern about Opt-in Plaintiffs not being Named Plaintiffs, this Complaint may be deemed amended to include the Opt-in Plaintiffs as Named Plaintiffs. This, however, should not be an issue because opt-in plaintiffs effectively have the same status as representative plaintiffs. *See Perez-White v. Advanced Dermatology of N.Y. P.C.,* 2016 WL 4681221 (S.D.N.Y. Sept. 7, 2016) (for purposes of offer of judgment, opt-in plaintiffs no different than representative plaintiffs). Moreover, although not necessary, the Court may conditionally certify three distinct classes: superintendents, porters and handymen.

At this stage, Plaintiffs need only show that "they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *Iglesias–Mendoza*, 239 F.R.D. at 369. Plaintiffs have unquestionably met this modest burden.

II.     **THE COURT SHOULD APPROVE THE PROPOSED NOTICE OF PENDENCY AND ALLOW PLAINTIFFS TO MAIL IT TO ALL PUTATIVE PLAINTIFFS AFTER DIRECTING DEFENDANTS TO IDENTIFY AND PRODUCE CONTACT INFORMATION FOR SUCH PUTATIVE PLAINTIFFS.**

   **A. The Court Should Authorize the Circulation of the Proposed Notice of Pendency.**

Although FLSA § 216(b) contains no specific provision for issuing notice to prospective plaintiffs in collective actions, district courts have power to authorize the circulation of such a notice to potential plaintiffs. *See, e.g., Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F. 2d 335, 335-36 (2d Cir. 1979); *Hoffman v. Gjurovich*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)(citing *Hoffmann-La Roche*, 493 U.S. 165, *supra*; *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003).

Plaintiffs submit herewith a proposed Notice of Pendency and Consent to Become Party Plaintiff. *See* Rapaport Decl., Exhs. 13 & 14. The text of proposed notice lays out Plaintiffs' basic factual claims, explains to the putative plaintiffs the effect of joining or not joining the case, and provides contact information for Plaintiffs' counsel. The text of the proposed notice is similar to notices that have been approved by other judges in this and other districts in other collective actions for unpaid minimum or overtime wages. *See, e.g., Lynch*, *supra,* 491 F. Supp. 2d at 372.

   **B. Opt-ins Should Be Allowed 60 Days to Join this Action.**

The Court should allow putative opt-ins 60 days from the mailing of the notice to join

this action. Where, as here, putative opt-ins may be difficult to reach because they are immigrants, courts allow the putative opt-ins 60 days to join. *Diaz v. S&H Bondi's Dep't Store, Inc.*, No. 10 Civ. 7676, 2012 WL 137460, at *23-4 (S.D.N.Y. Jan. 17, 2012); *Enriquez v. Cherry Hill Mkt. Corp.*, No. 10-cv-5616, 2012 WL 440691, at *12 (E.D.N.Y. Feb. 10, 2012).

**C. The Court Should Order that Notice Be Provided in English and Other Languages.**

Where more than 25% of employees speak a primary language other than English, the Notice to be distributed must be accompanied by a translation into the mother tongue of the non-English speaking group. *See Gjurovich*, 282 F.Supp.2d at 99-100. Here, Plaintiffs are immigrants from Spanish-speaking countries, and their ability to read or speak English is limited. Rapaport Decl. ¶ 11; *see also* Lopez Decl. ¶23; Batista Decl. ¶33; Reyes Decl. ¶22; Contrera Decl. ¶13. A large percentage of Defendants' employees are similarly situated. Only Defendants, however, know what languages these other employees primarily speak and the Court should order Defendants to advise the mother tongue of these employees. Defendants should have this information in their possession insofar as New York Labor Law §195 requires that an employer provide non-English speaking employees a wage notice "in the language identified by each employee as the primary language of such employee." N.Y. Labor Law § 195(1).

**D. The Court Should Order Defendants To Disclose (in paper and electronic format) the Names and Last-Known Addresses of Prospective Plaintiffs Who Were Employees During the Six Year Statute of Limitations Period.**

While Plaintiffs have a document Defendants submitted to NYSDHR that appears to list all superintendents and porters of the E&M Enterprise as of mid-2014, only Defendants have the complete and current information concerning the names and addresses of potential plaintiffs in this case. The Supreme Court has confirmed this Court's inherent authority to require defendants to disclose such information so that Plaintiffs' counsel can circulate the Notice of

Pendency. *Hoffmann- LaRoche*, 493 U.S. at 170. Courts have since held that notices should be sent to all employees who worked for Defendants within six (6) years prior to the filing of the complaint. *See Raniere*, *supra*, 827 F. Supp. at 328 (citing cases and requiring production of list of individuals who were employed within the past six years); *Cano v. Four M Food Corp.*, 2009 WL 5710143 at *29-31 (same). It makes sense to notify of this lawsuit even those employees who did not work within the FLSA statute of limitations period because New York State law has a six-year statute of limitations. N.Y. Labor Law § 198(3). Judicial economy dictates that even those employees with no FLSA claims be advised on this lawsuit. *Raniere*, 827 F. Supp. 2d at 328.

### III.    THE COURT SHOULD EQUITABLY TOLL THE STATUTE OF LIMITATIONS FOR PUTATIVE OPT-IN PLAINTIFFS.

The Court should toll the statute of limitations for all putative opt-in Plaintiffs for *at least* the time while this motion is pending. Although the statute of limitations continues to run for each potential plaintiff until he or she files a consent to joinder form, courts have equitably stayed such claims while deciding motions to conditionally certify a collective action. *See, e.g., McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012); *Reyes v. NY F&B Servs. LLC*, No. 15CV2882, 2016 WL 796859 at *5 (S.D.N.Y. Feb. 22, 2016)(Swain, J.). In *McGlone*, the Court noted that where "putative class representatives and their counsel are diligently and timely pursuing the claims" they should "not be penalized due to the courts heavy dockets and understandable delays in rulings." *Id.* at 445.

Defendants' motion to dismiss, and the concomitant adjournments of the initial conference, delayed discovery and the prosecution of this case, including notice to the putative class. Equitable tolling is appropriate where a plaintiff has been "prevented in some extraordinary way from exercising his rights." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24

(2d Cir. 1985). Courts have found such extraordinary circumstances justify equitable tolling where there is delay caused by the time required for a court to rule on a motion. *See McGlone*, 867 F.Supp.2d at 445 (S.D.N.Y. 2012) (citing *Yahares v. Restaurant Assocs. Events Corp.*, No. 15CV1328, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)(collecting cases)). Here, the Complaint was filed in May 2016 and Defendants' motion to dismiss, originally alternatively styled as one for summary judgment, is pending.

The significant delay of prosecution of this case, through no fault of Plaintiffs, serves to hinder putative class members from becoming aware of the action and their ability to opt-in, which falls squarely within the concerns that warrant equitable tolling. *Kone v. Joy Construction Corp.*, No. 15CV1328, 2016 WL 866349 *2 (S.D.N.Y. Mar. 3, 2016) (Swain, J.)(quoting *Holmberg v. Ambrecht*, 327 U.S. 392, 397 (1946)(tolling of FLSA statute of limitations justified where plaintiff is unaware of cause of action)). Indeed, notice is of particular significance here, and equitable tolling especially warranted, because the vast majority of putative class members do not speak English and are "completely unaware of the FLSA or its minimum wage or overtime provisions." *United States v. Sabhnani*, 566 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2008) (vacated on other grounds).

Given that discovery and, with that, prosecution of this case, has been effectively suspended from its inception, the Court is warranted in tolling the statute of limitations from the date of the filing of the Complaint. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)(the time during which a party is prevented from obtaining legal relief is not counted for purposes of statute of limitations"); *see also Koval v. Pac. Bell. Tel. Co.*, No. C 12-1627, 2012 WL 3283428 at *20 (N.D. Cal. Aug. 10, 2012) (tolling FLSA statute of limitations from the date of the filing of the action). Alternatively, the statute of limitations may be tolled from

the date of Defendants' notice of its motion to dismiss, which delayed this case. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) (tolling FLSA limitations period during time summary judgment motion pending); *Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 WL 1539325 at *4-5 (W.D. Ark. May 25, 2007)(tolling FLSA statute of limitations from filing date of defendants' motion to stay proceedings); *c.f. Kassman v. KPMG LLP*, No. 11 Civ. 03743, 2015 WL 5178400 *20 (S.D.N.Y. Sept. 4, 2015)(on account of court delay in deciding motion to dismiss, tolling from date that motion was fully briefed). Otherwise, in the very least, the Court should the statute of limitations from the date of this motion for conditional certification.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request an order affording the relief requested herein and all other relief the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York     By:      /s/ Marc A. Rapaport (via ECF)
      March 7, 2017                 Marc A. Rapaport
                                        Meredith R. Miller
                                        Rapaport Law Firm, PLLC
                                        One Penn Plaza
                                        250 West 34th Street, Suite 2430
                                        New York, NY 10119
                                        Ph: (212) 382-1600