16-CV-03851 (LTS)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USVALDO CONTRERA and FRANCISCO LOPEZ,
individually and on behalf of all others similarly
situated,

Plaintiffs,

-against-

IRVING LANGER, et al.

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY FAIR LABOR STANDARDS ACT COLLECTIVE AND AUTHORIZE THAT NOTICE BE ISSUED TO ALL PERSONS SIMILARLY SITUATED**

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y.  11501
(516) 747-0300

Larry R. Martinez, Esq.
Loretta M. Gastwirth, Esq.
Gerald C. Waters, Jr., Esq.
Robert R. Barravecchio, Esq.
Christopher P. Hampton, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

      POINT I ............................................................................................................................. 2

            PLAINTIFFS' MOTION IS IMPROPERLY
            PREDICATED ON AN ERRONEOUS
            "INTEGRATED ENTERPRISE" THEORY OF
            LIABILITY.................................................................................................. 2

      POINT II ........................................................................................................................... 9

            THE SCOPE OF THE COLLECTIVE IS OVERLY
            BROAD......................................................................................................... 9

      POINT III ........................................................................................................................ 21

            ANY NOTICE OF PENDENCY, AND CONTACT
            INFORMATION REGARDING SAME, SHOULD
            BE LIMITED TO THE THREE YEARS
            PRECEDING THE FILING OF THE
            COMPLAINT ............................................................................................. 21

      POINT IV ........................................................................................................................ 22

            PLAINTIFFS ARE NOT ENTITLED TO
            EQUITABLE TOLLING.............................................................................. 22

CONCLUSION............................................................................................................................. 25

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                            <u>**Pages**</u>

Amendola v. Bristol-Myers Squibb Co.,
   558 F.Supp.2d 459 (2d Cir. 2008) ................................................................................. 23, 24

Apolinar v. R.J. Rest., LLC,
   No. 15-CV-8655(KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016)............................... 5, 8

Arena v. Plandome Taxi, Inc.,
   No. 12-CV-1078(DRH)(ETB), 2013 WL 1748451 (S.D.N.Y. Apr. 23, 2013)...............22, 24

Barfield v. New York City Hlth. and Hosp. Corp.,
   537 F.3d 132 (2d Cir. 2008)............................................................................................... 4, 9

Colon v. Major Perry Street Corp.,
   No. 12-CV-3788(JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013)...................................... 17

Cordova v. SCCF, Inc.,
   No. 13-CV-5665(LTS)(HP), 2014 WL 3512838 (S.D.N.Y. July 16, 2014) ............................ 5

Davis v. Lenox Hill Hosp.,
   No. 03-CV-3746(DLC), 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) ........................... 18, 19

Diaz v. Consortium Worker Educ., Inc.,
   No. 10-CV-01848(LAP), 2010 WL 3910282 (S.D.N.Y. Sept. 28, 2010) ................................ 8

Eng-Hatcher v. Sprint Nextel Corp.,
   No.07-CV-7350(BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009).............................. 10, 19

Fernandez v. Sharp Mgmt. Corp.,
   No. 16-CV-0551(JGK)(SN), 2016 WL 5940918 (S.D.N.Y. Oct. 13, 2016) ................. 8, 15, 20

Gomez v. PNC Bank,
   306 F.R.D. 156 (N.D.Ill. 2014)............................................................................................... 7

Hart v. Rick's Cabaret Int'l, Inc.,
   967 F.Supp.2d 901 (S.D.N.Y. 2013)................................................................................... 4, 8

Herman v. RSR Sec. Servs. Ltd.,
   172 F.3d 132 (2d Cir. 1999)............................................................................................... 4, 9

Hinterger v. Catholic Hlth. Sys.,
   No. 08-CV-380S(WMS), 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009)............................... 24

**Cases**                                                                                              **Pages**

Ikikhueme v. CulinArt, Inc.,
  No. 13-CV-293(JMF), 2013 WL 2395020 (S.D.N.Y. June 13, 2013) ..................................... 12

Jamie Urtubia v. Ba Victory Corp.,
  857 F.Supp.2d 476 (S.D.N.Y. 2012)..................................................................................... 22

Jeong Woo Kim v. 511 E. 5th Street, LLC,
  985 F.Supp.2d 439 (S.D.N.Y. 2013)................................................................................ 18, 19

Kassman v. KPMG LLP,
  No. 11-CV-03743(LGS), 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015) ................................. 23

Khan v. Airport Mgmt. Servs., LLC,
  No. 10-CV-7735(NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) .................................. 18

Korenblum v. Citigroup, Inc.,
  195 F.Supp.3d 475 (S.D.N.Y. 2016)............................................................................ 10, 20, 21

Laroque v. Domino's Pizza,
  557 F.Supp.2d 346 (E.D.N.Y. 2008) .......................................................................... 10, 13, 15

Lee v. ABC Carpet & Home,
  236 F.R.D. 193 (S.D.N.Y. 2006) ........................................................................................... 23

Lira v. Eagle Open Kitchen, LLC,
  No.14-CV-2356(KBF), 2014 WL 7910482 (S.D.N.Y. July 14, 2014)............................... 21, 22

Monger v. Cactus Salon & SPA'S LLC,
  No. 08-CV-1817(FB)(WDW), 2009 WL 1916386 (S.D.N.Y. July 6, 2009) ........................... 15

Morangelli v. Chemed Corp.,
  922 F.Supp.2d 278 (E.D.N.Y. 2013) ................................................................................... 6, 8

Paguay v. Barbasso, Inc.,
  No. 11-CV-6266(LTS)(HBP) (S.D.N.Y. July 17, 2012) ........................................................ 22

Patraker v. Council on the Env't of NYC,
  No. 02-CV-7382(LAK), 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003).............................. 24

Perez-White v. Advanced Dermatology of N.Y.P.C.,
  No. 15-CV-4858(PGG), 2016 WL 4681221 (S.D.N.Y. Sept. 7, 2016).................................. 17

**Cases**                                                                                                          **Pages**

Raniere v. Citigroup, Inc.,
    827 F.Supp.2d 294 (S.D.N.Y. 2011).........................................................................22

Reyes v. NY F&B Servs., LLC,
    No. 15-CV-2882(LTS)(DCF), 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016) .............. 10, 20, 22

Romero v. H.B. Automotive Grp., Inc.,
    No. 11-CV-386(CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ................................. 10, 17

Rudd v. T.L. Cannon Corp.,
    No. 10-CV-0591(TJM)(DEP), 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ............................ 13

Rosso v. Pi Mgmt. Assocs.,
    No. 02-CV-1702(KNF), 2005 WL 3535060 (S.D.N.Y. Dec. 23, 2005)………………………4

Sanchez v. El Rancho Sports Bar Corp.,
    No. 13-CV-5119(RA), 2014 WL 1998236 (S.D.N.Y. May 13, 2014) ............................. 21, 22

Sanchez v. JMP Ventures, LLC,
    No. 13-CV-7264(KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)...................................... 19

Shu Qin Xu v. Wai Mei Ho,
    111 F.Supp.3d 274 (E.D.N.Y. 2015) ..................................................................................... 24

Siewmungal v. Nelson Mgmt. Grp Ltd.,
    No.11-CV-5018(BMC), 2012 WL 715973 (S.D.N.Y. March 3, 2012)............................. 14, 15

U.S. v. Kates,
    No. 10-MJ-1057(JJM), 2011 WL 1256858 (W.D.N.Y. Apr. 1, 2011)....................................... 7

Vasquez v. Vitamin Shoppe Industs., Inc.,
    No. 10-CV-8820(LTS)(THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011) .................. 12, 22

Wang v. Palmisano,
    157 F.Supp.3d 306 (S.D.N.Y. 2016).........................................................................................23

Warman v. Amer. Nat'l Standards, Inst.,
    193 F.Supp.3d 318 (S.D.N.Y. 2016)......................................................................... 10, 18, 19

Zerilli-Edelglass v. N.Y.C. Trans. Auth.,
333 F.3d 74 (2d Cir. 2003)...........................................................................................................23

**<u>Federal Statutes</u>**                                                                                                 **<u>Page</u>**

29 U.S.C. § 206…….…..…………………………………………………………….........18

29 U.S.C. § 216…………………………………………………………………….....*passim*

**<u>Codes of Federal Regulations</u>**                                                                        **<u>Pages</u>**

29 C.F.R. § 785.11……….…..………………………………………………………....19

29 C.F.R. §§ 785.14-785.17………………………………………………………….....19

29 C.F.R. § 785.23……………………………………………………………………....19

29 C.F.R. §§ 785.24-785.26…………………………………………………………....19

## PRELIMINARY STATEMENT

On or about March 7, 2017 named plaintiffs Usvaldo Contrera ("Contrera") and Francisco Lopez ("Lopez") (collectively, "Plaintiffs"), former superintendents (a "Super") in two buildings only, moved to conditionally certify a Fair Labor Standards Act ("FLSA") Collective pursuant to 29 U.S.C. Section 216(b) (the "Collective") purportedly consisting of 265 Supers, porters and handymen who allegedly worked at over 200 buildings ("Plaintiffs' Motion").  The Motion necessarily fails.  Plaintiffs' Proposed "Notice of Lawsuit With Opportunity To Join" (Docket Entry ("DE") 110-13) seeks to conditionally certify an Action against 234 corporate and four individual defendants (collectively referred to as "Motion Defendants"[1]), yet Plaintiffs admit they were not directly employed by all Defendants. Instead, Plaintiffs seek to proceed against all Defendants by arguing each one should be considered Plaintiffs' "joint" employer pursuant to an "integrated enterprise" theory of liability.   However, courts in this Circuit summarily reject the "integrated enterprise" theory to impute "joint" employer liability and Plaintiffs have not established its applicability.   Given this, Plaintiffs cannot establish 238 distinct Defendants were Plaintiffs' "joint" employers, and the Collective must be limited to the two buildings in which Plaintiffs worked.

Even if Plaintiffs could certify a portion of the Collective beyond these two buildings, the scope sought is incredibly overbroad (it instead must be properly limited to only Supers/porters who worked in properties located at 638 West 160th Street ("638 West") and/or 655 West 160th Street ("655 West")) for three reasons.  First, every "factual" allegation concerning wage-and-

---

[1] The following entities are not affiliated with any of the named Defendants (and are not represented by the undersigned counsel): Manhattan Valley West, LLC, 117 West 141 LLC, 127 West 141 LLC, 137 West 141 LLC, 300 West 114-2107 8 LLC, 260 Elizabeth Street LLC, 262 Elizabeth Portfolio LLC, 264 Elizabeth Street Portfolio LLC, 266 Elizabeth Street Portfolio, LLC, 268 Elizabeth Street Portfolio LLC, and City Life 975.

hour policies applicable to Supers/porters relates only to those buildings.  Second, the Collective cannot include handymen because no handyman is a Named Plaintiff and handymen were subject to disparate wage-and-hour policies.[2]   Finally, the Action must exclude Union[3] and Prevailing Wage[4] Buildings because they were subject to distinct wage-and-hour policies.[5]

Next, to the extent any portion of the Collective may be certified, notice must be limited to putative collective members employed within only <u>three</u> years of the filing of the Complaint – as opposed to the <u>six</u> sought.  Since Plaintiffs do not bring minimum wage or overtime claims pursuant to the New York Labor Law (the "NYLL"), Plaintiffs' Notice and request for information must be limited by the FLSA's three year – at most – statute limitations.  Finally, as discussed in detail below, Plaintiffs are not entitled to equitable tolling as a matter of law or fact.

### POINT I

### PLAINTIFFS' MOTION IS IMPROPERLY PREDICATED ON AN ERRONEOUS "INTEGRATED ENTERPRISE" THEORY OF LIABILITY

Plaintiffs seek to include <u>all</u> Supers, porters, and handymen employed by <u>all</u> Motion Defendants as part of the Collective. Plaintiffs' Memorandum of Law in Support of Plaintiffs'

---

[2] As to this issue, the Complaint does not reference "handymen" whatsoever, and it cannot, because neither named Plaintiff ever performed relevant services as a "handyman." Further, Plaintiffs and affiants Fabian Herrera ("Herrera") and Pedro Batista ("Batista") allege handymen had a different supervisor than Supers/porters and had significantly different duties as well.  See, e.g., the Declaration of Usvaldo Contrera dated March 6, 2017 (DE 105) (the "Contrera Decl.") ¶¶2-7; the Declaration of Francisco Lopez dated March 5, 2017 (DE 106) (the "Lopez Decl.") ¶¶ 2, 13-17; the Declaration of Fabian Herrera dated March 1, 2017 (DE 108) (the "Herrera Decl.") ¶¶ 2, 3, 8; the Declaration of Pedro Batista dated March 5, 2017 (DE 107) (the "Batista Decl.") ¶¶ 3, 5, 12, 15, 18, 26-27.

[3] As will be discussed below, and as noted in the Declaration of Scott J. Katz, dated September 9, 2016 (DE 42-4) (the "Katz Decl. I") (DE 42-4), the "Union Buildings" include properties which were/are subject to Collective Bargaining Agreements (a "CBA") with  three separate unions.  Katz Decl. I ¶¶ 49-54 ("32BJ Buildings"), 58-60 ("Local 2 Buildings"), 64-66 ("Local 670 Buildings").

[4] As will be discussed below and noted prior – the "Prevailing Wage Buildings" include two buildings subject to New York City prevailing wage policies.  See Katz Decl. I Katz Decl. I ¶¶ 70-76 ("Prevailing Wage Buildings").

[5] Thus, any Collective Action beyond just two buildings must be limited so as to: (i) include only the Manhattanville properties (misidentified as belonging to a "Harlem Portfolio") which were managed by Ephraim "Effi" Weiss ("the Weiss-Managed Properties"); (ii) exclude handymen; and (iii) exclude Union and/or Prevailing Wage Buildings.

Motion ("Plaintiffs' Brief") (DE 111) ("Pl. Br."), p. 1.  Plaintiffs predicate their Motion on the misguided premise that <u>all</u> Motion Defendants are liable as Plaintiffs' "joint" employer under an "integrated enterprise" theory of liability (which is inapplicable to FLSA cases).   <u>See</u> Pl. Br. 2-3, 11, 14-15 (alleging the "E&M Enterprise" functions as a "common enterprise").   Plaintiffs' request is patently improper in that it: (i) attempts to circumvent the relevant procedural posture of the instant matter; (ii) ignores the relevant law of this Circuit; and (iii) misconstrues the relevant facts necessary to apply an "integrated enterprise" theory of liability.

### A.  Plaintiffs' Motion Improperly Reargues Issues Already Before This Court.

As set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss (DE 43) ("Def. MTD"), 31-37 and Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss (DE 98) ("Def. MTD Reply"), 18-22, Plaintiffs' reliance on an "integrated enterprise" theory in order to assert liability against 234 entities and four individual Defendants is meritless.  Also meritless is Plaintiffs' same attempt to use this theory of liability to support conditional certification of an FLSA collective for 200 plus buildings owned by 169 separate entities (<u>see</u> Compl. at ¶ 81) when there are only two buildings at which Plaintiffs Contrera and Lopez worked (638 West and 655 West (collectively, the "Subject Properties")) – and there are only two relevant entity owners (638 West 160 Holdings LLC and 655 West 160 Holdings LLC (the "Subject Property Entities")).  Similarly, Plaintiffs' Complaint identifies four "Management Entities" (E&M Bronx Associates, E&M Associates, Galil Management LLC and Galil Realty LLC), but only E&M Bronx Associates is alleged to be the managing agent for the Subject Properties.  <u>See id.</u> at ¶¶ 8 and 10(b), Schedule A at 8, Nos. 88 and 89.[6]

---

[6] Plaintiffs' Complaint identifies "Investment Entities" which it claims "perform investment and managerial functions", but there are no allegations that any potential collective plaintiffs work there.   <u>See</u> Compl. at ¶¶ 10(a) and 80. The "Investment Entities" are identified as: E&M Harlem Holdings LLC, E&M Harlem Equities LLC, E&M Lafayette Portfolio LLC, E&M Lafayette Owner LLC, Rainbow Estates LLC, Manhattanville Holdings, LLC,

Whether Plaintiffs may proceed at all upon their claims against 238 Defendants using an "integrated enterprise" theory is a primary, threshold issue before the Court on Defendants' Motion to Dismiss, currently <u>sub judice</u>.  Plaintiffs' Brief submitted herein, which attempts to re-brief their meritless arguments on "integrated enterprise" argued in opposition to Defendants' Motion to Dismiss, is nothing more than an improper Sur-Reply – which this Court previously denied Plaintiffs the right to file.  <u>See</u> DE 102.  Thus the Court is respectfully referred to Defendants' Memoranda of Law submitted on their Motion to Dismiss (DE 43 at 31-37 and DE 98 at 18-22) for Defendants' complete arguments concerning "integrated enterprise" liability.[7]

### B.  Plaintiffs' Factual Allegations Do Not Satisfy the Integrated Enterprise Test.

Even if Plaintiffs could proceed under an "integrated enterprise" theory (and they cannot), Plaintiffs' Motion must still be rejected for not satisfying the "integrated enterprise" test.  This test <u>would</u> consider factors of "'(1) interrelated operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership.'"  <u>Hart v. Rick's Cabaret Int'l, Inc.</u>. 967 F. Supp. 2d 901, 940 n. 16 (S.D.N.Y. 2013).  Similar to the joint employer analysis discussed in Defendants Memoranda in support of their Motion to Dismiss, "[c]ontrol of labor relations" is the key factor.  <u>Id</u>.[8]  Plaintiffs fail to establish this essential factor.

---

Galil Realty LLC and Galil Management LLC.  Plaintiffs' Complaint also identifies four individual defendants: Irving Langer, Leibel Lederman, Aryeh Ginzberg and Meyer Brecher (the "Individual Defendants").  Compl. at ¶¶ 45-73.  There are no allegations that these Individual Defendants have any direct employees.

[7] Defendants note that <u>Rosso v. Pi Mgmt. Assocs.</u>, Plaintiffs' only cited case concerning "integrated enterprise" liability (Pl. Br. 11) merely determined that defendants were an "enterprise" for purposes of determining if FLSA jurisdictional prerequisites had been met.  <u>See</u> 2005 WL 3535060, *6-7 (S.D.N.Y. Dec. 23, 2005).

[8] The actual "joint" employer test endorsed by the Second Circuit considers "economic reality" based on factors of formal control – whether the defendant: (1) could hire and fire the employee; (2) supervised and controlled conditions of employment; (3) determined rate and method of pay; and (4) maintained employment records, and factors of functional control: (l) whether an employee shifted from one employer's business premises to another's; (2) the degree to which the several defendants' agents supervised the work; and (3) whether the plaintiff worked exclusively for one defendant.  <u>See</u> <u>Barfield v. New York City Hlth. and Hosp. Corp.</u>, 537 F.3d 132, 141-143 (2d Cir. 2008).  No single factor is determinative.  <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2d. Cir. 1999).

From this litigation's inception, Plaintiffs have alleged without factual support that approximately 169 distinct title-holding entities; four separate "Management Entities"; and four individual defendants should be held liable for actions taken in buildings owned by just the Subject Property Entities, and managed by just one management company (E&M Bronx Associates).  See Compl. ¶¶ 8, 10(b), 82-250 and Schedule "A".  However, the Complaint does not contain a single allegation as to how 167 other title-holding entities, three other management companies, and four individuals actually controlled the labor relations of the two properties in which Plaintiffs/Opt-in plaintiffs worked as Supers/porters.  Def. MTD Reply, 11-12.  Common ownership and a common business plan or purpose is insufficient to impose liability; instead, the Defendants alleged to be a "joint" employer via an integrated enterprise must have centralized control of labor relations with plaintiffs' direct corporate employer.  Apolinar v. R.J. Rest., LLC, 2016 WL 2903278, *3-4 (S.D.N.Y. May 18, 2016).

The only new factual allegations in support of Plaintiffs' Motion which speak to any control are limited to the following: (i) Weiss purportedly supervised 30-40 Supers; and (ii) individuals by the name of "Medina" and/or "Mayer" purportedly supervised 25-30 handymen.[9] See, e.g., Pl. Br. 10, 16; Batista Decl. ¶¶ 3, 12.   These allegations limited to approximately 60 individuals are insufficient to establish labor control over a putative collective alleged to contain 265 employees, particularly where Plaintiffs do not allege Weiss, "Medina" or "Mayer" coordinated operations with (unidentified, unknown) supervisors for the remaining putative collective members.  See Cordova v. SCCF, Inc., 2014 WL 3512838, *6 (S.D.N.Y. July 16, 2014) (dismissing defendants from FLSA suit where there were no allegations that they "coordinated operations with Plaintiffs' direct employers").

---

[9] The allegations against Weiss, "Medina" and/or "Mayer" are legally insufficient because Plaintiffs do not assert that Weiss, "Medina" and/or "Mayer" determined their right (or lack thereof) to overtime pay.  See Point II infra.

Plaintiffs attempt to distract this Court from their dearth of requisite personal knowledge by (re-)introducing extraneous materials which this Court should not consider.  See Def. MTD Reply, 14-25.  Even if the Court could consider these materials, however, they still do not satisfy Plaintiffs' burden in establishing an integrated enterprise.  First, Plaintiffs claim the 12/4/12 Memorandum annexed to the Katz Decl. I at Exhibit E (DE 42-9) and a cover letter annexed to the Lopez Decl. at Exhibit E (DE 106-6) submitted by "E&M Bronx" in an unrelated discrimination matter somehow evince a "unified" policy across the entire "E&M Enterprise." Pl. Br. 13-14.  As to the 12/4/12 Memorandum, Plaintiffs have not alleged (nor can they factually support) an inference that every Super (or any porter or handyman) in every building managed by E&M Bronx Associates, let alone managed by the other management companies, received it, or was subject to its terms. Thus they have failed to show this document establishes interrelated operation, common management or common ownership as to properties other than 638 West and 655 West.[10]  Plaintiffs allege the cover letter "admits" it was Lopez's (and other Supers') employer and "admits" to having "personnel" policies applicable to other buildings.  This "admission" in an unrelated administrative proceeding is irrelevant here.  More importantly, the letter never mentions that the "personnel" policies discussed include the wage-and-hour policies allegedly at issue.  See DE 106-6.  Thus Plaintiffs cannot establish each named Defendant was the "'final decision-maker with regards to the employment issue in the underlying litigation.'" Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 286 (E.D.N.Y. 2013) (emphasis added).

Next, Plaintiffs attempt to introduce (mere and unfounded) allegations from an unrelated state-breach-of-contract action and three complaints made against some, but not all, of the Motion Defendants.  Pl. Br. 11, 14-15.  As previously noted, the allegations in the Malone Aff.

---

[10] To the extent the 12/4/12 Memorandum evidences "control of labor relations," given Plaintiffs' inability to assert it was provided to all Motion Defendant employees, it does not establish "control of labor relations" across all Defendants sufficient to raise an inference of "integrated enterprise" liability.

(DE 110-11) are immaterial and inapplicable to the matter at hand.  See Def. MTD Reply 22-25.

As to the other complaints, Plaintiffs cite Gomez v. PNC Bank for the proposition that other

wage-and-hour cases against an employer may constitute evidence of a common policy.  See Pl.

Br. 11 (citing 306 F.R.D 156 (N.D.Ill. 2014)).   The Illinois District Court ruling has no

precedential bearing on this litigation.  See U.S. v. Kates, 2011 WL 1256858, *1 (W.D.N.Y Apr.

1, 2011) ("A decision of a federal district court judge is not binding precedent in . . . a different

judicial district.").   Even if it did, Gomez is readily distinguished.  First, though the Gomez

plaintiff sought to certify a Collective including employees at 27 separate bank branches, Gomez

named only a single entity (PNC Bank, NA) as defendant.  306 F.R.D 156.  Second, this single

entity retroactively paid overtime to certain of its employees, effectively admitting it was their

employer, and liability.  Id. at 159.  Most importantly, plaintiff actually produced evidence from

at least one employee at each bank branch.  Id. at 160-63.

Here, in contrast, Plaintiffs seek to hold 234 entity Defendants liable but only produce

factual allegations limited to two properties (638 West and 655 West) and introduce complaints

(Docket Entries 110-8, 110-9 and 110-10, respectively) which name only six entities total.[11]

Further, Plaintiffs disingenuously introduce just the complaints in those matters without noting

that all three contain settlement agreements where the named defendants specifically disclaimed

– and the named plaintiff specifically accepted – that the majority of the named entities

(including "E&M Associates LLC") were not plaintiff's employer.[12]   Finally, and critically,

Plaintiffs produce evidence from individuals for only two of the approximately 200 properties

---

[11] Specifically, these other complaints name: E&M Associates, LLC; Fordham Fulton Realty Corp., LGL2 Bronx Portfolio, LLC; The Morgan Group LLC; Endo Management LLC; and SP West Harlem LLC.  Some of these entities are not named as Defendants in this case and/or are not even affiliated with the Motion Defendants.

[12] See, e.g., the Settlement Agreements concerning the Complaints annexed to the Declaration of Marc A. Rapaport dated March 6, 2017 ("Rapaport Decl.") at DE 110-8 through 110-10, which have been annexed to the Declaration of Larry R. Martinez, Esq. dated April 24 2017 (the "Martinez Decl.") at Exhibits "A", "B", and "C" respectively.

they seek to include in their Collective.  As such <u>Gomez</u> does not support Plaintiffs' position.

Plaintiffs then introduce the Local 2 CBA – admittedly applicable to only five buildings – to establish an "integrated enterprise" across 200 buildings.  Pl. Br. 16.  Nowhere do Plaintiffs introduce facts that establish the wage-and-hour policies prescribed by the Local 2 CBA are applicable to any of the approximately 200 other non-Local 2 Buildings, or that the employer identified therein ("E&M Associates Management") controlled the labor relations for those other buildings.  <u>See</u> <u>id.</u>  As such, this Local 2 CBA is irrelevant to the question of "labor control" necessary to establish "integrated enterprise" liability.  <u>See</u> <u>Diaz v. Consortium for Worker Educ., Inc.</u>, 2010 WL 3910280, *6-10 (S.D.N.Y. Sept. 28, 2010).

Finally, Plaintiffs introduce: representations made by Defendants on their "website"; a "Management Agreement" signed by Defendant Langer; and a few paystubs, identification cards, and termination letters as "proof" of an "integrated enterprise." Pl. Br. 13-16.  The representations made on Defendants' website do not concern the wage-and-hour policies at issue here and therefore must be disregarded.  <u>See</u> <u>Fernandez v. Sharp Mgmt. Corp.</u>, No. 16-CV-0551, 2016 WL 5940918, *3 (S.D.N.Y. Oct. 13, 2016).[13]  Further, the other materials merely support an inference of economic ties and some common management/ownership among Defendants, but do not concern the wage-and-hour policies at issue here.  <u>See</u> Pl. Br. 13-16.  Thus they do not support (or even infer) that each named Defendant was the "'final decision-maker with regards to the employment issue in the underlying litigation," and cannot be used to establish "integrated enterprise" liability.  <u>Morangelli</u>, 922 F. Supp. 2d at 286.  Thus Plaintiffs cannot satisfy the critical inquiry for application of an "integrated enterprise" theory of liability – that centralized control of labor relations exists across every building and every defendant.  <u>See</u> <u>Hart</u>, 967 F.

---

[13] The <u>Fernandez</u> Court noted "Plaintiffs . . . cannot find support for their allegation that Sharp Management applies a common policy to all of its employees based on the non-specific claims on [Sharp's] website." <u>Id.</u> at *3.

Supp. 2d at 940 n.16; Apolinar, 2016 WL 2903278.  Given this (and as detailed below), any Collective must be limited to Supers/porters who worked at the two Subject Properties.  See id.

## POINT II

### THE SCOPE OF THE PROPOSED COLLECTIVE IS OVERLY BROAD

Although, as noted above, a Collective may (at most) be conditionally certified for just two buildings, Plaintiffs seek to certify a Collective consisting of every Super, porter and/or handyman who worked for every Motion Defendant.  See Pl. Br. 1; see also Compl. ¶¶ 310-20, 324-27.  In order to sustain such a broad collective, Plaintiffs first must establish that every Defendant was their "joint" employer.[14]

As discussed previously, Plaintiffs do not present sufficient allegations to satisfy the "joint" employer test approved by the Second Circuit.  Given this failure, and in a last ditch effort to establish the proposed enormous Collective, Plaintiffs urge the Court to adopt the highly criticized "integrated enterprise" test for "joint" employer status.  For the reasons noted above (and in prior memoranda), that argument must be rejected.  When the Court disregards the allegations which concern the "integrated enterprise" theory of "joint" employer liability, it is left with one stark fact: Plaintiffs' allege knowledge concerning wage-and-hour policies applicable to Supers/porters in just two buildings.[15]  Given this, and as Defendants will establish in detail below, any Collective should be limited to porters/Supers who worked where Plaintiffs worked – 638/655 West.[16]  See Point I, supra.

### A.  Conditional Certification Standard

---

[14] See, e.g., Barfield, 537 F.3d at 132; Herman, 172 F.3d at 132.

[15] As will be discussed in detail below, Plaintiffs' attempt to include handymen as part of their Collective must be summarily rejected as procedurally and substantively improper.  See Point II.C, infra.

[16] Alternatively, to the extent the vague allegations concerning supervision of Supers by Weiss are sufficient to support a broader putative collective, it must be limited to: (i) the Weiss-Managed Properties; (ii) exclude handymen; and (iii) exclude Union and Prevailing Wage Buildings.

To conditionally certify an FLSA Collective pursuant to 29 U.S.C. §216(b), Plaintiffs must adduce facts supporting two contentions.  First, Plaintiffs must make a showing they – as Named Plaintiffs – are "similarly situated with respect to their job duties/requirements, compensation, and employer policies" to the putative collective members.  Romero v. H.B. Automotive Grp., Inc., 2012 WL 1514810, *8 (S.D.N.Y. May 1, 2012).  Second, Plaintiffs must establish, through a "factual showing [that] they and potential plaintiffs were victims of a common policy or plan that violated the law."  Reyes v. NY F&B Servs., LLC, 2016 WL 796859, *2 (S.D.N.Y. Feb. 22, 2016) (Swain, J.).  To satisfy this burden, Plaintiffs must proffer "'substantial allegations of a factual nexus between [themselves] and potential opt-in[s] with regard to their employer's alleged FLSA violation.'"  Romero, 2012 WL 1514810 at *9.  Specifically, Plaintiffs must show putative collective members had similar duties and received similar treatment in terms of minimum and overtime wage violations.  Id. at *10.

While a plaintiff's "burden of proof is low, it is not non-existent – certification is not automatic."  Reyes, 2016 WL 796859 at *3; see also Korenblum v. Citigroup, Inc., 195 F.Supp.3d 475, 480 (S.D.N.Y. 2016).  Since (warranted) conditional certification should occur "early in the litigation and often before discovery has begun," courts make a determination regarding same through review of only plaintiffs' pleadings and relevant affidavits.  Warman v. Amer. Nat'l Standards Inst., 193 F.Supp.3d 318, 323 (S.D.N.Y. 2016).  If Plaintiffs cannot adduce facts in their pleadings/affidavits identifying how all employees are similarly situated; how a common policy to violate relevant wage-and-hour laws existed across all named defendants; and, how they came to know such information, then the Collective must be denied.  See id. at *4-5.  Finally, courts may consider affidavits/documentary evidence submitted by a defendant to determine the propriety of conditional certification.  See, Korenblum, 195

F.Supp.3d at 482; <u>Laroque v. Domino's Pizza, LLC</u>, 557 F.Supp.2d 346, 355-56 (E.D.N.Y. 2008); <u>Eng-Hatcher v. Sprint Nextel Corp.</u>, 2009 WL 7311383, *4 (S.D.N.Y. Nov. 13, 2009).

### B.  Application to Supers and Porters

>     i.   *Plaintiffs' Factual Allegations Are Limited To 638/655 West*

Contrera alleges he worked only as a Super at 655 West for the purported "E&M" enterprise from on or about November 14, 2013 through on or about July 1, 2015.  <u>See</u> Compl. ¶¶30-31; Contrera Decl. ¶2.  The only allegation Contrera raises indicating "knowledge" of wage-and-hour policies purportedly applicable to Supers at buildings <u>other than 638/655 West</u> is that he sometimes spoke with "other [Supers] . . . about [their] burdensome work schedules and low pay."  Contrera Decl. ¶10.  Contrera never identifies these other Supers, the locations where these Supers worked, or the contents of the conversations had with same, particularly as it relates to the <u>specific</u>: (1) amount of hours worked by these other Supers; (2) amount of pay received by these other Supers; and/or (3) receipt of (or lack thereof) overtime pay.  <u>Id.</u>  Lopez alleges he worked only as a Super at 638 West from on or about November 14, 2013 through on or about April 30, 2015.  <u>See</u> Compl. ¶¶38-39; Lopez Decl. ¶2.  His "knowledge" of <u>wage-and-hour</u> policies applicable to Supers/porters who worked at <u>other</u> buildings are limited to sporadic, vague conversations with unidentified Supers concerning a general low amount of pay and lack of overtime.  Lopez Decl. ¶¶21-22.  Lopez's allegations do not reference: (1) the names of these employees; (2) the hours they worked; (3) the pay they received; and/or (4) their work locations.[17]  <u>Id.</u>  Lopez's allegations concerning Weiss are similarly deficient as they do not state what other buildings Weiss purportedly "supervised,"; whether Weiss set pay rates or hours worked; whether Weiss determined a Super's entitlement (or lack thereof) to overtime; and/or, at

---

[17] Further, to the extent Lopez alleges speaking with Contrera and/or Batista concerning this matter, Lopez never avers if such conversations occurred only <u>after</u> the filing of the instant suit.  <u>See id.</u> at ¶¶ 8, 13.

which buildings other Supers supposedly supervised by Weiss worked.  Id. at ¶¶ 8, 13, 18-20.

Herrera alleges he worked as a porter/interim Super only at 655 West and 638 West beginning in 2013, and that Weiss supervised him.  Herrera Decl. ¶¶2-4.  Herrera never spoke with other employees of the purported "E&M Enterprise."  See id.  Batista only worked as a Super at 638 West from in or around January 2015 through March 2016, and spoke with Supers/porters employed only at 638/655 West.  See Batista Decl. ¶5.[18]  Batista's allegations concerning Weiss are limited in that Batista has no knowledge regarding: which buildings Weiss purportedly "supervised"; whether Weiss set pay rates,  hours worked, or a Super's entitlement to overtime; and, where the other Supers present at the purported "Fall 2015 meeting" worked. Id at ¶¶ 12, 18, 28-30.[19]  Pertinently, Plaintiffs do not dispute that 638/655 West were part of a single portfolio – the "Manhattanville Portfolio" (improperly identified as the "Harlem Portfolio").[20]  Plaintiffs also do not dispute that Weiss supervised only approximately 25 of the "Manhattanville Portfolio" properties, including 638/655 West.  Katz Decl.  II ¶ 6.

*ii.   The Collective Must Be Limited to Supers/Porters at 638 West and/or 655 West*

Based on the above analysis of Plaintiffs' allegations, it is apparent Plaintiffs have no knowledge of the actual wages, policies, or schedules of Supers/porters who may have worked at buildings other than 638/655 West.   This failure alone requires Plaintiffs' Motion for a Collective including any other properties be denied.  See, e.g., Vasquez v. Vitamin Shoppe Industs., Inc., 2011 WL 2693712, *3 (S.D.N.Y. July 11, 2011) (Swain, J.) (denying certification of a state and nationwide Collective because plaintiff's allegations could not show putative

---

[18] To the extent Batista claims to have had conversations with Contrera and Lopez, Batista fails to identify whether they only occurred after commencement of this action. Id.

[19] Batista's factual allegations relevant to his position as a "handyman" are discussed in further detail below.

[20] See the Declaration of Scott J. Katz dated April 21, 2017 (the "Katz Decl. II"), ¶ 5.  Specifically, there are approximately 84 properties within the Manhattanville Portfolio.  Id.

members in different locations were subject to the same pay policy); <u>Ikikhueme v. CulinArt, Inc.</u>, 2013 WL 2395020, *2-3 (S.D.N.Y. June 13, 2013) (denying certification of a Collective of sous chefs employed in over two hundred locations because plaintiffs' allegations were limited to personal experience at one location); <u>Laroque v. Domino's Pizza, LLC</u>, 557 F.Supp.2d at 355-56 (denying conditional certification for employees who worked at stores other than those of named plaintiffs because plaintiffs offered only conclusory allegations that they were similarly situated); <u>Rudd v. T.L. Cannon Corp.</u>, 2011 WL 831446 at *8-9 (N.D.N.Y. Jan. 4, 2011).

Indeed, in <u>Rudd</u>, five plaintiffs sought to conditionally certify a Collective for employees who worked across 53 Applebee's restaurants within New York State owned by one entity.  2011 WL 831446 at *1-2.  Plaintiffs asserted they worked primarily at one location but occasionally performed services at seven others.  <u>Id.</u> at *2.  The court certified a Collective for the primary restaurant, but denied certification for the remaining locations.  <u>Id.</u> at *2-10.  The court did so because, <u>inter alia</u>, the allegations based upon personal knowledge were limited to a single restaurant, whereas the claims relating to the other restaurants were "not made based on personal knowledge."  2011 WL 831446 at *8.  As such, the Court held plaintiffs' allegations:

> fall short of identifying a particular policy or practice applied by the defendants <u>uniformly</u> across the board at all of their locations. . . <u>The fact that all of the potential opt-in plaintiffs are employees of the defendants does not suffice</u>. . .  <u>Id.</u> at *8-9 (emphasis added).

As in <u>Rudd</u>, Plaintiffs here provide factual allegations limited to two buildings.  <u>See, e.g.</u>, Contrera Decl. ¶¶ 10-11; Lopez Decl. ¶¶ 7, 13, 18-22; Batista Decl. ¶¶ 28-30.  They then assert, without factual support, that such allegations are applicable to <u>every</u> building owned by <u>every</u> Motion Defendant.  <u>See</u> Pl. Br. 17-20.  Plaintiffs attempt to use <u>Siewmungal v. Nelson Mgmt. Grp Ltd.</u> for the proposition that this Court may accept their limited knowledge of two buildings in order to certify a universal Collective for approximately 200 other buildings.  <u>See</u> Pl. Br. 18.

(citing 2012 WL 715973 (E.D.N.Y. Mar. 3, 2012)).  Siewmungal, however, is inapposite.

In Siewmungal, a security guard who worked at one building sought a conditional collective for guards who worked at other buildings, arguing all were employed by a single management company which owned/managed all the buildings.  Id. at *1.  The court granted a conditional collective based on, inter alia, the fact that security guards at plaintiff's building at one point were employed directly by the management company, and that plaintiff's supervisors were fired from that company's central office.  Id. at *3.  Thus the court was forced to conclude there existed "a very viable inference" that security guards at buildings other than plaintiff's (all managed by a single entity) experienced similar wage-and-hour policies.  Id.  However, critical in this conclusion was that defendant did "not claim that the decision as to the terms of employment of security guards . . . vary from building to building [and thus defendant] offered no reason why it would treat security guards at one of its buildings differently than at others"  Id.

Conversely, Plaintiffs here dispute they were employed by a single entity, and assert they were employed by every Motion Defendant, including 18 equity-holding entities, four management companies, 11 entities not affiliated with any Motion Defendant, and 169 distinct title-holding entities.  See, Compl.  Further, Plaintiffs only assert knowledge as to a single supervisor (Weiss) and do not claim knowledge as to which entity hired and/or can terminate him.  See id.[21]  Most importantly, however, Plaintiffs cannot show that 18 equity-holding entities, the 3 other management companies, and the 167 other title-holding entities had any wage-and-hour policies, let alone similar ones.  Further, Defendants have offered at least one critical reason why terms of employment necessarily vary from building to building: certain buildings (such as the Union and Prevailing Wage Buildings) require disparate wage-and-hour

---

[21] Weiss managed only 25 of the Manhattanville Portfolio properties including 638/655 West.  See Katz Decl. II ¶ 6.

policies.[22]  Thus there is no "very viable inference" that Supers/porters at buildings other than 638/655 West Motion were similarly-situated to Plaintiffs.  Cf. Siewmungal, 2012 WL 715973 .

Instead, the inadequate allegations cited herein are more analogous to Fernandez.  2016 WL 5940918.  In Fernandez, Supers employed at only two buildings in Manhattan sought to certify a conditional collective consisting of, inter alia, Supers working across four states.  Id. at*1.  That court limited conditional certification to Supers in Manhattan only, because the affidavits produced in support of plaintiffs' motion failed to establish they "had any interaction with or personal knowledge of the salary structure of any employees outside Manhattan or that [defendant] applied uniform salary practices across its entire operations."  Id. at *5.  Similarly, Plaintiffs here have no personal knowledge of the salary structure of any employee outside 638/655 West (or at worst outside of the Weiss-Managed Properties), and cannot show Defendants apply uniform salary practices across their entire operations.  As such, the Collective must be limited to 638/655 West.[23]  See, e.g., Monger v. Cactus Salon & SPA's LLC, 2009 WL 1916386, *2 (E.D.N.Y. July 6, 2009) (denying certification of employer's other locations, where "[p]laintiffs' only evidence that other locations' employees are similarly situated is that they 'believe' that all [employees] are subject to the same polices"); Laroque, 557 F.Supp.2d at 354.

### C.  Application to Handymen

Plaintiffs now, for the first time, attempt to include "handymen" as part of their Collective.  Such attempt must be denied as: (1) no Named Plaintiff worked as a handyman; (2) the Complaint includes no allegations concerning handymen; (3) factual allegations and documentary evidence establish handymen were subject to distinct wage-and-hour policies; and,

---

[22]  See, e.g., Katz Decl. I ¶¶ 49-54, 58-60, 64-66, 70-76; and Exs. H, I, J, K to Katz Decl. I (DE 42-12, -13, -14, -15).

[23]  To the extent the Court finds Plaintiffs' non-wage-and-hour allegations with respect to Weiss are sufficient to conditionally certify a Collective Action beyond 638/655 West, such Action must be limited to Supers/porters employed at the Weiss-Managed-Properties, as Plaintiffs make no showing beyond this.

(4) handymen and Supers/porters are subject to vastly different claims of liability and legal defenses, meaning litigating issues concerning handymen alongside issues concerning Supers/porters would require vastly different discovery.  Such different discovery requirements would frustrate one of the main purposes of proceeding as a Collective: promotion of judicial economy.  The only mechanism by which Plaintiffs attempt to include handymen in the Collective is by arguing all were employed by the purported "E&M Enterprise."  This argument relies upon the "integrated enterprise" theory of liability and must be summarily rejected.  See Point I, supra. As such, handymen must be excluded from the purported Collective.

### i.  Relevant Factual Allegations

As to handymen, Batista claims he worked as one beginning in April 2014.  Batista Decl. ¶¶2.  He also alleges his supervisor as a handyman was a "Melendez Medina".  Id. at ¶3.  All Batista purports to know of policies applicable to other handymen is that Reyes and other unnamed handymen informed him "E&M" did not pay handymen overtime generally.  Id at ¶¶14, 18.  Batista fails to: identify when and where his conversation with Reyes occurred, (e.g. after the filing of the instant suit); or indicate he had any specific conversations regarding hours other handymen worked, how much they were paid, or whether they ever received overtime.

Non-party Reyes is the only individual to allege he worked for the purported "E&M Enterprise" prior to November 2013 (from approximately 2012 until in or around March 2016), and the only individual who claimed to have worked exclusively as a handyman.[24]  Reyes's knowledge of "common" wage-and-hour policies applicable to handymen is limited to non-specific, non-detailed "conversations with other E&M handymen, including Batista."  Reyes Decl. ¶18.  Reyes fails to identify these handymen, or state whether his conversations with Batista occurred before the filing of the instant suit.  See id.  Further, Reyes does not indicate

---

[24] See the Declaration of Antonio Reyes dated March 5, 2017 (DE 109) (the "Reyes Decl.") ¶2.

whether his conversations with other handymen included discussions of hours worked, rates paid, or whether they received overtime.  Batista and Reyes's lack of knowledge regarding overtime is critical as documentary evidence establishes handymen <u>did</u> receive overtime.  <u>See</u> the Katz Decl. II ¶7; <u>see</u> <u>also</u> Payroll Records annexed as <u>Exhibit A</u> to the Katz Decl. II.

> ii. _The Collective Cannot Include Handymen_

First, Reyes and Batista are <u>not</u> a Named Plaintiff, yet Plaintiffs attempt to use their irrelevant allegations to broaden the proposed Collective.  <u>See</u> Compl.; Pl. Br. 7-21. Indeed, Reyes is not even an Opt-in Plaintiff.  Further, neither Contrera nor Lopez performed services as a "handyman."  <u>See</u> Compl.; Contrera Decl.; Lopez Decl.  As such, the Collective cannot include handymen as a matter of law because Plaintiffs cannot meet the conditional certification standard they themselves posit – that "potential opt-in plaintiffs . . . be similarly situated to the <u>named</u> <u>plaintiffs</u>."  <u>See</u> Pl. Br. 9 (<u>citing</u> <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010)). Second, Reyes and Batista's responsibilities were dissimilar to Supers, as their work required they perform maintenance and repair work at different buildings for a specific hourly-based shift. Batista Decl. ¶¶ 3, 16, 18; Reyes Decl. ¶¶ 4, 8, 14.  By contrast, Supers ensured maintenance was completed (but did not perform these tasks), and were assigned to one building and allegedly paid a salary.  <u>See</u> Compl. ¶¶ 32, 34, 40, 42, 287, 294, 299 303; Contrera Decl. ¶¶ 8-9; Lopez Decl. ¶¶ 3, 17; Herrera Decl. ¶¶ 6-7, 9. Thus Named Plaintiffs and handymen were not "similarly situated with respect to their job duties/requirements," and cannot be putative collective members.  <u>See, e.g.</u>, <u>Romero</u>, 2012 WL 1514810 at *8; <u>Colon v. Major Perry Street Corp.</u>, 2013 WL 3328223 (S.D.N.Y. July 2, 2013) (limiting certification to Supers and excluding maintenance workers).

Plaintiffs attempt to avoid this fatal deficiency by noting "opt-in plaintiffs effectively have the same status as representative plaintiffs."  Pl. Br. 20 n.3.  This "effective status" is

limited to offers of judgment.  See Perez-White v. Advanced Dermatology of N.Y.P.C., 2016 WL 4681221, *8 (S.D.N.Y. Sept. 7, 2016).   Further, relevant case law actually finds the opposite; Named Plaintiffs and opt-in Plaintiffs are not interchangeable for purposes of the Collective.   See, e.g., Davis v. Lenox Hill Hosp., 2004 WL 1926086, *7 (S.D.N.Y. Aug. 31, 2004) (denying certification where claims of named plaintiff were not representative of opt-in plaintiffs); Warman, 193 F.Supp.3d at 325-26 (denying certification where named plaintiff and opt-in plaintiffs were subject to different legal and factual theories); Jeong Woo Kim v. 511 E. 5th Street, LLC, 985 F.Supp.2d 439 (S.D.N.Y. 2013) (same).

Indeed, assuming their truth arguendo, Plaintiffs' factual allegations establish handymen and Supers/porters were subject to disparate policies allegedly violative of the FLSA.   First, Contrera and Lopez (as Supers) and Herrera (as porter) allegedly worked 70-80 hours every week.  See Compl. ¶¶ 32, 34, 40, 42, 287, 294, 299 303; Contrera Decl. ¶¶ 8-9; Lopez Decl. ¶¶ 3, 17; Herrera Decl. ¶¶ 6-7, 9.   They further allege they were always paid a flat weekly sum of $400.00 (for Contrera), $275.00 (for Lopez) and a net pay of no less than $305.17 (for Herrera) regardless of hours worked.  See id.  As such, using the maximum amount of hours purportedly worked, Plaintiffs allege a failure to pay minimum wage to Supers/porters. See id.  Conversely, Batista and Reyes (the only handymen) have no minimum wage claim.  Batista and Reyes claim they worked at most 45 hours in a week as a handyman.  Batista Decl. ¶18; Reyes Decl. ¶¶14-15. Batista alleges to have earned $600.00 per week, Reyes $500.00.  Batista Decl. ¶10; Reyes Decl. Exs. A, B, C (DE 109-1, -2, -3).   As such, Batista earned at least $13.33 per hour and Reyes earned at least $11.11, wage-rates above the $7.25 minimum wage.  29 U.S.C. § 206(a)(1)(C).

Further, Plaintiffs do not allege a common policy between Supers/porters and handyman concerning non-payment of overtime.   The only true alleged failure to pay overtime claim is

limited to Supers/porters, as Contrera, Lopez, and Herrera allege they regularly worked more than 40 hours per week and were paid a flat weekly sum regardless of hours worked.  Compl. ¶¶ 32, 34, 40, 42, 287, 294, 299, 303.  Conversely, the violation claimed by Batista and Reyes as to handymen is considered an "off-the-clock" claim in that they allege they worked one specific hour per day for which they were not paid.  See Eng-Hatcher, 2009 WL 7311383.

Moreover, the distinct defenses applicable to a handyman eviscerate the allegation that porters, Supers and handymen were subject to a common policy or were similarly situated.  See Warman, 193 F.Supp.3d at 325 (finding that individualized defenses prevented conditional certification).  For instance, Supers allege they were required to be "on-call" at all hours of the day, every day of every week.  Contrera Decl. ¶¶ 3, 6; Lopez Decl. ¶¶3, 15.  Determination of whether  this "waiting"/"on-call" time for Supers who reside at the premises of their employer constitutes compensable time sufficient to sustain a violation of the FLSA requires an in-depth scrutiny of 29 C.F.R. §§ 785.14-785.17 and 785.23.  In contrast, handymen merely assert they sometimes began working as early as 7:30 a.m. and concluded working as late as 5:30 p.m., but were only paid for the hours of 8:00 a.m. to 5:00 p.m. regardless.  Batista Decl. ¶ 18; Reyes Decl. ¶¶14-15.  As such, whether "waiting"/"on-call" time is compensable has no bearing on a handyman's claims.  Instead, whether the time allegedly worked by Reyes and Batista between 7:30 and 8:00 a.m. and between 5:00 and 5:30 p.m. constitute compensable time, or is otherwise "preliminary" and "postliminary" non-compensable time, is governed by, inter alia, 29 C.F.R. §§ 785.11 and 785.24-785.26.  For Supers who allege they were always "on-call," the determination of "preliminary" or "postliminary" is immaterial to their allegations.  As such, these different defenses prevent conditional certification of a putative collective containing handymen.  See, e.g. Davis, 2004 WL 1926086 at *7; Warman, 193 F.Supp.3d at 325; Jeong Woo Kim, 985

F.Supp.2d at 439.  Given these distinct disparities in alleged FLSA violations, handymen cannot be included within the Collective as a matter of law.  See, e.g., Sanchez v. JMP Ventures, LLC, 2014 WL 465542, *1-2 (S.D.N.Y. Mar. 10, 2014); Reyes, 2016 WL 796859.

This is especially true given Plaintiffs' failed attempt to distinguish this matter from Fernandez. 2016 WL 5940918. In Fernandez, the court specifically refused to conditionally certify a putative collective for titles other than Super because "though plaintiffs presumably relied on observations and conversations with coworkers to discover the existence of an alleged company-wide policy, they do not provide any detail as to a single observation or conversation which would substantiate their knowledge." Id. at *3.[25] This is identical to the instant matter as no affiant provides a single detail as to any specific conversation with handymen (other than the Batista and Reyes, conversations which likely occurred after this suit was commenced) which would substantiate the allegation that handymen were subject to the same wage-and-hour policy as Supers. Indeed there are no concrete facts concerning how much other handymen were paid, how many hours or where other handymen worked, or if such handymen ever received overtime compensation.  See, e.g., Compl.; Contrera, Lopez, Herrera; Batista and Reyes Decls.  Fatally, the allegations are refuted by documentary evidence which prove handymen received overtime. See, e.g., the Katz Decl. II ¶7 and Exhibit A.  This evidence establishes there was no uniform policy concerning payment of overtime wages violative of the FLSA for handymen.  See, e.g., Korenblum, 195 F.Supp.3d at 482 (allowing evidence to rebut allegations of common policy).

### D. The Collective Cannot Include Union/Prevailing Wage Buildings, or Equity or Management Company Defendants

Union Buildings and Prevailing Wage Buildings had individualized policies concerning

---

[25] Specifically, plaintiffs did not provide "names, salary rates, working hours, job sites, or titles of any current or former non-Super, or articulate any basis for knowledge that such employees "do not receive overtime pay." Id.

minimum wage, overtime, and/or hours-worked.[26] These unique policies require such buildings' exclusion from the purported Collective sought.  See Korenblum, 195 F.Supp.3d at 482. Thus, in light of the foregoing, any Collective which may be certified must be limited to porters and/or Supers who worked at 638 West and/or 655 West only.[27]  Similarly, the Collective cannot include any equity or management company, because Plaintiffs provide no allegations regarding their policies or alleged status as an employer.

### POINT III

### ANY NOTICE OF PENDENCY, AND CONTACT INFORMATION REGARDING SAME, SHOULD BE LIMITED TO THE THREE YEARS PRECEDING THE FILING OF THE COMPLAINT[28]

Plaintiffs seek to provide Notice to, and receive contact information for, putative collective members employed by Motion Defendants within six years prior to the filing of the Complaint.  Pl. Br. 21-23.  However, where a Notice concerns litigation of FLSA claims only, the appropriate limitation of time is three years.  See, e.g., Lira v. Eagle Open Kitchen LLC, 2014 WL 7910482,*2 (S.D.N.Y. July 14, 2014); Sanchez v. El Rancho Sports Bar Corp., 2014 WL 1998236, *4 (S.D.N.Y. May 13, 2014)[29].  Plaintiffs' Motion concerns adjudication of FLSA

---

[26] See, e.g., Katz Decl. I ¶¶ 49-54 (32BJ Buildings), 58-60 (Local 2 Buildings), 64-66 (Local 670 Buildings), 70-76 (Prevailing Wage Buildings); Ex. G to Katz Decl. I (DE 42-11); Ex. H to Katz Decl. I (DE 42-12); Ex. I to Katz Decl. I (DE 42-13) Ex. J to Katz Decl. I (DE 42-14).

[27] Alternatively, the Collective Action must be limited so as to: (i) include only the Weiss-Managed Properties; (ii) exclude handymen; and (iii) exclude Union and/or Prevailing Wage Buildings.

[28] Defendants contend that, given the tenuous right to pursue the Collective espoused by Plaintiffs, and/or the overbroad scope of the Collective sought, it is premature to determine the propriety of Plaintiffs' proposed Notice of Pendency (the "Notice") and/or Consent to Become Party Plaintiff annexed as Exhibit 13 (DE 110-13) and Exhibit 14 (DE 110-14) to the Rapaport Decl., respectively.  Given this, it is premature to determine which languages any such documents require.  Should this Court conditionally certify a Collective, Defendants request and reserve the right to arrange with counsel for Plaintiffs the submission of a revised Notice of Pendency and/or Consent to Become Party Plaintiff in conformity with the Court's Order(s) regarding conditional certification.

[29] "A number of courts in this Circuit have approved a six-year notice period based on the efficiency rationale cited by Plaintiffs. . . A more recent trend, however, is to approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred. . . Because . . . former

claims only (rather than NYLL claims).[30]  Moreover, Plaintiffs allege their employment began no earlier than 2013.  Compl. at ¶¶ 30-31, 38-39; Contrera Decl. ¶ 2; Lopez Decl. ¶ 2.

As such, Plaintiffs' reliance on Raniere v. Citigroup Inc. is entirely misplaced, since plaintiff in Raniere brought (and sought to certify a class concerning) NYLL overtime claims congruent with her FLSA overtime claims.  827 F.Supp.2d 294 (S.D.N.Y. 2011). Therefore the NYLL's six-year statute of limitations is irrelevant and should not be considered when providing Notice or contact information.  See, Lira, 2014 WL 7910482 at *2; El Rancho Sports Bar Corp., 2014 WL 1998236 at *4.  Thus, and as has recently and consistently been held by this Court, any Notice and contact information concerning same must be limited to the three years prior to the filing of the Complaint, rather than six.  See, e.g., Reyes, 2016 WL 796859 at *2; Paguay v. Barbasso, Inc., 2012 WL 2914288, at *3 (S.D.N.Y. July 17, 2012); Vasquez, 2011 WL 2693712 at *4; Jamie Urtubia v. Ba Victory Corp., 857 F.Supp.2d 476 (S.D.N.Y. 2012).

## POINT IV

### PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE TOLLING

#### A.  Plaintiffs Are Not Entitled to Equitable Tolling As a Matter of Law

Plaintiffs seek equitable tolling for all putative plaintiffs from the date of the filing of the Complaint, or Defendants' pending Motion to Dismiss, forward.  See Pl. Br. 24-25 (citing Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006); Kassman v. KPMG LLP, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015)). Plaintiffs' request is premature, as it seeks to litigate issues on behalf of "unknown . . . potential class members who may . . . not choose to participate in this action." Arena v. Plandome Taxi, Inc., 2013 WL 1748451, *2 (E.D.N.Y. Apr. 23, 2013).  Courts

---

employees who have only state-law claims are not eligible to join this collective action, the Court determines that a three-year notice period would be appropriate in this case." Id. (internal quotations and citation omitted).

[30] See Plaintiffs' March 7, 2017 Notice of Motion (DE 104), which seeks relief pursuant to 29 U.S.C. § 216(b) only.

do not expend judicial resources unnecessarily by litigating issues relating to a non-existent class.  See Khan v. Airport Mgmt. Servs., LLC, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011).

Plaintiffs' reliance on Lee and Kassman in this regard is misplaced.  In Lee, the court stayed any motion concerning class/Collective status until after a pending motion for summary judgment was decided.  236 F.R.D. at 199.  Relevantly, the court held tolling applies only "[w]here parties are ordered . . . to suspend proceedings during the pendency of pending legal proceedings."  Id.  No such suspension has occurred here. Further, Kassman granted tolling only because an extraordinary delay resulted when the matter was assigned to three separate judges. 2015 WL 5178400 at *4.  Such delay does not reflect the procedural posture of this matter.  As such neither Lee nor Kassman apply to Plaintiffs' Motion, and Plaintiffs are not entitled to equitable tolling from the filing of the Complaint or of Defendant's Motion to Dismiss.

**B.  Plaintiffs Are Not Entitled to Equitable Tolling as a Matter of Fact Regardless**

To be entitled to equitable tolling, Plaintiffs must establish: (1) "the circumstances are so extraordinary that [equitable tolling] should apply"; and (2) members of the putative collective have acted with "reasonable diligence during the time period [they] seek[] to have tolled." Zerilli-Edelglass v. N.Y.C. Trans. Auth., 333 F.3d 74, 80-81 (2d Cir. 2003).  Equitable tolling "is, however, a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."  Amendola v. Bristol-Myers Squibb Co., 558 F.Supp.2d 459, 479 (2d Cir. 2008).  Plaintiffs bear the burden to establish that equitable tolling is warranted.  Wang v. Palmisano, 157 F.Supp.3d 306, 324 (S.D.N.Y. 2016).

Plaintiffs posit "[t]he significant delay of prosecution of this case, through no fault of Plaintiffs," and the fact "the vast majority of putative class members do not speak English and are completely unaware of the FLSA" constitute extraordinary circumstances.  Pl. Br. 24.

Relevant law refutes this.  First, Plaintiffs' Motion was filed less than ten months following the filing of the Complaint.  Compare Compl., filed May 23, 2016 (DE 1); with Plaintiffs' Notice of Motion filed March 7, 2017 (DE 104).  As such, there has been no "significant delay" warranting equitable tolling.[31]   See, Arena, 2013 WL 1748451 (denying tolling despite 12-month delay); Amendola, 558 F.Supp.2d at 459 (denying tolling despite one year delay); Hinterger v. Catholic Hlth. Sys., 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) (denying tolling despite 13-month delay).  The fact putative plaintiffs may not be aware of their FLSA rights is insufficient to warrant tolling.  Patraker v. Council on the Env't of N.Y.C., 2003 WL 22703522, *2 (S.D.N.Y. Nov. 17, 2003); Shu Qin Xu v. Wai Mei Ho, 111 F.Supp.3d 274, 279 (E.D.N.Y. 2015).  Further, Plaintiffs have been the direct source of the delays for which they now seek relief:

- Plaintiffs refused to amend their Complaint despite their correspondence admitting such amendment was necessary, forcing Defendants to proceed with their Motion to Dismiss[32];

- Plaintiffs sought to delay adjudication of Defendants' Motion via correspondence to the Court dated September 30, 2016[33];

- Plaintiffs' indicated they were going to amend their Complaint which would have mooted the pending Motion, but then reneged on such indication[34];

- Plaintiffs' Opposition to the Defendants' Motion included extrinsic materials not referenced or pleaded in the Complaint which served to further delay this matter[35];

- Plaintiffs delayed the full briefing of the instant Motion twice: first, when they requested an adjournment of time to file this motion from February 24, 2017 until March 7, 2017[36],

---

[31] To the extent there was a "significant delay," it was caused by Plaintiffs.  They could have filed this Motion – and requested equitable tolling – at any point following the filing of the Complaint, yet chose to delay for ten months.

[32] See Defendants' Notice of Motion to Dismiss (DE 40); see also Defendants' August 9, 2016 letter, annexed as Exhibit B to the Declaration of Larry R. Martinez dated September 23, 2016 (DE 42-2); see also Plaintiffs' August 23, 2016 response letter, annexed as Exhibit C to same (DE 42-3).

[33] See the Consent Letter Motion filed by Plaintiffs on September 30, 2016 (DE 45).

[34] See the e-mail correspondence annexed as Exhibit "A" to Letter Response of Larry R. Martinez dated October 11, 2016 (DE 53-1).

[35] See all documents filed by Plaintiffs in Opposition to Defendants' Motion to Dismiss (DE 91, 92).

and second, when they conditioned a ten-day adjournment of Defendants' time to submit Opposition on Plaintiffs' receipt of a ten-day adjournment for time to submit Reply[37].

As such, given Plaintiffs' failure to adduce "extraordinary circumstance" and/or "reasonable diligence," their request for equitable tolling should be categorically denied.

## CONCLUSION

**WHEREFORE**, Defendants respectfully request: (i) Plaintiffs' Motion be denied, or in the alternative that any Collective be limited as indicated above; (ii) to the extent a Notice of Pendency and provision of relevant contact information is required, it be limited to three years from the date of Plaintiffs' filing of their Complaint; (iii) to the extent a Notice of Pendency and/or Consent to Become a Party Plaintiff is required, such Notice and Consent be revised in accordance with any relevant Orders of this Court regarding conditional certification; (iv) Plaintiffs' request for equitable tolling be denied; and, (v) Defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:       Mineola, New York
           April 24, 2017

                      **MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
                      Attorney for Defendants
                      190 Willis Avenue
                      Mineola, New York 11751
                      (516)747-0300
                      lmartinez@meltzerlippe.com

                By:        **ECF**        /s/
                         Larry R. Martinez, Esq.

**LORETTA M GASTWIRTH, ESQ.**
**GERALD C. WATERS, JR., ESQ.**
**ROBERT R. BARRAVECCHIO, ESQ.**
**CHRISTOPHER P. HAMPTON, ESQ.**

---

[36] See E-mail correspondence from Joseph DeBlase to Larry Martinez dated February 24, 2017, annexed to the Martinez Decl. at Exhibit "D".

[37] See Letter Motion for Extension of Time to File Response/Reply (DE 114).