LAW OFFICES

# MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

190 WILLIS AVENUE, MINEOLA, NY 11501

TELEPHONE: (516) 747-0300

FACSIMILE: (516) 747-0653

INTERNET: www.meltzerlippe.com

*Video Conference Facilities*

*Christopher P. Hampton, Esq.*
*Writer's Direct Dial: (516) 747-0300 x 153*
*Writer's Facsimile: (516) 237-2893*
*Email: champton@meltzerlippe.com*

August 11, 2017

**Via ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl St., Courtroom 6B
New York, NY 10007

    Re:    *Contrera et ano. v. Langer et al.*
            **Docket No. 16-cv-03851 (LTS)(GWG)**
            **MLG File No. 13057-00100**

Dear Judge Gorenstein:

    This firm represents Defendants as noted in Docket Entry ("DE") 30 and 175 in the above-referenced matter. We write in response to Plaintiffs' letter dated August 4, 2017 (DE 174) supplementing their pending motion to conditionally certify a Fair Labor Standards Act ("FLSA") collective action (DE 104 – 111).[1]

## I.    Preliminary Statement

    Plaintiffs seek to conditionally certify a Collective Action consisting of superintendents, porters and handymen allegedly employed by more than 200 distinct corporate entities and four separate individuals for purported violations of the FLSA. The scope of the "collective" Plaintiffs seek to certify through the Motion is excessively overbroad, and the filing of the Amended Complaint fails to establish how an FLSA collective consisting of over 200 distinct corporate entities can be certified as a matter of law. Indeed, Plaintiffs' Motion (and now the Amended Complaint) presents facts concerning a limited subset of corporate defendants only.

---

[1] In the interests of brevity, the instant letter will use the following defined terms: "Plaintiffs" collectively references the five Named Plaintiffs, Usvaldo Contrera ("Contrera"), Francisco Lopez ("Lopez"), Fabian Herrera ("Herrera"), Pedro Batista ("Batista"), and Antonio Reyes ("Reyes"); "Plaintiffs' Motion" references Plaintiffs' pending motion for conditional certification (DE 104 – 111); "Plaintiffs' Supplement" and/or "Pl. Sup." References Plaintiffs' letter (DE 174); "Amended Complaint," "Complaint" and/or "Compl." references the Amended Complaint filed in this matter (DE 156); and "Defendants' Brief" and/or "Def. Br." references Defendants' memorandum of law in opposition to Plaintiffs' Motion (DE 118).

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Honorable Gabriel W. Gorenstein, Magistrate Judge
August 11, 2017
Page 2

To be clear, there are two types of Plaintiffs in this case. The first consists of individuals employed as superintendents and/or porters at two residential buildings in Upper Manhattan owned by *two corporate Defendants*. The second concerns individuals employed as handymen who Plaintiffs contend performed services in the limited geographic area of "*Upper Manhattan and the Bronx*."

Despite providing facts limited to corporate defendants located in Upper Manhattan and the Bronx, Plaintiffs seek to include more than 200 other distinct corporate entities located throughout New York as putative defendants in their Collective Action. However, and as currently alleged in their Motion and the Amended Complaint, the factual allegations adduced by Plaintiffs do not support making such a cavernous leap. To do so would require this Court *presume*: (1) a joint employment relationship existed between the two types of Plaintiffs in this case and *every* Defendant named in the caption; *and* (2) the Named Plaintiffs are similarly situated to a putative collective of individuals employed by all *unrelated* corporate Defendants. Plaintiffs' Motion necessarily fails and the Amended Complaint does not rectify its deficiencies.[2] Thus, if any collective is to be certified, it must be limited as follows: (a) superintendents and porters employed in Upper Manhattan; and (b) handymen employed in Upper Manhattan and the Bronx.

**II.   Plaintiffs' *Presumption* of "Joint" Employer Status Cannot Support Certification of an FLSA Collective that Includes More Than 200 Defendants as a Matter of *Law***

Plaintiffs seek to conditionally certify a collective action comprised of *all* superintendents, porters, and handymen allegedly employed by *all* Defendants. Plaintiffs predicate their Motion on the misguided premise that *each and every* Defendant is liable as Plaintiffs' "joint" employer under an "integrated enterprise" theory of liability. Plaintiffs' argument is patently improper as it ignores the relevant law of this Circuit and misconstrues the relevant facts necessary to support such a broad collective. Whether Plaintiffs may proceed with claims against over 200 Defendants using an "integrated enterprise" theory is a primary, threshold issue; and certainly the scope and breadth of the putative collective is dependent upon resolving this "joint" employer issue.

As an initial matter, the Second Circuit Court of Appeals has not adopted the application of an "integrated enterprise" theory of "joint" employer liability in FLSA cases, and District Courts herein sharply criticize such attempted application regardless. See Hart v. Rick's Cabaret Int'l, Inc.. 967 F. Supp. 2d 901, 940 n. 16 (S.D.N.Y. 2013) (rejecting as improper the "integrated enterprise test").[3] It should not be employed here. The proper test, which Plaintiffs fail to meet,

---

[2] Defendants' Brief only cited to Plaintiffs' original complaint 12 times. Please find a chart containing these citations referenced, along with updated references to the Amended Complaint, annexed hereto at Exhibit "A".

[3] The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee", and a substantial body of law has developed to give meaning to that definition, including the formal and functional control tests discussed below. 29 U.S.C. §203(d). The term "enterprise", however, has a distinct definition under the FLSA and is used for a distinct purpose. Compare 29 U.S.C. § 203(d); with § 203(r)(1). Specifically, meeting the statutory definition of an

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Honorable Gabriel W. Gorenstein, Magistrate Judge
August 11, 2017
Page 3

is whether Defendants exercised formal or functional control over labor relations impacting Plaintiffs such that they may be held liable as Plaintiffs' employer under the FLSA. Although Plaintiffs have alleged some elements of common ownership and a common purpose for at least some of the Defendants, the allegations do not establish *all* Defendants had the required *control over labor relations* with Plaintiffs' identified direct corporate employers (638 West 160 Holdings, LLC and 655 West 160 Holdings, LLC) which owned the only two buildings at which Plaintiffs worked as superintendents/porters. "Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether *each corporate entity* controlled Plaintiffs as employees". Lopez v. Acme Am. Envtl. Co., No. 12-CV-511(WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) (emphasis added).

Rather, Plaintiffs must establish that *more than 200 distinct Defendants* suffered or permitted Plaintiffs to work for *each* defendant as a matter of "economic reality." See Goldberg v. Whitaker House Coop, Inc., 366 U.S. 28, 33 (1961); Barfield v. New York City Hlth. and Hosp. Corp., 537 F.3d 132, 141 (2d Cir. 2008). This "economic reality" test includes factors to determine whether an entity has either "formal" or "functional" control over the individual. "Formal" control analyzes whether a defendant: (1) had the power to hire and fire the employee; (2) supervised and controlled the employee's conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Id. at 142. "Functional" factors include, *inter alia*, (l) whether an employee shifted from one putative employer's business premises to another's; (2) the degree to which the several defendants' agents supervised the work; and (3) whether the employee worked exclusively for one defendant. Id. at 143.

Essentially, the definition of "employer" turns on "whether the . . . entity possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case." Benitez v. Demco of Riverdale, LLC, No. 14-CV-7074, 2015 WL 803069, *1 (S.D.N.Y. Feb. 19, 2015). "When it comes to employer status under the FLSA, control is key." Olvera v. Bareburger Grp. LLC, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014). The Diaz v. Consortium for Worker Educ., Inc. Court dismissed FLSA claims against a defendant because the "complaint contains no facts that indicate that [defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records." No. 10-CV-01848(LAP), 2010 WL 3910280, *6-10 (S.D.N.Y. Sept. 28, 2010). As in Diaz, Plaintiffs here fail to plead involvement/operational control by *all* Defendants, focusing instead on *some* Defendants' economic interests in the buildings. See also, Wolman v. Catholic Health System, 853 F. Supp. 2d 290 (E.D.N.Y. 2012) (allegations that defendants shared common goals insufficient to plead "joint" employer relationship).

Apolinar v. R.J. Rest., LLC, where the Court dismissed the action against several defendants, is directly on point. No. 15-CV-5269(ARR)(JO), 2016 WL 2903278 (S.D.N.Y. May 18, 2016). In Apolinar, two plaintiffs brought an action alleging FLSA violations against various individual and corporate defendants, which plaintiffs alleged did business under the name

---

enterprise is a jurisdictional prerequisite for maintaining an FLSA suit. Bowrin v. Catholic Guardian Soc'y, 417 F. Supp. 2d 449, 457-458 (S.D.N.Y. 2006). Importantly, the definition of an "enterprise" is "not always coextensive with the definition of 'employer' under the FLSA." Hart, 967 F. Supp. 2d at 940 n. 16.

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Honorable Gabriel W. Gorenstein, Magistrate Judge
August 11, 2017
Page 4

"Toasties." Id. at *1. Plaintiffs claimed to be employed as delivery persons at one delicatessen called "Toasties" located on West 49th Street in Manhattan ("R.J. 49"). Plaintiffs, though, named the alleged owners of seven Toasties locations throughout New York City as defendants, and sought to represent a class of workers at all such locations. In addition to analyzing plaintiffs' claims under the economic realities test[4], the Court also reviewed plaintiffs' allegations that the corporate defendants constituted a single "integrated enterprise." Id. at *3-4. The Court noted, even if plaintiffs could plausibly allege common ownership and common purpose for several of the corporate defendants, plaintiffs could not establish such corporate defendants had centralized control of labor relations with plaintiffs' direct corporate employer, R.J. 49. Id. at *4. Indeed, plaintiffs' "allegations entirely [left] out the relationship that plaintiffs, as employees, had to the Toasties' locations besides the one location at which plaintiffs actually worked." Id.

Since the Apolinar complaint failed to allege enough facts to state a claim with plausibility, the Court granted the motion to dismiss on the issue of "joint" employer as against the corporate defendants, except for R.J. 49 – where plaintiffs worked. Apolinar, 2016 WL 2903278 at *4-5. The Apolinar Court also limited the collective action to the one location at which Plaintiffs worked. Id. As in Apolinar, Plaintiffs here do not allege facts establishing the relationship each Plaintiff, as employee, had with other locations besides the buildings where they provided services, and with the many Defendants that have no relation whatsoever with Plaintiffs, let alone a labor relation. As such, certifying a putative collective consisting of all persons without regard to the particular Defendant which controlled that person's labor relations in this case would be wholly improper under Apolinar.

Further, even if the Court were to use an "integrated enterprise" test as Plaintiffs argue (and it should not), Plaintiffs still do not meet the factors which would support its application across all Defendants. An "integrated enterprise" test would consider factors of "'(1) interrelated operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership.'" Hart, 967 F. Supp. 2d at 940 n.16. "Control of labor relations" remains the key factor. Id. In this regard, Morangelli v. Chemed Corp. is instructive. 922 F. Supp. 2d 278 (E.D.N.Y. 2013). That FLSA case involved the operation of a Roto-Rooter business with multiple branches and employees nationwide, and similarly rejected the use of an "integrated enterprise" theory to impute "joint" employer liability. Id. at 284-87. There, the defendant Roto-Rooter Services, Co. ("RRSC") was owned by Roto-Rooter Group, Inc. which in turn was owned by Chemed Corporation. Id. RRSC admitted it was plaintiffs' employer while parent-corporation Chemed disputed this. Id. The Court stated that "'control of labor relations is the central concern'" and questioned "'whether the parent corporation was the final-decision maker with regard to the employment issue underlying the litigation.'" Id. The Court found that, while Chemed may have made recommendations concerning compensation policies, it did not: (i) hire, terminate or discipline Roto-Rooter technicians or supervisors; (ii) have ultimate decision-making authority over compensation and timekeeping policies for technicians; and/or (iii) control technicians' work schedules or employment conditions. Morangelli, 922 F. Supp. 2d at

---

[4] The Court found plaintiffs failed to satisfy this test because there were no allegations that defendants "had any sort of direct employer responsibility over [the plaintiffs], such as the ability to hire or fire, or set work hours or job responsibilities." Id. at *4.

803849-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Honorable Gabriel W. Gorenstein, Magistrate Judge
August 11, 2017
Page 5

285-86.  Thus, the Court dismissed Chemed from the case because there was *insufficient* evidence that "Chemed exercised 'control of labor relations' so as to make it a single integrated enterprise with RRSC." Id. at 286.[5]

Ultimately (and as noted below), Plaintiffs simply continue to fail to allege any basis to support a claim that each named Defendant was the "'final decision-maker with regards to the employment issue in the underlying litigation," Morangelli, 922 F. Supp. 2d at 286, or that centralized control of labor relations exists across every building and more than 200 Defendants. See Hart, 967 F. Supp. 2d at 940 n.16; Apolinar, 2016 WL 2903278.  Given this, any putative collective must be limited to those Defendant-entities which allegedly controlled the labor relations of locations where Plaintiffs worked (in Upper Manhattan and the Bronx).

### III.   Plaintiffs' *Presumption* of Joint Employer Status Cannot Support Certification of an FLSA Collective Including More Than 200 Defendants as a Matter of *Fact*

Plaintiffs' Counsel annexes seven exhibits to the Amended Complaint and alleges they support Plaintiffs' theory that more than 200 distinct Defendants should be held liable for alleged FLSA violations which occurred against superintendents/porters/handymen who worked only in Upper Manhattan and the Bronx.  See DE 156-1 through 156-8.  The majority of these exhibits are already before the Court, and Defendants have already established the impropriety of Plaintiffs' attempt to use such exhibits in support of this Motion.  See, e.g., the exhibits annexed to the Declaration of Larry R. Martinez dated September 23, 2016 (DE 42-9); annexed to the Declaration of Marc A. Rapaport dated November 2, 2016 (DE 91-1, 91-4, 91-6); and annexed to the Declaration of Marc A. Rapaport dated March 7, 2017 (DE 110-2, 110-6, 110-7).[6]

Thus, the only new factual materials submitted by the Plaintiffs in support of their joint employer claim concern: (1) an affirmation of defendant Langer (the "Langer Aff.") which was provided in an *unrelated* breach-of-commissions-agreement action ("Georgia Malone) (DE 156-5); (2) a copy of a contractual guaranty submitted in Georgia Malone (DE 156-6); and (3) a management agreement between Defendant SG2-E&M Harlem Portfolio Owner LLC, Deed Holders and E&M Bronx Associates, LLC ("Management Agreement") (DE 156-2).

First, and far from supporting the claim that over 200 Defendants are "joint" employers, the Langer Aff. and the contractual guaranty merely illustrate that the individual defendants had financial interests in entities allegedly owned by the "E&M Enterprise."  These materials fail to

---

[5] The Court dismissed Chemed even though the plaintiffs alleged RRSC and Chemed: (1) shared a number of high level managers, id. ("'[T]he mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer'"); (2) had offices in the same building; (3) provided for common savings and retirement plans; and (4) obligated their employees to abide by the same ethics and security policies.  Despite these allegations, the Court still held Chemed was not "'the final decision-maker with regards to the employment issue in the underlying litigation.'" Id.

[6] See also Defendants' Reply Memorandum (DE 98), 14-25; and Def. Br., 6-9.  Given that Defendants' Motion to Dismiss has been deemed withdrawn (see Order dated July 10, 2017 at DE 130), Defendants annex relevant portions of Defendants' Reply Memorandum of Law (DE 98) hereto at Exhibit "B."

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Honorable Gabriel W. Gorenstein, Magistrate Judge
August 11, 2017
Page 6

establish that any individual exercised direct control over Plaintiffs, or otherwise set and/or administered the wage-and-hour policies which Plaintiffs allege violate the FLSA.  See Compl. ¶¶ 314, 321.  Indeed and after reviewing these materials, the court in Georgia Malone *rejected the integrated enterprise theory of liability argued by Plaintiffs in that case*, finding that separate corporate formalities necessarily should be afforded their proper respect.[7]

Second, despite Plaintiffs' allegations to the contrary, the Management Agreement (DE 156-2), also does not support "joint" employer liability.  See Compl. ¶¶ 69, 344-48.  This Agreement concerns corporate defendants and buildings at which no Plaintiffs claims to have been employed.  See DE 156-3; Compl. generally.  Thus the Agreement fails to establish any relationship between the Named Plaintiffs and the corporate defendants identified therein.

Ultimately, and despite the overabundance of documents and information annexed to both the Amended Complaint and Plaintiffs' Motion, one fact remains:  there is no basis to find that more than 200 Defendants were the "joint" employer of the Named Plaintiffs.

## IV.     **Plaintiffs Failed To Establish That the Named Plaintiffs and Individuals Employed by More Than 200 Defendants Are Similarly Situated.**[8]

When the allegations/exhibits introduced in connection with Plaintiffs' "integrated enterprise" theory of "joint" employer liability are discarded, the only allegations which remain to support Plaintiffs' Motion are limited to wage-and-hour-policies purportedly applicable to superintendents/porters in just two buildings within the "Manhattanville Portfolio,"[9] and to disparate and distinct wage-and-hour policies allegedly applicable to handymen who provided services in "Upper Manhattan and the Bronx."  See, e.g., Def. Br. 9-21; Compl. ¶ 397.

The Amended Complaint introduces no new factual allegations in this regard, and thus again fails to establish Plaintiffs' right to proceed against more than 200 distinct entities and individuals.  Compare Compl. ¶¶ 35-64, 350-401; with the Declarations of Contrera (DE 105); Lopez (DE 106); Batista (DE 107); Herrera (DE 108); and Reyes (DE 109), submitted in support of Plaintiffs' Motion.

In their letter, Plaintiffs disinguously contend "the three additional Named Plaintiffs [Batista, Reyes, and Herrera] broaden the knowledge and experience concerning working at Buildings owned by the E&M Enterprise."  See Pl. Sup. However, the reality remains that the five (5) Named Plaintiffs only provide facts relevant to their employment at entities in the Upper

---

[7] See the Decision and Order of Justice Kelly O'Neil Levy, dated June 20, 2017, a copy of which has been annexed hereto at Exhibit "C".

[8] Defendants respectfully refer the Court to pages 9-11 of Defendants' Brief for a recitation of the legal standard with which Plaintiffs must comply in order to establish the right to conditionally certify a collective action.

[9] Plaintiffs incorrectly refer to the properties within the "Manhattanville Portfolio" as belonging to the "Harlem Portfolio."  See Def. Br. 12.

803849-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Honorable Gabriel W. Gorenstein, Magistrate Judge
August 11, 2017
Page 7

Manhattan and Bronx. In <u>Fernandez v. Sharp Management Corp</u>, Magistrate Judge Netburn rejected an identical attempt to certify an expansive collective action consisting of superintendents who were employed across New York City. <u>See</u> 16-CV-0551(JGK)(SN), 2016 WL 5940918 (S.D.N.Y. Oct. 13, 2016). The court noted that "[f]or an action as geographically expansive as the one which plaintiffs propose, potentially covering over one hundred properties in four states, particularized evidence that the practice in question occurred systematically across Sharp Management's properties would plainly be necessary." <u>Id.</u> at *4. In rejecting Plaintiffs' bid for an expansive collective, the court found "no evidence in the record that plaintiffs had any interaction with or personal knowledge of the salary structure of any employees outside Manhattan or that Sharp Management applied uniform salary practices across its entire operations. Therefore, I find that any factual predicate for expanding the collective action beyond Sharp Management's property in Manhattan is lacking, and the reach of the proposed notice should be narrowed accordingly." <u>Id.</u> at *5.

As in <u>Fernandez</u>, there are no facts or evidence before this Court establishing Plaintiffs had knowledge or interaction with employees outside of locations at the Upper Manhattan and Bronx. As such, if a collective is to be certified in this case, it must be narrowed as follows:

- With regard to superintendents and porters, the putative collective must be limited to the 25 buildings within the Manhattanville Portfolio which were managed by Effram "Effi" Weiss, the only individual identified by Contrera, Lopez, Herrera and Batista as having supervised them in connection with their duties as a superintendent/porter.[10]

- Further, any putative collective containing handymen must be limited to handymen who provided services in "Upper Manhattan and the Bronx," or more specifically who provided services in the buildings in which Reyes and/or Batista (the only Plaintiffs who allege to have performed services as handymen) worked.[11]

Thus, in light of the foregoing and all prior materials submitted by Defendants herein, Plaintiffs' Motion must be denied, and if a collective is to be certified, it must be limited as set forth above. Defendants thank the Court for its time and consideration of the foregoing.

Respectfully submitted,<br>
/s/<br>
Christopher P. Hampton, Esq.

cc: All counsel VIA ECF

---

[10] <u>See</u> Def. Br. 9-21. A list of these 25 buildings, along with the entities which owned same, is annexed hereto at Exhibit "D". Alternatively, the putative collective for superintendents and porters must be limited to the approximately 80 buildings which comprise the Manhattanville Portfolio, as again, Plaintiffs only make allegations concerning wage-and-hour policies applicable to superintendents/porters who provided services for buildings in said Portfolio. A list of these buildings, along with the entities which owned same, can be found at DE 156-4.

[11] <u>See id.</u>

803849-2