UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
USVALDO CONTRERA et al.,                          :

                                                  :

                        Plaintiffs,                        OPINION AND ORDER
              -v.-                                :
                                                           16 Civ. 3851 (LTS) (GWG)
IRVING LANGER et al.,                             :

                        Defendants.               :
------------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiffs Usvaldo Contrera, Francisco Lopez, Pedro Batista, Fabian Herrera, and

Antonio Reyes — former superintendents, handymen, and a porter at residential buildings in

Upper Manhattan and the Bronx — filed this action against various individuals and entities that

plaintiffs collectively refer to as "the E&M Enterprise" alleging that this enterprise employed

them and it violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and

various provisions of the New York Labor Law.  Plaintiffs now move to amend their complaint.[1]

For the reasons set forth below, this motion is granted in part and denied in part.

I. BACKGROUND

       Contrera and Lopez filed the original complaint in this action on May 23, 2016.  See

Class Action Complaint, filed May 23, 2016 (Docket # 1).  It alleged claims against business

entities that owned, controlled, or managed more than 3,000 rental apartments in approximately

_____

       [1]  See Notice of Motion, filed Mar. 16, 2018 (Docket # 273) ("Pl. Not."); Declaration of
Marc A. Rapaport, filed Mar. 16, 2018 (Docket # 274) ("Rapaport Decl."); Declaration of Jose
Castillo, filed Mar. 16, 2018 (Docket # 275); Memorandum of Law in Support of Plaintiffs'
Motion to Amend the First Amended Complaint, filed Mar. 16, 2018 (Docket # 276) ("Pl.
Mem."); Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend the
First Amended Complaint, filed Apr. 9, 2018 (Docket # 283) ("Def. Mem."); Reply
Memorandum of Law in Further Support of Plaintiffs' Motion to Amend the First Amended
Complaint, filed Apr. 23, 2018 (Docket # 297) ("Pl. Reply").

262 buildings in New York City, as well as against individuals who controlled these entities. See id. ¶¶ 2, 10, 45-250. The complaint alleged that the defendants maintained an unlawful policy of encouraging superintendents and porters to work in excess of 40 hours per week, but failed to pay these individuals at the appropriate minimum wage or overtime rates. See id. ¶ 17. Contrera and Lopez worked for defendants as superintendents in two of their apartment buildings. See id. ¶¶ 29-31, 37-39. Contrera and Lopez claimed that they were required to remain on call "at virtually all times" and routinely worked more than 80 hours per week, but were paid less than the minimum hourly wage set in the FLSA, and were not paid overtime rates for hours worked in excess of 40, as required by the FLSA. Id. ¶¶ 32-35, 40-43, 310-20. The complaint also included so-called "Class Action Allegations," by which plaintiffs asserted that defendants deprived all porters and superintendents employed in their apartment buildings of the minimum hourly wage and overtime rates. See id. ¶¶ 251-62.

On September 23, 2016, defendants moved to dismiss the complaint, or in the alternative, for summary judgment. See Notice of Motion, filed Sept. 23, 2016 (Docket # 40). On July 27, 2017, before the Court ruled on that motion, plaintiffs filed their first amended complaint. See Amended Class Action Complaint, filed July 27, 2017 (Docket # 156) ("FAC"). The FAC added three new plaintiffs: Pedro Batista, who worked for the E&M Enterprise as both a handyman and a superintendent; Fabian Herrera, who worked for the E&M Enterprise as a porter and superintendent; and Antonio Reyes, who worked for the E&M Enterprise as a handyman. See id. ¶¶ 5-6, 53-64. In the FAC, plaintiffs alleged, among other claims, that Batista, Herrera, and Reyes were not paid the appropriate minimum wage or overtime rates for hours worked in excess of 40. See id. ¶¶ 380-412. The FAC also added a claim on behalf of all plaintiffs for overtime wages under the New York Labor Law. See id. ¶¶ 430-36. Finally, the FAC added

that the defendants designated in writing that Contrera and Lopez were hourly employees, with Contrera's hourly rate set at $10.00 per hour with an overtime rate of $15.00 per hour, and Lopez's hourly rate set at $9.17 per hour. See id. ¶¶ 43, 52. In support of this allegation, the FAC cited to "Employee Enrollment Applications" for Contrera and Lopez indicating that these employees were to be paid hourly. See id. ¶ 43 (citing Contrera's Staffpro Employee Enrollment Application, dated Nov. 18, 2013 (annexed as Ex. A to the Declaration of Scott Katz, dated Sept. 19, 2016 (annexed as Ex. D to the Declaration of Larry R. Martinez, filed Sept. 23, 2016 (Docket # 42)) ("Katz Decl.")) ("Contrera EEA")); id. ¶ 52 (citing Lopez's Staffpro Employee Enrollment Application, undated (annexed as Ex. C to Katz Decl.) ("Lopez EEA")). Another document cited in the FAC is signed by Contrera and indicates that he was to be paid at a rate of $10 per hour. See FAC ¶ 52 (citing Notice and Acknowledgment of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law Notice for Hourly Rate Employees, dated Nov. 26, 2013 (annexed as Ex. B to Katz Decl.) ("Contrera Section 195.1 Wage Notice")). Plaintiffs also allege that Batista was designated as an hourly employee, though they fail to indicate the form of this designation or Batista's hourly rate. See id. ¶ 384.

On September 8, 2017, defendants moved to partially dismiss the FAC on the grounds that (1) under the New York Labor Law, Contrera and Lopez were not entitled to be paid the overtime rate for hours worked in excess of 40; and (2) Lopez's FLSA claims were time-barred. See Notice of Motion, filed Sept. 8, 2017 (Docket # 192). On March 5, 2018, this Court issued a Report and Recommendation recommending that the district judge deny this motion. Contrera v. Langer, 290 F. Supp. 3d 269 (S.D.N.Y. 2018). The district judge has not yet ruled on this Report and Recommendation.

On March 16, 2018, plaintiffs filed the instant motion to amend the FAC. See Pl. Not.

3

While the FAC sought to recover unpaid wages at the minimum wage rate dictated by the FLSA, see FAC ¶¶ 402-05, and overtime wages at the rates set by the FLSA and New York Labor Law, see id. ¶¶ 406-12, 430-36, the proposed Second Amended Complaint additionally seeks to recover unpaid wages on the ground that the parties agreed to specific hourly and overtime rates that defendants failed to pay, see Second Amended Class Action Complaint With Comparison Notes, dated Mar. 16, 2018 (annexed as Ex. 1 to Rapaport Decl.) ("SAC"), ¶¶ 4, 437-43, ad damnum ¶¶ 6-7. Plaintiffs seek to recover these "agreed upon wages" pursuant to section 198(3) of the New York Labor Law or under a common law claim for breach of contract. See id. ¶¶ 437-43.

## II. GOVERNING LAW

Rule 15(a) provides that a court should "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. E.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The court may deny leave to amend for "good reason," which normally involves an analysis of the factors articulated in Foman: undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. E.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citing Howey v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973), and Middle Atl. Utils. Co. v. S.M.W. Dev. Co., 392 F.2d 380, 384 (2d Cir. 1968)). While the party seeking to amend its pleading must explain any delay, the party opposing the amendment "bears the burden of showing prejudice, bad faith,

and futility of the amendment." United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018) (internal quotation marks and citations omitted).

"In gauging prejudice," a court considers, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (internal quotation marks omitted) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). Obviously, "[u]ndue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof." Id. (internal quotation marks and alteration omitted) (quoting Fluor Corp., 654 F.2d at 856). Nonetheless, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (internal quotation marks and alterations omitted) (quoting A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)). Thus, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989) (citation omitted); accord Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014).

Finally, when a party argues that an amendment would be futile, the court must determine whether "a proposed claim could . . . withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Pursuant to Rule 12(b)(6), a party may move to dismiss the

opposing party's pleading on the ground that it "fail[s] to state a claim upon which relief can be granted."  While a court must accept as true all of the allegations contained in the complaint, that principle does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A party's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks, citation, and alteration omitted).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any conclusory statements in the pleading, see id. at 679.

Next, a court must determine if the complaint contain "sufficient factual matter" which, if accepted as true, state a claim that is "plausible on its face."  Id. at 678 (internal quotation marks and citation omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A pleading] must allege facts that are not merely consistent with the conclusion that the [adverse party] violated the law, but which actively and plausibly suggest that conclusion.") (citations omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. (internal quotation marks and citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]'— 'that the pleader is entitled to relief.'"  Id. at 679 (second alteration in original) (quoting Fed. R. Civ.

P. 8(a)(2)).

III. <u>DISCUSSION</u>

Defendants argue that plaintiffs' motion to amend should be denied because it would be futile to add the plaintiffs' "agreed upon wages" claims. <u>See</u> Def. Mem. at 4-19. Defendants also argue that the motion should be denied because plaintiffs delayed in making the motion, and defendants would suffer undue prejudice if it were granted. <u>See id.</u> at 19-23. We first address defendants' futility arguments and then turn to their arguments regarding undue delay and prejudice.

A. <u>Whether Plaintiffs' Proposed Amendment to Add an "Agreed Upon Wages" Claim Under the New York Labor Law Would Be Futile</u>

In their proposed Second Amended Complaint, plaintiffs seek to add a claim to recover "the full amount of wages" that defendants purportedly agreed to pay plaintiffs on an hourly basis pursuant to section 198(3) of the New York labor Law. <u>See</u> SAC ¶¶ 437-39; Pl. Mem. at 4-5.

"Article 6 of the [New York Labor Law] regulates the payment of wages by employers." <u>Pachter v. Bernard Hodes Grp., Inc.</u>, 10 N.Y.3d 609, 614 (2008). "To state a claim under Article 6, [a party] must allege that their wages were withheld in violation of one of the substantive provisions of the Labor Law." <u>Michalek v. Amplify Sports & Entm't LLC</u>, 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012) (quoting <u>Fin. Techs. Int'l Inc. v. Smith</u>, 247 F. Supp 2d 397, 412 (S.D.N.Y. 2002)). Section 198 of the New York Labor Law, found within Article 6 of the New York Labor Law, is titled "Costs, remedies." Subsection (3) of section 198 provides that "[a]ll employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action,

7

whether such action is instituted by the employee or by the commissioner."  N.Y. Lab. L.

§ 198(3).  Plaintiffs assert that section 198(3)'s reference to "full wages" creates a cause of

action to recover "agreed upon wages."  Pl. Mem. at 4-5.

The problem with plaintiffs' argument is that section 198 is not a "substantive provision"

but one that addresses procedural matters collateral to liability such as limitations periods and

damages.  As noted, the section is entitled "Costs, remedies."  Subsection 1 allows costs to be

awarded to a prevailing employee.  Subsection 1-a  authorizes the Commissioner of Labor to

initiate an action on behalf of an employee to seek wages to which the employee "is entitled

under the provisions of this article."  It also authorizes any litigant to recover attorney's fees,

interest, and liquidated damages.  Subsection 1-b sets forth the penalty for not providing the

notice required by section 195(1).  Subsection 1-d sets forth the penalty for not providing the

wage statement required by section 195(3).   Subsection 4 provides for costs and attorney's fees

to a party enforcing a judgment.

Subsection 3, the subsection that contains the "full wages" phrase, provides in full as

follows:

> Notwithstanding any other provision of law, an action to recover upon a liability
> imposed by this article must be commenced within six years.  The statute of
> limitations shall be tolled from the date an employee files a complaint with the
> commissioner or the commissioner commences an investigation, whichever is
> earlier, until an order to comply issued by the commissioner becomes final, or
> where the commissioner does not issue an order, until the date on which the
> commissioner notifies the complainant that the investigation has concluded.
> Investigation by the commissioner shall not be a prerequisite to nor a bar against
> a person bringing a civil action under this section.  All employees shall have the
> right to recover full wages, benefits and wage supplements and liquidated
> damages accrued during the six years previous to the commencing of such action,
> whether such action is instituted by the employee or by the commissioner.

The text of this subsection describes the limitations period for any action that seeks to recover on

a "liability" that is "imposed by" Article 6. The first sentence sets forth the limitation period for such an action. The second sentence provides that the action shall be tolled while the Commissioner of Labor conducts any investigation. The third sentence notes that an investigation is neither a prerequisite nor a bar for a person bringing a civil action. The final sentence makes clear that the right of recovery of certain damages within the six-year limitations period — specifically, "full wages, benefits and wage supplements and liquidated damages" — is available whether the action is instituted by the employee or by the Commissioner of Labor.

The title, content and structure of section 198 thus make clear that the reference in the last section to "full wages" or to any other available form of damages does not create a "liability imposed by this article." Rather, any such liability must be found in another section of Article 6. And Article 6 contains several substantive provisions imposing liability on employers, such as section 193, prohibiting certain deductions from wages; section 194, barring differences in rate of pay because of sex; and section 196-d, prohibiting an employer from demanding tips given to an employee. Thus, the reference to "full wages" can be read only as a reference to wages that are guaranteed by other sections within Article 6.

Other courts have similarly concluded that "§ 198 does not stand alone. It sets forth the remedies available in 'actions for wage claims founded on the substantive provisions of Labor Law article 6.'" Alter v. Bogoricin, 1997 WL 691332, at *13 (S.D.N.Y. Nov. 6, 1997) (quoting Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 464 (1993)). Such courts have found that a claim may not be brought under section 198 itself. See id.; Fallman v. Hotel Insider Ltd., 2016 WL 316378, at *8 (S.D.N.Y. Jan. 15, 2016) ("'Section 198 . . . does not create a cause of action,' and is 'limited to actions for wage claims founded on the substantive provisions of Labor Law article 6.'") (citation omitted); Monagle v. Scholastic, Inc., 2007 WL 766282, at *2 (S.D.N.Y.

Mar. 9, 2007) ("§ 198 provides no substantive cause of action at all."). As one case held, "[t]he remedies of section 198 may not be invoked when the claim is in substance a contract claim to enforce the payment of obligations other than statutory wages." <u>Fin. Techs. Int'l, Inc.</u>, 247 F. Supp. 2d at 413 (citing <u>Gottlieb</u>, 82 N.Y.2d at 462-63); <u>accord</u> <u>Moras v. Marco Polo Network, Inc.</u>, 2012 WL 6700231, at *11 (S.D.N.Y. Dec. 20, 2012); <u>Malinowski v. Wall St. Source, Inc.</u>, 2012 WL 279450, at *2 (S.D.N.Y. Jan. 31, 2012) (rejecting plaintiff's "agreed upon wages" claim brought under section 198(3) because "the remedies supplied by § 198 of Article 6 are available <u>only when</u> a claimant has established a violation of his rights under a substantive portion of Article 6.") (emphasis in original) (citation omitted).

This view of section 198 finds support in case law from the New York Court of Appeals. In <u>Gottlieb v. Kenneth D. Laub & Co.</u>, 82 N.Y.2d 457 (1993), a plaintiff brought an action to recover commissions owed to him under a common law breach of contract cause of action, as well as "attorney's fees and liquidated damages" based on a purported "violation of Labor Law section 198." <u>Id.</u> at 460 (internal quotation marks omitted). The New York Court of Appeals held that the remedy of attorney's fees provided by section 198(1-a) of the New York Labor Law was "limited to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6," and accordingly the plaintiff could not recover such fees where the defendant's substantive liability arose under a common law breach of contract claim. <u>Id.</u> at 459, 464. In so holding, the Court of Appeals reasoned that the legislative history, as well as the "remaining provisions of . . . § 198 strongly suggest that the <u>entire section</u> was intended merely to afford procedural rules, including costs and cost-related remedies, to apply in actions brought for wage claims created under the substantive provisions of Labor Law article 6." <u>Id.</u> at 464 (emphasis added).

We are aware that some courts have found that section 198 allows for an employee to recover damages "for a claim of straight time at a rate higher than the minimum wage if the parties previously agreed to the rate . . . ." Villar v. Prana Hosp., Inc., 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017); accord Coley v. Vannguard Urban Improvement Ass'n, Inc., 2018 WL 1513628, at *9 (E.D.N.Y. Mar. 27, 2018); Denoyer v. PMI Sec. Prot. Inc., 2018 WL 1738217, at *3 (S.D.N.Y. Jan. 23, 2018); Soto v. Armstrong Realty Mgmt. Corp., 2016 WL 7396687, at *2 (S.D.N.Y. Dec. 21, 2016); Armata v. Unique Cleaning Servs., LLC, 2015 WL 12645527, at *5 (E.D.N.Y. Aug. 27, 2015). We respectfully disagree with these cases, however. None of these cases conduct an analysis of the structure of Article 6 and the statutory language in section 198. Almost all of the cases arose in the context of default judgments, where there was presumably no adversarial briefing on the issue. Only two of these cases mention Gottlieb, and even then only to recognize that it is contrary to the conclusion those courts reached without attempting to distinguish it. Villar, 2017 WL 1333582, at *4; Soto, 2016 WL 7396687, at *2. In light of our own analysis of the statutory provisions and the existence of persuasive case law supporting our analysis, we cannot agree with the conclusion reached in these cases.

Accordingly, we deny plaintiffs leave to amend their complaint to add an "agreed upon wages" claim under section 198(3) because such an amendment would be futile.[2]

---

[2] The defendants argued in their opposition brief that section 191 of the New York Labor Law also does not permit recovery for "agreed upon wages." Def. Mem. at 9-10. The SAC does not cite to section 191 to support the "agreed upon wages" claim and does not make allegations consistent with that statute. See SAC ¶¶ 437-43. Additionally, plaintiffs did not rely on section 191 in their opening brief, though they briefly responded to defendants' arguments in their reply brief. See Pl. Reply 2-3. In light of these circumstances, we do not reach the question of whether section 191 would support any potential claims by plaintiffs.

B.  Whether Plaintiffs' Proposed Amendment to Add a Breach of Contract Claim for Failure to Pay "Agreed Upon Wages" Would Be Futile

Plaintiffs seek leave to amend their complaint to add a breach of contract claim based on defendants' alleged failure to pay for "all hours worked" including both regular time and overtime.  See SAC ¶¶ 440-43; Pl. Mem. at 5-6.  Defendants argue this amendment would be futile because (1) the breach of contract claim "duplicates" other claims already made under the FLSA and New York Labor Law; (2) plaintiffs' proposed Second Amended Complaint fails to adequately plead a cause of action for breach of contract; and (3) plaintiffs' breach of contract claim would not be susceptible to class certification.  Def. Mem. at 14-19.  We discuss each of these arguments next.

1.  Preemption

Although defendants phrase their argument in terms of "duplication," the cases cited by defendants, see Def. Mem. at 14-15, apply the doctrine of "preemption."  See, e.g., Sampson, 2012 WL 3027838, at *8 ("[W]here a state common law claim is based upon the same facts as a FLSA cause of action, the duplicative state-law claim is preempted by the FLSA and must be dismissed.") (internal quotation marks and citation omitted).  The doctrine of preemption is a function of the Supremacy Clause of the United States Constitution.  English v. Gen. Elec. Co., 496 U.S. 72, 78 (1990).[3]  One instance in which federal law preempts state law occurs when state law "actually conflicts with federal law" — commonly referred to as "conflict preemption."  Id. at 79.  Conflict preemption may be found "where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  Gade v. Nat'l

---

[3]  Because the Supremacy Clause concerns the supremacy of federal law over state, we reject defendants' argument that the New York Labor Law would preempt state common law remedies.  See Def. Mem. at 14.

12

Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992) (citations omitted).

"The Second Circuit has not squarely addressed whether common law claims for overtime are preempted by the FLSA." Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 361 (E.D.N.Y. 2015) (citing Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp. 2d 276, 297 (E.D.N.Y. 2007)); accord Chaluisan v. Simsmetal E. LLC, 698 F. Supp. 2d 397, 407 (S.D.N.Y. 2010). However, district courts have consistently held that because the FLSA is a comprehensive remedial scheme, state common law claims based on the same facts may present an obstacle to fulfilling this remedial scheme by allowing private plaintiffs to circumvent the power of the Secretary of Labor to terminate a private right of action otherwise allowable under the FLSA as set forth in 29 U.S.C. § 216(c). See, e.g., Acevedo v. WorkFit Med. LLC, 2014 WL 4659366, at *13-14 (W.D.N.Y. Sept. 17, 2014); accord DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 532 (E.D.N.Y. 2011). Thus, the FLSA preempts state common law causes of action where "the FLSA and common law claims are grounded in the same facts." Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005); accord Acevedo, 2014 WL 4659366, at *14 ("Plaintiffs' state common law claims [including breach of an express contract] are thus preempted to the extent they seek unpaid overtime wages."); DeSilva, 770 F. Supp. 2d at 532.

The FLSA allows plaintiffs to recover their overtime wages. See 29 U.S.C. § 207 (employers may not employ employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed"). With respect to non-overtime wages, however — commonly referred to as "straight time" — "[t]he FLSA allows recovery for unpaid 'straight' time only up to the minimum wage rate." See Soto,

2016 WL 7396687, at *2 (citing Kernes v. Glob. Structures, LLC, 2016 WL 880199, at *3

(S.D.N.Y. Mar. 1, 2016)).  Therefore, the FLSA does not preempt plaintiffs' breach of contract

claim for "straight time" to the extent the rate is higher than the minimum wage rate.  See, e.g.,

Acevedo, 2014 WL 4659366, at *14 ("Straight time wage claims are not preempted by the

FLSA.") (citing Barrus v. Dick's Sporting Goods, Inc., 732 F. Supp. 2d 243, 263 (W.D.N.Y.

2010), and DeSilva, 770 F. Supp. 2d at 532-33); accord Mikhaylov v. Y & B Transp. Co., 2017

WL 1048071, at *6 (E.D.N.Y. Mar. 17, 2017).

  However, plaintiffs' breach of contract claim for overtime wages is preempted by the

FLSA.  Plaintiffs have failed to indicate any manner in which their claim for "agreed upon"

overtime wages will differ from their claim for overtime wages under the FLSA.  Thus, as case

law has recognized, plaintiffs' breach of contract claim for overtime must be dismissed as

preempted by the FLSA's provision allowing pursuit of overtime claims.  See, e.g., Sosnowy v.

A. Perri Farms, Inc., 764 F. Supp.2d 457, 470 (E.D.N.Y. 2011) (dismissing breach of contract

and unjust enrichment claims seeking overtime compensation as preempted by the FLSA);

accord Barrus, 732 F. Supp. 2d at 263 (dismissing common law claims for unpaid overtime as

preempted by the FLSA); Acevedo, 2014 WL 4659366, at *14.

  Plaintiffs argue that notwithstanding preemption, they may nevertheless plead their

breach of contract claim for overtime wages in the alternative at this stage in the proceeding.

See Pl. Reply at 3.  However, "[i]t is well-established that preemption may be analyzed and

decided at the motion to dismiss stage."  Utts v. Bristol-Myers Squibb Co., 251 F. Supp. 3d 644,

672 (S.D.N.Y. 2017); see also Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 444 (2d

Cir. 2015) ("[W]hen considering a preemption argument in the context of a motion to dismiss,

the factual allegations relevant to preemption must be viewed in the light most favorable to the

plaintiff."). Plaintiffs' reliance, Pl. Reply at 3, on <u>BL Restaurant Operations, LLC v. 701</u>

<u>America, Inc.</u>, 2012 WL 463826 (S.D.N.Y. Feb. 14, 2012), is misplaced because that case did

not address preemption and thus is irrelevant.[4]

In sum, we find that plaintiffs' breach of contract claim is preempted to the extent that it

seeks overtime wages, but not with respect to "straight time" wages.

### 2. Stating a Claim

Defendants argue that granting plaintiffs' motion for leave to amend would be futile

because plaintiffs' complaint fails to state a claim for breach of contract. Def. Mem. at 17-18.

"To state a claim in federal court for breach of contract under New York law, a complaint need

only allege (1) the existence of an agreement, (2) adequate performance of the contract by the

plaintiff, (3) breach of contract by the defendant, and (4) damages." <u>Harsco Corp. v. Segui</u>, 91

F.3d 337, 348 (2d Cir. 1996) (citations omitted). Defendants assert that plaintiffs' proposed

Second Amended Complaint "fail[s] to assert the exact terms of the contract which they seek to

enforce, and also fail[s] to assert they 'adequately performed' their obligations thereunder." Def.

Mem. at 17.

We find that plaintiffs have stated a breach of contract claim with respect to Contrera and

Lopez's "agreed upon wages" claims for "straight time." Plaintiffs allege that Contrera and

Lopez were designated in writing as hourly employees with hourly rates in excess of what they

were actually paid. <u>See</u> SAC ¶¶ 39-43, 49-52. With respect to Contrera and Lopez, the

---

[4] Another case cited by plaintiffs, <u>Roelcke v. Zip Aviation, LCC</u>, 2018 WL 1792374
(S.D.N.Y. Mar. 26, 2018), did allow a contract claim that was potentially "preempted by
[plaintiff's] statutory claims under the [FLSA]" to be pled "in the alternative." <u>Id.</u> at *11
(citations omitted). However, <u>Roelcke</u>'s only support for this ruling was Fed. R. Civ. P. 8(d)(2),
which allows for pleading in the alternative but does not address preemption at all. Thus, we
respectfully decline to follow <u>Roelcke</u>.

proposed Second Amended Complaint cites to "Employee Enrollment Applications" indicating that they were hired as "supers" and were to be paid hourly at specified rates. See SAC ¶ 43 (citing Contrera EEA); id. ¶ 52 (citing Lopez EEA). Another document cited in the complaint is signed by Contrera and indicates that he was to be paid hourly. See Contrera Section 195.1 Wage Notice. These documents were incorporated by reference into the complaint and may be considered in evaluating its sufficiency. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" in deciding a motion to dismiss.) (citation omitted). The allegations of the complaint coupled with the documents incorporated by reference are sufficient to show that "Defendants agreed to pay Plaintiffs [Contrera and Lopez] . . . on an hourly basis, including regular hourly rates for all hours of work up to forty per week." SAC ¶ 438.

The proposed Second Amended Complaint also adequately alleges performance under the contract with respect to Contrera and Lopez. With respect to Contrera, plaintiffs allege that he "worked as a Superintendent" for the defendants from 2013 through 2015, that he was required "to remain on-call . . . at virtually all times, and his work week would typically exceed 80 hours," and that "[i]n light of the hours that Contrera worked each week, his pay was substantially below minimum wage." See SAC ¶¶ 36-39, 41. The proposed Second Amended Complaint contains similar allegations with respect to Lopez. See SAC ¶¶ 45, 47, 49.

Defendants argue that insofar as "the instant matter concerns wages allegedly improperly (and continuously) paid to, and accepted by, Plaintiffs, for a period of six years[,]" plaintiffs' claims for breach of contract are subject to dismissal under the defense of "accord and

satisfaction."[5]  Def. Mem. at 18.  However, under New York law, a party asserting the

affirmative defense of accord and satisfaction "must show the existence of an agreement

between the parties which settles a dispute between them and its performance of that

agreement."  Alentino, Ltd. v. Chenson Enters., Inc., 938 F.2d 26, 28 (2d Cir. 1991) (per

curiam).  Defendants have failed to show that any such agreement appears "on the face of" the

complaint.  Chen v. Major League Baseball Props., Inc., 798 F.3d 72, 81 (2d Cir. 2015) (An

affirmative defense "may be raised in a pre-answer Rule 12(b)(6) motion 'if the defense appears

on the face of the complaint.'") (quoting Iowa Pub. Emps. Ret. Sys. v. MF Glob., Ltd., 620 F.3d

137, 145 (2d Cir. 2010)).  The single case defendants cite in support of this defense, Horn v.

PTJP Partners, L.P., 16 A.D.3d 103 (1st Dep't 2005), found an accord and satisfaction where a

securities trader's actions had "clearly evinced an intent to accept such payment in discharge of

the disputed obligation."  Id. at 104.  By contrast, nothing in the proposed Second Amended

Complaint demonstrates such a clear manifestation of intent.

     With respect to plaintiffs other than Contrera and Lopez, however, plaintiffs have not

stated a claim for breach of contract.  The sole allegation in support of Herrera and Reyes's

breach of contract claims is that "[d]efendants agreed to pay Plaintiffs and Class Members on an

hourly basis, including regular hourly rates for all hours of work up to forty per week, and

premium overtime (one and one-half times the regular rate of pay) for hours worked above forty

per week.  However, Defendants failed to pay Plaintiffs and Class Members the full amount of

wages due, including but not limited to overtime."  See SAC ¶ 438.  This statement is conclusory

---

     [5] Defendants also assert that the doctrines of waiver/laches and ratification make
amendment of plaintiffs' complaint futile.  See Def. Mem. at 18.  However, defendants do not
apply these doctrines to the allegations in the complaint, and fail to cite a single case applying
the doctrines.

and thus is insufficient on its own to state a claim. See Iqbal, 556 U.S. at 678. Plaintiffs point to no other statements or documents that could be considered on a motion to dismiss that would establish that Herrera or Reyes entered into contracts with defendants by which they should have been paid hourly. Although plaintiffs's brief refers to information external to the complaint indicating that other employees were designated as hourly workers, see Pl. Mem. at 2, such external information cannot be considered in connection with this Court's futility analysis, which is governed by the standards applicable to a motion to dismiss. Moreover, although the proposed Second Amended Complaint alleges that Batista was designated as an hourly employee, see SAC ¶ 56, it does not state the amount of that hourly rate or whether he was paid at that rate for straight time hours worked. Without such allegations, the proposed Second Amended Complaint does not allege in a non-conclusory fashion that Batista was not paid his "agreed upon wages" for straight time. Thus, Herrera, Batista, and Reyes have failed to state claims for breach of contract.

### 3. Class Certification

Defendants argue that plaintiffs should not be permitted to amend their complaint to add a breach of contract claim because such a claim would not be amenable to class certification. See Def. Mem. at 18-19. While defendants cite two cases that arose in the context of a motion to amend in support of their argument, id. at 18, both of these cases are distinguishable because in each case motions for class certification previously had been denied and the plaintiffs were moving to amend in an effort to cure defects raised by the courts in denying those motions. See Luedke v. Delta Air Lines, Inc., 1993 WL 313577, at *1, *4 (S.D.N.Y. Aug. 10, 1993) (denying leave to amend after the "court denied the request for certification of the class on the ground that the identification of its members had not been shown to be administratively feasible," and the

proposed amendments "failed to put forward an administratively feasible method of identifying members of the redefined class and its subclasses."); In re Sci. Control Corp. Sec. Litig., 71 F.R.D. 491, 513-14 (S.D.N.Y. 1976) (denying leave to amend one count of the complaint where "amendment [wa]s sought 'in response to reasons advanced by the Court in its opinion . . . denying class action certification'" on that count and was proposed "merely to fashion th[e] litigation in such manner as to enhance its class action aspects."). No class certification motion has been made here, nor is leave to amend being sought to make the complaint more amenable to class certification. Accordingly, these cases are irrelevant and this argument cannot serve as a basis for denying leave to amend.

*   *   *

Based on the foregoing, the Second Amended Complaint properly states a claim for breach of contract claims for "straight time" wages on behalf of Contrera and Lopez, but not the remaining named plaintiffs.

C.   Whether Granting Leave to Amend Would Result in Undue Delay or Would Unduly Prejudice Defendants

Defendants argue that the plaintiffs have unduly delayed in seeking leave to amend and that granting this request would unduly prejudice defendants. Def. Mem. at 19-23.

Defendants argue that plaintiffs unduly delayed because they filed their original complaint on May 23, 2016, but failed to make the instant motion for leave to amend until nearly two years later. See id. at 19. Defendants also argue that this delay was unjustified because plaintiffs had the knowledge of the claims they seek to add at the outset of this litigation. See id. at 20-22. However, it is well-established that "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Fluor

Corp., 654 F.2d at 856 (citing <u>Howey</u>, 481 F.2d at 1190-91, and <u>Middle Atl. Utils. Co.</u>, 392 F.2d at 384).

Defendants argue that they would be prejudiced should the Court grant plaintiffs leave to amend because (1) they will need to "present additional . . . witnesses" regarding the contracts to pay specific wages; and (2) they might need to depose plaintiffs as to this issue. Def. Mem. at 22-23 (emphasis omitted). They also assert that the passage of time may have caused witnesses's memories of the events to deteriorate. <u>Id.</u> These arguments are insufficient to deny leave to amend, however. As the Second Circuit has made clear, an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." <u>United States ex rel. Mar. Admin.</u>, 889 F.2d at 1255 (citation omitted); <u>accord</u> <u>Christians of Cal., Inc.</u>, 2014 WL 3605526, at *5. Defendants do not claim that any plaintiffs have been deposed. And there is no suggestion that any discovery already performed — such as electronic document searches or depositions — would need to be redone. Thus, it appears that the additional discovery engendered by the amendment would have been conducted in the same manner had the claims been asserted initially. Defendants' citation to <u>United States ex rel.</u> <u>Raffington v. Bon Secours Health System, Inc.</u>, 285 F. Supp. 3d 759 (S.D.N.Y. 2018), is inapposite because in that case "the electronic and document discovery phase of the case was extraordinarily lengthy and contentious, and that phase [was] virtually concluded." <u>Id.</u> at 771.[6]

---

[6] Defendants argue, <u>see</u> Def. Mem. at 21-22, they need not show undue prejudice or bad faith in opposing plaintiffs' request for leave to amend by citing <u>Parker v. Columbia Pictures</u> <u>Industries</u>, 204 F.3d 326 (2d Cir. 2000). <u>Parker</u> held that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause" for the delay. <u>Id.</u> at 340. This holding was a function of the fact that "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." <u>Id.</u> No such

In sum, we find that the delay at issue was not sufficiently prejudicial to warrant denying plaintiffs' request for leave to amend.

IV. CONCLUSION

For the reasons set forth above, plaintiffs' request for leave to amend their First Amended Complaint (Docket # 273) is granted in part and denied in part. Plaintiffs have leave to file a Second Amended Complaint in accordance with this decision within seven days of the date of this decision.

SO ORDERED

Dated: June 4, 2018
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

deadline has been set in this case, however. Parker is therefore inapposite.