UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

USVALDO CONTRERA, FRANCISCO LOPEZ,
PEDRO BATISTA, FABIAN HERRERA and
ANTONIO REYES, *individually, and on behalf of
all others similarly-situated*,

                         Plaintiffs,           **Docket No.: 16-CV-3851
(LTS)(GWG)**

        -against-

IRVING LANGER, et al.,

                         Defendants.

-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
AND CLASS ACTION SETTLEMENT PROCEDURE**



RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
One Penn Plaza, Suite 2430
New York, NY 10119
(212) 382-1600

MILLER LAW, PLLC
Meredith R. Miller
167 Madison Avenue, Suite 503
New York, NY 10016
(347) 878-2587

WINEBRAKE & SANTILLO, LLC
Peter Winebrake
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT AND SUMMARY OF RELIEF REQUESTED ....................... 1

I.  BACKGROUND ...................................................................................................................... 2

   A. Procedural History, Conditional Certification, and Discovery ........................................... 2

   B. Plaintiffs' Approach to Estimating Potential Ranges of Damages for the Putative Class .. 4

   C. The Two-Day Mediation .................................................................................................... 6

   D. The Settlement Agreement ................................................................................................. 6

   E. Notice to Class Members ................................................................................................. 10

II.  PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS
WARRANTED. ........................................................................................................................... 13

   A. The Applicable Standards for Preliminary Approval ....................................................... 13

   B. The Court "Will Likely Be Able to" Approve the Settlement under FRCP 23(e)(2) ....... 16

   C. The Court "Will Likely be Able to Certify the Class" Because it Meets the Requirements
   of Numerosity, Commonality, Typicality, Adequacy, Ascertainability, Predominance and
   Superiority ............................................................................................................................. 23

III.  THE PROPOSED NOTICE SATISFIES FRCP 23(c)(2)(B). ............................................ 28

IV.  THE COURT SHOULD APPOINT THE UNDERSIGNED ATTORNEYS AS CLASS
COUNSEL. ................................................................................................................................. 30

V.  THE COURT SHOULD APPOINT SETTLEMENT SERVICES, INC. AS THE CLAIMS
ADMINISTRATOR FOR THE SETTLEMENT AGREEMENT. ............................................. 31

CONCLUSION ............................................................................................................................ 32

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ..................................................... 25, 28

*Azoue v. 16 for 8 Hospitality LLC,* No. 13-cv-7899, 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) ..................................................................................................................................... 13

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006) ............................................... 25

*Brecher v. Republic of Argentina*, 802 F.3d 303 (2d Cir. 2015) ................................................ 26

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ........................................ 2

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ......................................... 2, 15, 19

*Clem v. Keybank, N.A.*, No. 13-cv-789, 2014 WL 2895918 (S.D.N.Y. Jun. 20, 2014) ............... 14

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................. 24

*Cuzco v. Orion Builders, Inc.,* 262 F.R.D. 325 (S.D.N.Y. 2009) ................................................ 25

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 WL 2255394 (S.D.N.Y. May 11, 2015) ..................................................................................................................................... 14

*Denney v. Deutsche Bank AG*, 443 F3d 253 (2d Cir. 2006) ........................................................ 18

*Douglas v. Allied Universal Sec. Servs. LLC,* 371 F. Supp. 3d 78 (E.D.N.Y. 2019) .................. 19

*Espinoza v. 953 Associates LLC,* 280 F.R.D. 113 (S.D.N.Y. 2011) ............................................ 25

*Gay v. Tri-Wire Eng'g Sols., Inc.*, No. 12-cv-2231, 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) ... 16

*Hadel v. Gaucho, LLC,* No. 15-cv-3706, 2016 WL 1060324 (S.D.N.Y. Mar.  14, 2016) .......... 15

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91 (E.D.N.Y. 2015) ............................................ 19

*In re AOL Time Warner, Inc. Securities Litig.*, No. 06-cv-0695, 2006 U.S. Dist. LEXIS 17588, (S.D.N.Y. Apr. 6, 2006 ................................................................................................... 17, 18

*In re Currency Conversion In re Fee Antitrust Litig.*, No. 1 MDL 1409, 2006 U.S. Dist. LEXIS 81440, 2006 WL 3247396 (S.D.N.Y Nov. 8, 2016) ................................................................ 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) .................................. 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* 55 F.3d 768 (3d Cir. 1995) ..................................................................................................................................... 16

*In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704, 2019 U.S. Dist. LEXIS 194736 (S.D.N.Y. Nov. 7, 2019) ............................................................................................ 15, 17, 19

*In re Initial Public Offering Securities Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007) ......................... 14

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................................... 14, 15

*In re Petrobras Securities Litig.*, 862 F.3d 250 (2d Cir. 2017) ................................................... 26

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................... 21

*Kamean v. Local 363, Int'l Bhd. of Teamsters,* 109 F.R.D. 391 (S.D.N.Y. 1986) ...................... 24

*Labatte–D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451 (E.D.N.Y. 1996) .......................... 25

*Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015) ...................................... 19

*Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................... 21

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ........................................................................... 19

*Olipado v. Cargo Airport Servs. USA, LLC*, 2019 U.S. Dist. LEXIS 110585 (E.D.N.Y. July 2, 2019) .................................................................................................................... 18

*Padovano v. FedEx Ground Package System, Inc.,* No. 16-cv-00017, 2019 U.S. Dist. LEXIS 107092 (W.D.N.Y. June 10, 2019) ................................................................. 15

*Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-cv-9353, 2015 U.S. Dist. LEXIS 54066 (S.D.N.Y. Apr. 24, 2015) ...................................................................................... 20

*Ruzhinskaya v. Healthport Tech.,* 311 F.R.D. 87 (S.D.N.Y. 2015) ............................................. 26

*Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .................................................................. 26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). ............................................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 3967 F.3d 116 (2d Cir. 2005) .................................. 13

*Wilson v. LBS Industries, Inc.,* No. 15-cv-07614, 2018 U.S. Dist. LEXIS 138832 (S.D.N.Y. Aug. 13, 2018) ............................................................................................................. 24, 26

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ................................. 2, 16, 19

**Statute**

Fed. R. Civ. P. ................................................................................................................ passim

**PRELIMINARY STATEMENT AND SUMMARY OF RELIEF REQUESTED**

Subject to this Court's preliminary and final approval, the five Named Plaintiffs, Usvaldo Contrera, Francisco Lopez, Pedro Batista, Fabian Herrera and Antonio Reyes (together with opt-in Plaintiffs, "Plaintiffs") have settled this wage and hour class and collective action brought against the Defendants pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for the sum of up to Seven Million One Hundred Thousand Dollars ($7,100,000.00). The proposed settlement resolves Plaintiffs' claims on a class and collective basis, resolves the litigation in its entirety, and satisfies the criteria for preliminary settlement approval.

Plaintiffs respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure ("FRCP") 23(e)(1)(B), grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Marc A. Rapaport, dated January 22, 2020 ("Rapaport Declaration" or "Rapaport Decl.");[1] (2) for settlement purposes, conditionally certify the settlement class pursuant FRCP 23(a) and 23(b)(3); (3) appoint Marc A. Rapaport (Rapaport Law Firm, PLLC), Meredith R. Miller (Miller Law, PLLC), and Peter Winebrake (Winebrake & Santillo, LLC) as Class Counsel; (4) approve the form Notices of Settlement with attached Claim or Address Forms, the Summary Class Notice and Reminder Postcard (collective "Class Notices"), which are attached to the Settlement Agreement as Exhibits D-1, D-2, D-3 and E, and direct their distribution as "the best notice that is practicable" pursuant to FRCP 23(c)(2)(B); and (5) appoint Settlement Services, Inc. as the Claims Administrator ("Administrator") for the Settlement Agreement.

As discussed more fully below, the Court should preliminarily approve the settlement

---

[1] The Settlement Agreement, with all exhibits (A through E), is attached to the Rapaport Declaration as Exhibit 1.

because it is fair, reasonable, and adequate, and otherwise satisfies the standards set forth in FRCP 23(e)(1), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

## I.  BACKGROUND

### A.  Procedural History, Conditional Certification, and Discovery

***Pleadings and Motions to Dismiss:***

After extensive research, on May 23, 2016, Rapaport Law Firm PLLC ("Rapaport Law") and Miller Law, PLLC ("Miller Law"), on behalf of Usvaldo Contrera and Francisco Lopez, filed a complaint (the "Initial Complaint") in this Court asserting federal and state claims for unpaid overtime, minimum wage, and statutory damages, on behalf of themselves and similarly-situated building maintenance workers (superintendents, porters and handymen) against four individual defendants and 192 corporate Defendants (collectively, "Defendants").  Rapaport Decl. ¶¶ 6-10.

Plaintiffs allege that Defendants are a real estate enterprise[2] that, during the relevant limitation periods, exercised ownership and control over approximately 230 apartment buildings in New York City, many of which are located in Upper Manhattan and the Bronx (the "Buildings"). Plaintiffs identified the Buildings in a 21-page chart that was annexed to the Initial Complaint, and thereafter was revised when the Initial Complaint was amended.

On August 12, 2016, all but eleven of the Defendants appeared in this Action. *See* Dkt No. 30. Thereafter, on September 23, 2016, Defendants moved to dismiss the Initial Complaint, or in the alternative, for summary judgment.  *See* Dkt. No. 40.

---

[2] In the Initial Complaint and Plaintiffs' subsequent submissions in this action, Plaintiffs have referred to Defendants' enterprise as the "E&M Enterprise." Plaintiffs will continue using this terminology in this Memorandum.

After motion practice, on July 7, 2017, Plaintiffs filed the First Amended Complaint [Dkt. No. 129], which: (a) added Pedro Batista, Fabian Herrera and Antonio Reyes as Named Plaintiffs, (b) refined the allegations concerning the scope of the E&M Enterprise by, *inter alia*, removing certain entities from the action, (c) corrected the names of eight corporate defendants, and (d) added one new entity as a defendant.

On September 8, 2017, Defendants moved for partial dismissal of the First Amended Complaint, based in part on their assertion that the Named Plaintiffs who worked as janitors were exempt from overtime under the NYLL. *See* Dkt No. 192. In a Report and Recommendation dated March 5, 2018, Magistrate Judge Gabriel M. Gorenstein recommended that Defendants' motion be denied. *See* Dkt No. 262. In a Memorandum Order dated August 16, 2018, District Judge Laura Taylor Swain adopted Magistrate Judge Gorenstein's Report and Recommendation. *See* Dkt No. 335.

On June 11, 2018, after motion practice and with leave of the Court, Plaintiffs filed the Second Amended Complaint, which interposed two new causes of action (the Eighth and Ninth Causes of Action) for violations of NYLL § 198(3) and breach of contract. On August 7, 2018, Defendants filed their Answer to the Second Amended Complaint. *See* Dkt No. 334. The Second Amended Complaint is the operative complaint in the action.

### *Conditional Certification of a Collective under the FLSA:*

On March 7, 2017, Plaintiffs moved the Court to conditionally certify a collective action and authorize issuance of notice to similarly situated superintendents, porters and handymen (the "Conditional Certification Motion") who were currently and previously employed at the Buildings. *See* Dkt No. 104. On October 5, 2017, the Court issued an Order partially granting the Conditional Certification Motion (the "Conditional Certification Order"). *See* Dkt No. 194. In the Conditional

Certification Order, the Court granted the Conditional Certification Motion solely to the extent of permitting the issuance of notices to superintendents, porters and handymen who were supervised or managed by agents of the Defendants who operated out of 975 Walton Avenue, Bronx, New York. Ninety-three (93) individuals opted in to the collective (well over a quarter of those identified on the lists of potential collective members that Defendants provided to Plaintiffs pursuant to the Conditional Certification Order). Rapaport Decl. ¶ 17.

***Discovery:***

The parties engaged in extensive written discovery. On December 29, 2017, Plaintiffs served their Demand for Production on the Defendants. Rapaport Decl. ¶ 18. As reflected by the Court's docket in this proceeding, Plaintiffs' counsel was vigorous in pursuing discovery, including, *inter alia*, obtaining rulings from the Court requiring that Defendants provide written discovery relating to Plaintiffs' allegations that the Buildings are under common ownership and management. Rapaport Decl. ¶ 18. Defendants provided payroll-related records for Named Plaintiffs and opt-in Plaintiffs that totaled several thousand pages. Rapaport Decl. ¶ 19. Counsel for all parties began a dialogue to identify the nature and scope of records and information required to facilitate meaningful and informed settlement discussions. Ultimately, Defendants produced approximately 8,000 pages of documents, which included payroll records for seventy-eight (78) individuals. Rapaport Decl. ¶ 19.

**B. Plaintiffs' Approach to Estimating Potential Ranges of Damages for the Putative Class**

In early April 2019, the parties began making arrangements for a two-day mediation with Hon. Ariel E. Belen (Ret.) at JAMS New York. Rapaport Decl. ¶ 20.

In advance of the mediation, in order to arrive at the estimated unpaid overtime calculations, Plaintiffs retained an accountant, Harry Slepian, CPA of Rogoff & Company PC,

who prepared damage worksheets for approximately 70 opt-in Plaintiffs and putative class members. Plaintiffs approached the process of estimating damages by engaging in a two-step process. Rapaport Decl. ¶ 21.

First, from paystubs and other documents, as well as meeting with or calling over 70 individuals who either opted in to the collective action or are putative Rule 23 class members who had expressed their interest in this proceeding, Plaintiffs' counsel determined each person's job title, dates of employment, estimated weekly overtime and weekly pay. Rapaport Decl. ¶ 22. Plaintiffs then grouped the individuals by job title – Plaintiffs had information from approximately 90 superintendents, 9 porters and 56 handymen. *Id.* From the data collected, Plaintiffs reached estimates for each job title – superintendent, porter and handyman – of their respective: (a) average number of overtime hours worked per week; (b) average hourly rates of pay; and (c) average, effective overtime rate of pay. *Id.* For superintendents, the average weekly overtime hours were approximated at 30.3 hours; for porters, 17 hours; and, for handymen, 8.43 hours. *Id.* Even with more than 8,000 pages of payroll records, this process could only result in imprecise estimates because many putative class members had only vague recollections of their work schedules during substantial portions of the six-year period preceding the filing of the Initial Complaint and Defendants' records reflected only a small portion of the actual overtime hours that Plaintiffs and Class Members assert that they worked. *Id.*

The second step involved applying the average hours worked and unpaid overtime to the list of employees (the "Employee List") that Defendants had produced, wherein Defendants identified job titles and dates of employment for superintendents, porters and handymen during the limitations period. Rapaport Decl. ¶ 23. The Employee List, which excluded the names of the workers, set forth titles and dates of employment for 158 superintendents, 116 porters and 288

handymen.  *Id.*   It also included a "miscellaneous" tab containing 13 individuals, which, on agreement of the parties, were treated as handymen because their duties most appropriately fell under this label.  *Id.*   For each person in each job title, Plaintiffs applied the average overtime hours per week and average overtime rates per week for that title, and applied it to the individual's dates of employment.  *Id.*  Extrapolating the averages to the Employee List, yielded a total best-case-scenario estimate of unpaid overtime of approximately $27,179,752.[3]  *Id.*

### C.  The Two-Day Mediation

The parties engaged in two day-long mediation sessions on May 29, 2019 and May 31, 2019, which included a series of arms' length negotiations that were overseen by a mediator, Ariel E. Belen (Ret.), which culminated in the Settlement Agreement.   Rapaport Decl. ¶ 24.   At the mediation, the parties engaged in extensive discussions regarding liability, damage calculations and the risks and burdens of continued litigation.  *Id.*  All three law firms representing Plaintiffs were actively involved in all aspects of the mediation. *Id.*

### D.  The Settlement Agreement

During the seven-month period following the mediation, the parties continued their negotiations, particularly with respect to the Settlement Agreement's terms relating to class action notice procedures. Rapaport Decl. ¶ 25.   The Settlement Agreement, which is a culmination of these negotiations, is attached to the Rapaport Declaration as Exhibit 1.

The parties agreed to settle Plaintiffs' claims on a class basis.  The settlement resolves the claims of the putative class, the Named Plaintiffs, and the Opt-in Plaintiffs, for the total amount not to exceed $7,100,000.00, inclusive of attorneys' fees, expenses, service awards, administrator

---

[3] Plaintiffs' top-line, best-case-scenario estimate per job title was approximately: (a) superintendents, $14,815,454; (b) porters, $4,461,159; and (c) handymen, $7,903,139.  Rapaport Decl. ¶ 23.

costs, and employer-side payroll taxes (the "Gross Settlement Amount"). As further discussed below, funding of the settlement will occur in installments and will occur, in part, on a "claims made" basis. Named Plaintiffs and Opt-In Plaintiffs will automatically receive checks; all other Class Members will be required to submit a Claim Form to receive payment. Named Plaintiffs, Opt-In Plaintiffs and Class Members who submit Claim Forms are, collectively, referred to as "Participating Claimants." Settlement Agreement ¶ II(Y).

The Settlement Agreement defines a class period (the "Class Period") commencing on May 23, 2010 (six years prior to the filing of the Initial Complaint) through the date upon which this Court enters an Order preliminarily approving the Settlement Agreement. Settlement Agreement ¶ II(I). Class Members are the over 500 current and former employees of Defendants who performed work as Superintendents, Porters and Handymen/Rovers at the Buildings during the Class Period. Settlement Agreement, ¶ I(H).[4] As detailed below, each Class Member's period of employment will be used to calculate their individual Settlement Payments, which will be derived from a formula based on the Class Member's number of weeks worked during the Class Period. Settlement Agreement ¶ VI(F).

Defendants agree to initially fund the settlement with a $3,000,000 deposit into the Qualified Settlement Fund ("QSF") within thirty (30) days of this Court's Final Approval Order. Settlement Agreement ¶ VI(P). The balance of the Gross Settlement Amount will be funded in increments measured from the Effective Date of the Settlement Agreement, which is defined in the Settlement Agreement as thirty (30) days following the Court's final approval of the Settlement Agreement. Settlement Agreement ¶ VI(P). These payment increments, all of which shall be

---

[4] The Parties are at impasse concerning the precise definition of the Class and have proposed two alternative definitions, as set forth in detail in the joint letter to the Court, dated January 22, 2020, which was submitted herewith.

deposited into the QSF only if required to satisfy claims, are as follows (all dates are measured from the date of final approval): (1) $3,000,000 within thirty (30) days; (2) $1,100,000 within sixty (60) days; (3) $1,000,000 within one hundred eighty (180) days; (4) $1,000,000 within two hundred forty (240) days; (5) $1,000,000 within two hundred and ninety (290). Settlement Agreement ¶ VI (P)(1) – (5). One hundred percent (100%) of unclaimed funds (and any other funds which remain in the QSF 200 days after the settlement payments are postmarked) shall be returned to Defendants within thirty (30) days after such funds are deemed unclaimed. Settlement Agreement ¶ VI(Q)(2).

After estimated attorneys' fees, administrator fees and service awards are deducted from the Gross Settlement Amount, the remaining funds (the "Net Settlement Amount") are apportioned among the Class Members to calculate each Class Member's estimated payment (according to the formula discussed below). Employer-side payroll taxes are not deducted from the Gross Settlement Amount for purposes of calculating each Class Member's estimated payment. Settlement Agreement ¶ VI(F-1). The only time that employer-side payroll taxes would affect the amount that a Plaintiff receives is in the unlikely instance that, upon calculating the final payments to Participating Claimants, employer-side payroll taxes, in combination with Defendants' other payment obligations under the Settlement Agreement, exceed the $7,100,000 cap. In this instance (and under no other circumstance), the incremental difference exceeding the $7,100,000 cap shall be deducted from the Gross Settlement Amount, and thus borne *pro rata* by Participating Claimants. Settlement Agreement ¶¶ II(T), VI(F-1). This ensures that no Participating Claimant is prejudiced by the inclusion of employer-side payroll taxes as part of the $7,100,000 cap on Defendants' obligations. The foregoing approach reflects a compromise between Plaintiffs and Defendants – one that maximizes the size of the funds available to Participating Claimants, and

honors the Parties' settlement agreement term ensuring that Defendants total obligation will not exceed $7,100,000.

Each Class Member's share of the Net Settlement Amount is calculated as follows:

1. Award each Class Member who is not Named Plaintiff or Opt-In Plaintiff one (1) point for each actual week worked (as listed on the Final Spreadsheet) during the Class Period.

2. Award each Class Member who is a Named Plaintiff or Opt-In Plaintiff one and one-quarter (1.25) points for each week worked during the Class Period.

3. Calculate the total number of points for each Class Member as indicated in Sections 1 and 2 above.

4. Add all points for Class Member together to obtain the "Total Denominator."

5. Divide each individual Class Member's points by the Total Denominator to obtain each individual Class Member's allocated percentage of the Estimated Net Settlement Amount.

6. Multiply each Class Member's respective percentage against the Estimated Net Settlement Amount to determine the Class Member's "Estimated Net Settlement Payment."

Each Participating Claimant (i.e., Named Plaintiffs, Opt-In Plaintiffs and Class Members who submit a valid Claim Form) will receive their portion of the Net Settlement Amount. For tax purposes, 40% of the payments to Participating Claimants shall be treated as back wages and 60% of such payments shall be treated as non-wage income, including interest and liquidated damages. Settlement Agreement ¶ VI(Q)(1).

Attorneys' fees and costs are to be paid from the Gross Settlement in an amount to be approved by the Court. The Settlement Agreement provides that Class Counsel shall not request Court approval of more than $2,343,000.00 of combined attorneys' fees and costs. Settlement Agreement ¶ VII(A). Although Class Counsel's fee application is not presently before the Court, it is noted that because the $2,343,000 cap represents 33% of the Gross Settlement Amount, and,

notably, it includes costs, Class Counsel's fee application will be less than the 33% of the total settlement funds that is customarily approved in wage and hour cases in this Circuit for settlements of comparable (and oftentimes far less) complexity. *See, e.g., Gregg v. Firstservice Residential New York Inc. et al.,* No. 15-CV-03876-LB, Dkt. No. 14 (E.D.N.Y. Dec. 9, 2015) (citing cases awarding 33.3% fee in $36,000 settlement); *Capsolas v. Pasta Res. Inc.*, No. 10-cv-5595, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) (awarding 33.3% fee in $5.25 million settlement); *Spicer v. Pier Sixty LLC,* No. 08-cv-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 4, 2012) (awarding 33% fee in $8.5 million settlement).

Service Awards, subject to court approval, totaling $50,000.00, will be paid to the following individuals based on the extensive services that they provided to the class and collective as follows: (i) Usvaldo Contrera: $10,000.00; (ii) Francisco Lopez: $10,000.00.; (iii) Pedro Batista: $10,000.00; and (iv) Fabian Herrera: $10,000.00; and (v) Antonio Reyes: $10,000.00. Settlement Agreement ¶ VIII(A). These Service Awards are reasonable given the efforts that Named Plaintiffs made in this Proceeding, and the risks that they took in having their names on the action.

Any funds that are not claimed by Class Members shall revert to the Defendants. Settlement Agreement ¶ VI(Q)(2).

### E. Notice to Class Members

The Parties have agreed upon robust procedures to ensure that all Class Members are identified, located, and provided with notice of the Settlement Agreement. The Settlement Agreement contemplates the following procedures:

(1) Preliminary approval of the proposed settlement after submission to the Court of the instant motion.

(2) Within ten (10) days of the Court's issuance of the Preliminary Approval Order,

Defendants shall provide the Claim Administrator with an Excel spreadsheet (the "First Spreadsheet") containing Class Members' identifying and contact information, as well as the number of weeks worked by each Class Member during the Class Period, provided that any Class Member with an employment start date of January 1, 2013 will be deemed to have commenced their employment as of May 23, 2010.[5]   Settlement Agreement ¶ VI(A).

(3) Within ten (10) days of the Court's issuance of the Preliminary Approval Order, Class counsel shall provide the Claims Administrator with the name, last known address, telephone number, email address, social security number and dates of employment for any individual which it contends should be deemed a Class Member. Settlement Agreement ¶ VI(A).

(4) Within seven (7) days of receiving the First Spreadsheet and any supplemental information from Class counsel, the Claims Administrator shall utilize the U.S. Postal Service to locate Class Members' alternative addresses for each class member. Settlement Agreement ¶ VI(B). Thereafter, within fourteen (14) days of receiving the First Spreadsheet, the Claims Administrator shall prepare a revised spreadsheet containing the alternative information that is obtained through the U.S. Postal Service Searches and/or from Plaintiffs' Counsel. Settlement Agreement ¶VI(C)-(D).

(5)  In the event that potential Class Members emerge that were not identified by Defendants, the Parties shall meet and confer regarding any disputes concerning any Class Members'

---

[5] Defendants may have limited records for certain employees employed on or before January 1, 2013.  Therefore, for calculation of the Estimated Settlement Payment to each Class Member, those Class Members who are listed as having a start date of January 1, 2013 will receive a 136-week credit, which assumes a start date that is the first day of the NYLL limitations period (May 23, 2010).  When the Final Settlement Payments are calculated, only Participating Claimants will receive this work week credit.  For the purposes of calculating the number of weeks worked by the entire Class for the Final Settlement Payment, those Class Members who do not submit valid Claim Forms will be deemed to have the January 1, 2013 start date, as listed in Defendants records.  This serves, ultimately, to maximize payments to Participating Claimants by taking the work week credit out of the "Numerator" for those Class Members who do not participate.  *See* Settlement Agreement ¶¶ VI(A), VI(N).

dates of employment and/or their status as an Opt-In Plaintiff or Class Member, and if not then resolved, submit their disputes to United States Magistrate Judge Gorenstein. Settlement Agreement ¶ VI(E). All final determinations relative to the issues in this section shall be forwarded to the Claims Administrator. The decision of Judge Gorenstein concerning period/dates of employment shall be incorporated into a "Final Spreadsheet" created by the claims administrator. *Id.*

(6) Within seven (7) days after the creation of Final Spreadsheet, the Claims Administrator shall prepare Preliminary Calculations ("Preliminary Calculations") of the anticipated payments to each Class Member, which shall be disclosed to Class Members in their respective notices that shall be issued by the Claims Administrator within seven (7) days of the preliminary calculations. Settlement Agreement ¶¶ VI(F)-(G).

In the first instance, notice of the Settlement Agreement is provided to Class Members via mailing of a Notice Packet. Settlement Agreement ¶ G. For any Class Member whose Notice Packet is returned as undeliverable, the Claims Administrator shall: (i) resend the Notice Packet to any forwarding address listed by the Post Office; (ii) for those individuals with no forward address, perform a skip trace and send resend the Notice Address to any Class Member form whom a new address has been found; (iii) contact each Class Members whose packet was returned as undeliverable by making one telephone call and sending one text message inquiring to confirm receipt of the Notice Packet. Settlement Agreement ¶ VI (H). The Settlement Agreement also provides for the mailing of reminder postcards and text messages thirty (30) days after the initial mailing of Notice Packets. Settlement Agreement ¶ VI(I).

In addition, within seven days after the Claims Administrator has calculated Estimated Settlement Payments, a Spanish-language "Summary Class Notice" (Exhibit D-2 to the Settlement

Agreement) shall be: (i) published for not less than sixty (60) Days on the website *eldiariony.com* with a banner linking to the notice from the home page to the Claims Administrator's designated website; (ii) published once per week as one-half page notice in the print versions of *El Diario* and *El Especialito* for four consecutive weeks.  Settlement Agreement ¶ VI(M).

The notice procedures in the Settlement Agreement are intended to address the challenge of providing notice to immigrant workers who may be harder to reach than class members in other lawsuits.  The parties agreed that the Claims Administrator shall engage in vigorous efforts to locate and contact individuals via mailings, text message, and telephone calls.  Settlement Agreement ¶¶ VI(G)-(J).  Furthermore, because Class Counsel has been contacted by individuals whose current contact information might otherwise be unavailable, the Settlement Agreement provides that Plaintiffs' counsel will have the opportunity to provide Defendants and the Claims Administrator with current contact information for those Class Members who independently contacted Plaintiffs' counsel.   Settlement Agreement ¶ IV(A).

## II.  PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS WARRANTED.

### A.  The Applicable Standards for Preliminary Approval

#### 1.  Amendments to FRCP 23 and *Grinnell* Factors

The law favors settlement and compromise of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 3967 F.3d 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *Azoue v. 16 for 8 Hospitality LLC,* No. 13-cv-7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016) (granting preliminary approval of FLSA settlement and noting the "strong judicial policy in favor of settlement of class action suits") (internal quotation marks and alterations omitted); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 WL 2255394, at *2 (S.D.N.Y.

May 11, 2015) (same) (internal quotation marks and alterations omitted); *Clem v. Keybank, N.A.*, No. 13-cv-789, 2014 WL 2895918, at *4 (S.D.N.Y. Jun. 20, 2014) (same).

Class action settlements must be approved by the Court as "fair, reasonable, and adequate." FRCP 23 (e)(2). The judicial approval process "typically occurs in two stages: (1) preliminary approval – where prior to notice to the class, a court makes a preliminary evaluation of fairness, and (2) final approval – where notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (internal quotations omitted); *accord In re Initial Public Offering Securities Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

On December 1, 2018, FRCP 23 was amended to explicitly address preliminary approval for the first time. Under a new heading reading "Grounds for Decision to Give Notice," the amended Rule instructs:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class.*
>
> (A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
>
> (B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

FRCP 23(e)(1).

The December 1, 2018 amendments "alter the standards that guide a court's preliminary

approval analysis." *In re Payment Card*, 330 F.R.D. at 28; *accord Padovano v. FedEx Ground Package System, Inc.,* No. 16-cv-00017, 2019 U.S. Dist. LEXIS 107092, *6-7 (W.D.N.Y. June 10, 2019). Under the new standards a district court must consider whether the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704, 2019 U.S. Dist. LEXIS 194736, *10 (S.D.N.Y. Nov. 7, 2019) (citing *In re Payment Card.*, 330 F.R.D. at 28).

Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these *Grinnell* factors. *See* 2018 Advisory Notes to FRCP. 23, Subdiv. (e)(2). Therefore, it is appropriate for the Court to consider both sets of factors in its analysis, noting where they overlap. *In re GSE Bonds Antitrust Litig.*, 2019 U.S. Dist. LEXIS 194736, at *11. The *Grinnell* factors should "help guide the Court's application of Rule 23(e)(2)(C)(i)." *Id.* at *13 (citing *In re Payment Card*, 330 F.R.D. at 36).[6]

"Provisional settlement certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing." *Hadel v. Gaucho, LLC,* No. 15-cv-3706, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016) (citing *In re Gen. Motors*

---

[6] The nine "*Grinnell* Factors" are: (1) the complexity, expense  and likely duration of the litigation; (2) the reaction of the class to settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463

*Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying a settlement class)).

### 2. *Wolinsky* Factors for FLSA Settlement Approval

In evaluating a proposed settlement of FLSA claims, the courts in this district apply a five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors include: (1) the plaintiffs' range of potential recovery; (2) the extent to which the proposed settlement will allow the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks face by the parties; (4) whether the settlement agreement is the product of arms' length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. The *Grinnell* factors and Fed. R. Civ. P. 23(e)(1) standards, which address the due process concerns that are inherently implicated by class actions, subsume the less onerous *Wolinsky* factors. *See Gay v. Tri-Wire Eng'g Sols., Inc.*, No. 12-cv-2231, 2014 WL 28640, at *10 (E.D.N.Y. Jan. 2, 2014) ("the standard for approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not implicate the same due process concerns"). For this reason, this memorandum's analysis of the *Grinnell* factors and Fed. R. Civ. P. 23(e)(1) is intended to simultaneously address the FLSA approval standards in *Wolinsky*.

As discussed below, preliminary approval is warranted because the Settlement Agreement meets the requirements of FRCP 23(e)(2) and the *Wolinsky* factors.

### B. The Court "Will Likely Be Able to" Approve the Settlement under FRCP 23(e)(2)

Determining whether the Court "will likely be able to" give final approval to the Settlement Agreement FRCP 23(e)(2) hinges on whether the Settlement Agreement satisfies FRCP 23(e)(2)'s final approval factors:

(A) the class representatives and class counsel have adequately represented the

class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FRCP 23(e)(2).

As discussed below, each of these factors is likely to favor final approval.

### 1. Rule 23(e)(2)(A) – Plaintiffs and class counsel "have adequately represented the class"

Plaintiffs and their counsel have diligently litigated this action and have completed an extensive discovery campaign. Prior to commencing these proceedings, Class Counsel undertook a lengthy investigation regarding Defendants' alleged corporate structure and Plaintiffs' claims. Rapaport Decl. ¶¶ 6-9. During this proceeding, Plaintiffs' counsel obtained approximately 8,000 pages of documents relating Defendants' payroll practices and procedures.[7] *Id.* at ¶ 19.

Class Counsel invested time and resources to successfully defend against Defendants' motions to dismiss, and to obtain preliminary certification of a collective under the FLSA. Particularly because many putative class members worked alone and/or in small groups in separate locations, Class Counsel's diligence was decisive in reaching the highly-favorable Settlement

---

[7] The analysis of FRCP 23(E)(2)(A) partially overlaps with the third *Grinnell* factor, which requires an inquiry of "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust Litig.*, 2019 U.S. Dist. LEXIS 194736, at 28-29 (quoting *In re AOL Time Warner, Inc. Securities Litig.*, No. 06-cv-0695, 2006 U.S. Dist. LEXIS 17588, *10 (S.D.N.Y. Apr. 6, 2006) (noting that plaintiffs' counsel had demonstrated that it had acquired adequate information to gauge the strengths and weakness of plaintiffs' case through having done the following: an eight-month investigation by plaintiffs' counsel, which included an analysis of publicly-available information, interviews with witnesses, briefing of motions to dismiss, some formal discovery, and mediation). All of these activities are comparable to what Class Counsel has done in this case.

Agreement.

Furthermore, here, Named Plaintiffs' interests are aligned with other Class Members' interests because they suffered the same injuries – monetary losses stemming from wage and hour violations. Because of these interests, Named Plaintiffs have "an interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F3d 253, 268 (2d Cir. 2006). "In order for a potential conflict or actual conflict to defeat certification, it 'must be fundamental.'" *Olipado v. Cargo Airport Servs. USA, LLC*, 2019 U.S. Dist. LEXIS 110585 (E.D.N.Y. July 2, 2019) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009)). Here, Plaintiffs and Class Members have interrelated wage claims.

Co-lead counsel have demonstrated their commitment to this litigation, as well as their knowledge of the wage and hour issues that are central to Class Members' claims.

### 2. Rule 23(e)(2)(B) – The Settlement Agreement was "negotiated at arm's length"

This factor is likely to be satisfied because: (a) settlement was achieved during a two-day mediation session presided over by retired Judge Ariel Belen. *See In re AOL Time Warner, Inc. Securities Litig.*, No. 06-cv-0695, 2006 U.S. Dist. LEXIS 17588, *26-27 (S.D.N.Y. Apr. 6, 2006) (mediation helps to "ensure that the proceedings were free of collusion and undue pressure"); and (b) following the mediation, the parties engaged in extensive, further face-to-face negotiations that spanned one and a half days and multiple conference calls. Rapaport Decl. ¶ 25. Moreover, these mediation proceedings and subsequent negotiations were conducted only after the parties had engaged in an active three-year litigation and extensive exchanges of written discovery.

### 3. Rule 23(e)(2)(C)(i) – The "costs, risks, and delay of trial and appeal"

In this factor, "courts may need to forecast the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results." Advisory Committee Notes to

2018 Amendments ("Committee Notes").   This factor overlaps with two of the *Grinnell* factors, to wit: *Grinnell* factor eight, "the range of reasonableness of the settlement in light of the best possible recovery," and *Grinnell* factor nine, "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."   This factor also overlaps with the requirement of *Wolinsky* that plaintiffs "indicate a range of recovery," which "must at least indicate 'each party's estimate of the number of hours worked or the applicable wage." *Douglas v. Allied Universal Sec. Servs. LLC,* 371 F. Supp. 3d 78, 83-84 (E.D.N.Y. 2019) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

While such forecasting "cannot be done with arithmetic accuracy, . . . it can provide a benchmark for comparison with the settlement figure." *Id.; accord Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion"): *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum").

Courts in this district have approved settlements that constitute approximately 15% of Plaintiffs' top-line estimate of damages *In re GSE Bonds Antitrust Litig.*, 2019 U.S. Dist. LEXIS 194736, at *23 (quoting *In re Currency Conversion In re Fee Antitrust Litig.*, No. 1 MDL 1409, 2006 U.S. Dist. LEXIS 81440, 2006 WL 3247396, at *6 (S.D.N.Y Nov. 8, 2016)).

Here, the fairness and adequacy of the Gross Settlement Amount (*i.e.*, up to $7,100,000), whether analyzed under *Wolinsky*, *Grinnell*, or under the R. 23 standards for preliminary certification, is likely to be satisfied for the following reasons:

**Range of Recovery:**  In Plaintiffs' estimate of potential damages that was exhaustively undertaken in the weeks before mediation, Plaintiffs calculated that the highest possible

recovery for all Class Members for unpaid overtime, spanning the entire NYLL limitations period, was approximately $27,179,752, exclusive of prejudgment interest and liquidated damages. Plaintiffs derived this high-end estimate of damages based on interviews with more than 70 class members. Class Counsel concluded that, in the most optimistic assessment, (i) superintendents could potentially, under the most optimistic analysis, establish that they each worked an average of 30.3 overtime hours per week; (ii) porters could potentially establish that they each worked an average of 17 overtime hours per week; and (iii) handymen could potentially establish that they each worked an average of 8.43 overtime hours per week. These weekly averages of overtime hours were than utilized to calculate damages based on the total number of workweeks during the limitations period that all employees within each category worked, and the average gross weekly pay per category.

**Risk Regarding the Range of Recovery:** Based on the large number of hours per week for superintendents, the damages total for superintendents is more than triple the amount of estimated high-end damages for porters and double the amount assigned to Rovers/Handymen. But unlike porters and handymen, superintendents face the risk that the "janitor exemption" under the NYLL could reduce their recovery period from 6 to 3 years (i.e., by one-half), and that their on-call time (which accounted for a significant portion of their weekly overtime hours) would be particularly difficult to prove and, in any event, might not be considered compensable. Porters have the same risk that some of their alleged damages spent from time that they spent on-call, which might be hard to prove and could be deemed non-compensable. Based on these risks and considerations, Class Counsel believe that it is fair and reasonable to apportion the same weekly pro rata share of damages to members of all three groups.

**Proof of Hours Worked:** The settlement provides Class Members with a favorable monetary payout, in light of challenges which may include the availability of records and Class Members' challenges in recalling how many overtime hours they worked, as well as the time periods when they performed overtime work.

**Janitor Exemption:** The settlement enables class members to avoid real litigation risks. The Parties took starkly different positions regarding the legal claims and the threshold issues. By way of example, Defendants argued (and they continue to assert) that Named Plaintiffs and Class Members who were superintendents had no overtime rights under the NYLL because of the "Janitor Exemption."

**Calculation of Potential Damages:** Plaintiffs argue that, throughout most of the applicable period, Defendants paid superintendents, porters and handymen fixed amounts per week, even though many of them were explicitly classified as hourly employees. Based upon the rebuttable presumption in the Second Circuit that a fixed salary covers 40 hours (*see, e.g.*, *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-cv-9353, 2015 U.S. Dist. LEXIS 54066, *6-7 (S.D.N.Y. Apr. 24, 2015)), Plaintiffs contend that they are entitled to arrive at their regularly rates of pay by dividing their weekly by 40, and that they are entitled to 1.5 this amount for every hour above the first forty hours that they worked per week. Although Plaintiffs are confident in this position (and they have calculated their

maximum potential damages on this basis), there is at least some risk that the Court will apply a less favorable, half-time approach to damages. This would result in substantially lower damages.

**Expert Class-Wide Damages Analysis:** Performing a class-wide damages analysis has entailed the use of an accounting expert even at this preliminary settlement stage. Undertaking this analysis for expert discovery and trial would be costly.

**Complexity of Trial:** Any trial would be long and extremely complicated. Most of the Opt-In Plaintiffs and Class Members speak little or no English. Thus, trial proceedings would need to be conducted through translators and would pose many logistical challenges. Moreover, the "joint employment" issues underlying this lawsuit require an inquiry into the business relationships amongst many individuals, business entities, and apartment buildings. In sum, this would be extremely complicated and time-consuming at trial.

**Delay**: Continued litigation would cause significant delay. Under the existing litigation schedule, it is unlikely that this case would proceed to trial until sometime in late 2020.

### 4. Rule 23(e)(2)(C)(ii) – The "effectiveness of any proposed method of distributing relief to the class including the method of class-member claims if required"

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims is unduly demanding." FRCP 23(e)(2), Advisory Committee Notes. While the plan of allocation "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)).

Here, this factor is likely to favor approval because: (i) the Settlement Agreement provides for a robust process of providing notice multiple methods of dissemination, including mailing, telephone calls, text messages, and online/print publication, which will ensure maximum participation by workers who, but for this process, are to be aware of their legal rights, let alone know that they have any avenue for financial relief; (ii) by apportioning the Settlement Agreement

based on the number of weeks work during the six-year limitations period, the Settlement Agreement is fair, particularly in light of the difficulties that any Class Member would encounter if they were required to prove the precise amount of overtime hours that they worked; and (iii) the Settlement Agreement has been tailored to ensure that Class Members are afforded with some latitude in the manner of submitting claims which is intended to simplify the claims process.

Allocation of the Gross Settlement Amount based on the number of weeks worked per employee is fair and follows a practice accepted in prior proceedings.

### 5. Rule 23(e)(2)(C)(iii) – The "terms of any proposed award of attorney's fees, including the timing of payment"

This factor is likely to favor approval because: (a) the settlement is not contingent on the Court's approval of class counsel's requested fee; (b) any disapproved fees will be made available to the class members; and (c) any approved fees will be paid at the same time as the class member payments. *See* Settlement Agreement ¶ VII(C). The Settlement Agreement provides that Class Counsel shall not apply for fees and costs that, in combination, exceed 33% of the Gross Settlement Amount. *Id.* at ¶ VII(A).

### 6. Rule 23(e)(2)(C)(iv) – "Any agreement required to be identified under Rule 23(e)(3)"

This factor is likely to favor approval. Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, the accompanying Agreement is the *only* agreement connected to this settlement. There are no "side-agreements."

### 7. Rule 23(e)(2)(D) – The "proposal treats class members equitably relative to each other"

This factor is likely to favor approval because all class members' claims are valued on the basis of the number of weeks that they worked, with the sole exception that individuals who have

already opted in are given a slight increase in the apportionment. Specifically, each Class Member who is not Named Plaintiff or Opt-In Plaintiff is awarded one (1) point for each actual week worked (as listed on the Final Spreadsheet) during the Class Period. Each Class Member who is a Named Plaintiff or Opt-In Plaintiff one and one-quarter (1.25) points for each week worked during the Class Period. *See* Settlement Agreement ¶ VI (F). This recognizes the favorable position that these individuals have because: (a) they would have actionable wage claims based on the opt-in forms, regardless of whether there is a class action settlement; and (b) their ability to assert such claims is not wholly dependent on a future class certification ruling because even if class certification were denied and the FLSA Collective were de-certified, they would retain their FLSA claims retroactive to the dates on which notices were issued to them, the period having been tolled for them by virtue of their consent forms.

In sum, each Rule 23(e)(2) factor is likely to favor approval of the settlement as fair, reasonable, and adequate.

**C. The Court "Will Likely be Able to Certify the Class" Because it Meets the Requirements of Numerosity, Commonality, Typicality, Adequacy, Ascertainability, Predominance and Superiority**

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." FRCP 23(e)(1)(B)(ii). Here, Plaintiffs will ask the Court to certify a settlement class that includes over 500 individuals and is based on a list in which Defendants have undertaken best efforts to identify all persons who are, or have been employed as superintendents, porters and handymen at buildings owned, controlled and/or managed by Defendants at any New York location on or after May 23, 2010. *See* Second Amended Complaint, [Dkt. No. 312] at ¶ 289.

To obtain class certification, Plaintiffs must satisfy FRCP 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements, *plus* an "implicit" ascertainability requirement, *plus* FRCP 23(b)(3)'s requirements that common questions of law or fact must "predominate over any questions affecting only individual members" and that class litigation is "superior to other available methods for the fair and efficient adjudication of the controversy." *See Wilson v. LBS Industries, Inc.,* No. 15-cv-07614, 2018 U.S. Dist. LEXIS 138832, *9 (S.D.N.Y. Aug. 13, 2018) (Gorenstein, M.J.).

As discussed below, Plaintiffs satisfy each class certification requirement:

### 1. Numerosity

Rule 23(a)(1) requires that the class is "so numerous that joinder of all members is impracticable." Here, numerosity exists because the class includes over 500 individuals. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This Court has observed:

> Commonality "does not mean that all issues must be identical as to each member," but rather requires "that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Kamean v. Local 363, Int'l Bhd. of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y. 1986). "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

*Wilson*, 2018 U.S. Dist. LEXIS 138832, at *12.

Here, the commonality requirement is likely to be satisfied. The following is a list of common questions that can be answered through common evidence:

- Whether Class Members were denied overtime pay for all hours worked in excess of 40 hours per week;
- Whether Class Members were denied payment of minimum wage for all hours worked; and
- Whether Class Members were not provided with wage statements on each payday that listed the amount of hours they worked per week, regular rates of pay, or their overtime rates of pay for each hour worked over forty in a given workweek.

"[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have been repeatedly held to meet the commonality prerequisite." *Espinoza v. 953 Associates LLC,* 280 F.R.D. 113, 127 (S.D.N.Y. 2011); *see also Cuzco v. Orion Builders, Inc.,* 262 F.R.D. 325, 334 n.20 (S.D.N.Y. 2009) (finding commonality where defendants pay practices were common to the class members' claims of NYLL violations.)

### 3. Typicality

Rule 23(a)(3)'s typicality requirement asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representatives are typical of class members' claims. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting *Labatte–D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996)). Here, Named Plaintiffs' claims are typical of those of the class. All Class Members allege they were paid according to the same policy, denied legally mandated minimum wage, denied overtime and denied NYLL wage notices/wage statements.

### 4. Adequacy

This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As discussed above, there are no known conflicts, let alone ones that are so fundamental impair class certification.

### 5. **Ascertainability**

The Second Circuit has recognized an "implied requirement of ascertainability" which examines "whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Brecher v. Republic of Argentina*, 802 F.3d 303, 304 (2d Cir. 2015). This requirement is satisfied when the class can be "'defined using objective criteria that establish a membership with definite boundaries.'" *Wilson*, 2018 U.S. Dist. LEXIS 138832, at *13 (quoting *In re Petrobras Securities Litig.*, 862 F.3d 250, 257 (2d Cir. 2017)).

Here, the ascertainability requirement is likely to be satisfied because Defendants' payroll records have enabled Class Members to be identified with specificity.

### 6. **Predominance**

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FRCP 23(b)(3). The Supreme Court recently explained:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted); *accord Ruzhinskaya v. Healthport Tech.*, 311 F.R.D. 87 (S.D.N.Y. 2015).

Here, predominance is likely to be satisfied because the success or failure of Plaintiffs' challenge to Defendants' common overtime pay, wage notice, and wage statement policies will turn on this Court's application of common legal principles to a set of common set of facts. In this

regard, the Court is referred to the common legal questions listed in the "commonality" section, *supra.*

### 7. Superiority

Rule 23(b)(3) also requires the Court to find that the class action is "superior to other available methods for fair and efficient adjudication of the litigation" and lists four factors to be considered as part of this analysis. As discussed below, each of these factors is likely to favor class certification:

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* William Rubenstein, 2 *Newberg on Class Actions* §4:69 (5th ed.). This is not such a lawsuit. On the contrary, it is highly unlikely that individual class members (many of whom speak very limited English and may not be aware of the rights under the FLSA and NYLL) would avail themselves of the legal system and sue defendants for wage and overtime violations.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. Class Counsel is unaware of any such litigation.

Third, Rule 23(b)(3)(C) requires the court to consider the desirability of "concentrating the litigation of the claims in a particular forum." FRCP 23(b)(3)(C). Here, concentration of all claims in this District is most efficient because the class members all worked at the E&M Enterprise's New York City apartment buildings.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." FRCP 23(b)(3)(D). This requirement is automatically satisfied when, as here, a class is certified for settlement purposes. *See Amchem*, 521 U.S. at 620.

In sum, the settlement class should be certified because all of Rule 23's class certification requirements are likely satisfied.

### III. THE PROPOSED NOTICE SATISFIES FRCP 23(c)(2)(B).

FRCP 23(c)(2)(B) requires that the putative settlement class members receive "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.*

Here, the above requirement is satisfied by a robust notice process. Under the Settlement Agreement, the Claims Administrator will be provided with name and last known residential address of each class/collective member and will mail a notice form to each individual. *See* Settlement Agreement ¶ VI (G).[8] If the post office returns any package with a forwarding address, the Claims Administrator will promptly re-mail the package to the forwarding address. *Id.* at VI(H). If the post office returns any package without a forwarding address, the Claims Administrator will work diligently to obtain an updated address and will promptly mail the package to any updated address. *Id.* Furthermore, in the event a notice packet is returned as undeliverable, the Claims Administrator shall also, to the extent that a Class Member's cellular telephone number is ascertainable, contact the Class Member through at least: one (1) phone call and one (1) text message to the Class Member inquiring if the Class Member received the Notice

---

[8] To maximize the likelihood that these initial notices are sent to the current addresses of Class Members, the Claims Administrator will be provided with Class Members' addresses and other contact information by Defendants' counsel and Class Counsel may supplement with any additional information about how to contact Class Members. Settlement Agreement ¶ VI(A).

Packet and to confirm the accuracy of the Class Member's mailing address and/or other contact information, as appropriate. *Id.* at ¶ VI (H).

Class Members will have 90 days from the initial mailing date (i.e., until the "Claims Form Deadline") to submit a claim form, exclude themselves from the settlement, or object to the settlement, except for Class Members who were not successfully contacted through the first round of mailing, who are provided with an extra twenty-one (21) days (i.e., 111 days from the initial mailing date). *Id.* at ¶¶ X, I(C), VI(L). Further, the Settlement Agreement requires publication of a Summary Notice in Spanish speaking newspapers. *Id.* at ¶ VI(M).

In addition, FRCP 23(c)(2)(B) requires the notice forms to "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." As indicated in the table below, the proposed notice forms (Settlement Agreement, Exhibit D-1) satisfy each of these requirements:[9]

---

[9] There are three versions of the Notice Form: (i) for Named Plaintiffs, (ii) for Opt-In Plaintiffs and (iii) for all other Class Members. The Notices are different to the extent that that the releases and other rights are different among each of these groups. The Named Plaintiffs, unlike the other groups, are giving broad, general releases. In addition, since Named Plaintiffs and Opt-In Plaintiffs are getting paid automatically, and need not submit Claim Forms, they will receive an Address Form with their notice, so that they may update, if necessary, the address to which the check should be mailed. Because Named Plaintiffs and Opt-Ins are automatically receiving checks, they will release both FLSA and NYLL claims. Otherwise, Class Members who submit a Claim Form will receive payment and release both FLSA and NYLL claims; however, Class Members who are not Named Plaintiffs or Opt-In Plaintiffs and do not participate by submitting a Claim Form will not receive payment and will waive NYLL claims but not FLSA claims.

| Civil Rule 23(c)(2)(B) requires notice form to "clearly and concisely state in plain, easily understood language: . . ." | Specific section of Notice Form satisfying the requirement: |
|---|---|
| (i) the nature of the action | Section 2 |
| (ii) the definition of the class certified | Section 5 |
| (iii) the class claims, issues, or defenses | Section 2, 4 |
| (iv) that a class member may enter an appearance through an attorney if the member so desires | Section 10 |
| (v) that the court will exclude from the class any member who requests exclusion | Section 11 |
| (vi) the time and manner for requesting exclusion | Section 11 |
| (vii) the binding effect of a class judgment on members under Rule 23(c)(3) | Section 6, 12, 18 |

In sum, all of the notice requirements of FRCP 23(e)(1)(B) are satisfied.

## IV. THE COURT SHOULD APPOINT THE UNDERSIGNED ATTORNEYS AS CLASS COUNSEL.

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." FRCP 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1).

Here, the undersigned lawyers respectfully ask that the Court to appoint them as interim class counsel. These lawyers have worked very diligently on this litigation and have significant experience litigating employment rights claims, including wage and hour claims. *See generally* Rapaport Decl., ¶¶ 28-34; Declaration of Meredith R. Miller, January 22, 2020; Declaration of

Peter Winebrake, January 22, 2020.

## V.     THE COURT SHOULD APPOINT SETTLEMENT SERVICES, INC. AS THE CLAIMS ADMINISTRATOR FOR THE SETTLEMENT AGREEMENT.

The Parties agreed to propose that Settlement Services, Inc. ("SSI") be appointed as Claims Administrator for the Settlement Agreement.  Defendants' counsel and Winebrake & Santillo have worked with SSI on numerous occasions to administer class actions.  Rapaport Decl. ¶ 27.  SSI has sufficient experience in wage and hour class actions to fairly and competently administer the settlement.  *Id.* Class Counsel is satisfied that SSI has sufficient Spanish-speaking personnel to be available to communicate with the largely Spanish-speaking class.

## CONCLUSION

Plaintiffs respectfully ask the Court to (i) grant preliminary approval of the Settlement Agreement; (ii) for settlement purposes, conditionally certify the settlement class; (iii) appoint Marc A. Rapaport (Rapaport Law Firm, PLLC), Meredith R. Miller (Miller Law, PLLC), and Peter Winebrake (Winebrake & Santillo, LLC) as Class Counsel; (iv) approve the proposed notice as the best notice that is practicable; and (5) appoint Settlement Services, Inc. as the Claims Administrator for the Settlement Agreement.

Date:  January 22, 2020

Respectfully,

_____/s/_____

Marc A. Rapaport
Rapaport Law Firm, PLLC
One Penn Plaza
250 West 34th Street, Suite 2430
New York, NY  10119
(212) 382-1600
mrapaport@rapaportlaw.com

_____/s/_____

Meredith R. Miller
Miller Law., PLLC
167 Madison Avenue, Suite 503
New York, NY  10016
(347) 878-2587
meredith@millerlaw.nyc

_____/s/_____

Peter Winebrake
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491
pwinebrake@winebrakelaw.com

*Plaintiffs' Counsel*